**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Counsel for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE LOOMIS, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>SLENDERTONE DISTRIBUTION, INC.,<br><br>Defendant. | Case No: '19CV854 MMAKSC<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF CAL. BUS. & PROF. CODE §§17200 ET SEQ.; CAL. BUS. & PROF. CODE §§17500 ET SEQ.; CAL. CIV. CODE §§ 1750 ET SEQ.; AND FOR BREACH OF EXPRESS & IMPLIED WARRANTIES**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Jane Loomis on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues defendant Slendertone Distribution, Inc. ("Slendertone"), and alleges the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief, including the investigation of her counsel.

## INTRODUCTION

1.     Slendertone markets and sells an Electrical Muscle Stimulator ("EMS") called the "Flex Belt." The belt delivers a small amount of electricity to the body, which stimulates the muscles and causes them to contract. Such EMS devices are considered Class II Medical Devices by the Food and Drug Administration ("FDA"), and any seller is required to obtain pre-market approval. Class II Medical Devices are devices for which general controls, by themselves, are insufficient to provide reasonable assurance of the safety and effectiveness of the device, and for which there is sufficient information to establish special controls to provide such assurance.

2.     Slendertone markets its EMS devices as providing users, with no effort or exertion on the user's part, with "strong, toned abs in weeks" and with "more attractive abs" through a "great work out." Slendertone's advertising falsely conveys that use of its Flex Belt will lead to weight loss by "getting rid of belly fat," will contour the body, provide visible "six pack" abs, and is a total replacement for traditional abdominal exercise. However, aside from some limited science showing some strength and endurance improvements to the abdominal muscle tissue as a result of extended EMS use, no science supports the conclusion that use will rid belly fat, provide more attractive abs, contour the body, provide visible "six pack" abs, or that use can ever be a replacement for traditional exercise. In fact, one 2002 study concluded that no benefits were observed at all, finding that while "[e]lectrical muscle stimulation devices (EMS) have been advertised to increase muscle strength, to decrease body weight and body fat, and to improve muscle firmness and tone in healthy individuals . . . EMS had no significant effect on any of the measured parameters. Thus, claims relative to the effectiveness of EMS for the apparently healthy individual are not supported by the findings

*Loomis v. Slendertone Distribution, Inc.*
COMPLAINT

of this study."[1] Several other studies have resulted in similar findings and while some have concluded that EMS can strengthen abdominal muscles or even improve endurance in abdominal muscles, no study has ever yielded results supporting the notion that use of EMS will result in body contouring, weight loss, visible results (including so-called "six pack abs"), or that use can replace traditional exercise to improve overall health.

3.     Additionally, FDA has only approved devices such as the Flex Belt to "temporarily strengthen, tone or firm a muscle" and has specifically *disapproved* such devices to assist with weight loss, contour the body, develop visible "six-pack" abs, or otherwise to replace traditional exercise. Similarly, the Federal Trade Commission ("FTC"), the independent federal agency charged with the promotion of consumer protection and the elimination and prevention of unfair or abusive business practices, has already determined that any claims that such ab devices cause fat loss and inch loss, will give users well-defined abdominal muscles (e.g., "rock hard," "six pack" or "washboard" abs), or that use of the ab devices is equivalent to conventional abdominal exercises, such as sit-ups or crunches, are false and misleading.

4.     Plaintiff purchased the Flex Belt in reliance on Slendertone's misleading and unlawful claims that use would assist in weight loss, body contouring, develop visible "six-pack" abs, and could be used effectively as a replacement for abdominal exercises. She brings this action seeking injunctive and monetary relief on behalf of herself, all other similarly-situated California consumers, and the general public, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*., Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*., and False Advertising Law, *id*. §§ 17500 *et seq*., as well as Slendertone's breach of express and implied warranties.

---

[1] *Effects of Electrical Muscle Stimulation on Body Composition, Muscle Strength, and Physical Appearance*, John. P. Porcari, et al. (2002 Porcari Study)

2

## THE PARTIES

5.     Plaintiff Jane Loomis, who at the time of her purchase was a resident of San Diego, purchased the Flex Belt in San Diego County, California.

6.     Defendant Slendertone is a New Jersey corporation with its principal place of business at 50 Harrison St., Suite 313, Hoboken, New Jersey 07030.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, at least one member of the class of plaintiffs is a citizen of a state different from Slendertone. In addition, more than two-thirds of the members of the class reside in states other than the state in which Slendertone is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

8.     The Court has personal jurisdiction over Slendertone pursuant to Cal. Code Civ. P. § 410.10, as a result of Slendertone's substantial, continuous and systematic contacts with the state, and because Slendertone has purposely availed itself of the benefits and privileges of conducting business activities within the state.

9.     Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b) because Slendertone resides (*i.e.*, is subject to personal jurisdiction) in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS

10.     Through its own website, through online third party retailers (such as Amazon), and likely through some brick-and-mortar retailers, Slendertone markets and sells an over-the-counter medical device called the "Flex Belt," an electronic muscle stimulating device, approved by the FDA to rehabilitate muscles through electronic "pulsing" stimulation.

11.     Utilizing a website, celebrity endorsements, paid-advertisement articles, paid bloggers, social media (including Facebook) and third party retailers, Slendertone markets

the Flex Belt as a "miracle device" that provides a "perfect" abdominal workout in only 30 minutes of use per day while watching television, reading, cooking, or undertaking other mundane, non-physical activities. Slendertone further markets the Flex Belt as causing fat loss and well-defined abdominal muscles (i.e., "six pack" abs), and as a better alternative to, or at least the equivalent of, conventional abdominal exercises, such as sit-ups or crunches.

12.    In advertising the Flex Belt, Slendertone repeatedly uses the phrase "FDA-cleared technology" and "medical-grade technology," suggesting the FDA endorses the Flex Belt specifically, or otherwise has approved the device for weight loss, well-defined abdominal muscles, and a replacement for traditional abdominal exercises.

13.    However, FDA is clear that "[w]hile an EMS device may be able to temporarily strengthen, tone or firm a muscle, no EMS devices have been cleared at this time for weight loss, girth reduction, or for obtaining 'rock hard' abs."

14.    Slendertone also falsely and misleadingly markets the Flex Belt as being "the first Ab Belt Toning system cleared by the FDA," and as "the first EMS (Electric Muscle Stimulation) product of its kind cleared by the FDA as a class II medical device for direct to consumer sales." This is literally false, since many similar products have been sold to consumers by obtaining a "substantially equivalent" approval since the 1970s.

15.    Slendertone also misleadingly markets the Flex Belt as a "product that [] produce[s] results - it is FDA-cleared technology that works." Slendertone markets the Flex Belt as an EMS device that assists with weight loss, improves body contouring, develops visible "six-pack" abs, and totally replaces traditional abdominal exercises – each of which FDA has specifically refuted and continues to refute.

16.    Slendertone also falsely and misleadingly conveys that there is scientific evidence suggesting that the Flex Belt will provide the same health benefits as a traditional physical workout. To the contrary, while some science supports the conclusion that EMS can temporarily improve strength or endurance, to some degree, of abdominal muscles themselves, no science has ever supported, and several studies specifically refute, that EMS use can provide the same health benefits as a traditional physical workout. Even in the most

4

favorable studies that conclude EMS can result in strength and endurance gains, the author warns that "[t]he potential to attain 'rock-hard abs' or 'buns of steel' without having to actually exercise is an attractive lure for many people" and that "[t]rying to capitalize on the vanity of consumers, a number of companies have incorporated NMES technology into abdominal stimulation belts and pad system."[2]  Even FDA has specifically warned against promotional claims being made for similar devices promoted on television and in infomercials, newspapers, and  magazines. In short, EMS technology is primarily used to address health or injury, not to address appearance. As such, while the Flex Belt might help temporarily boost strength and endurance in a situation where a user was previously injured or otherwise incapable of traditional exercise, it will not provide even close to the results promised by its broad claims.

17.     In 2002, the FTC brought actions against three top-selling electronic ab exercise belts for having falsely advertised that users will get "six pack" or "washboard" abs without exercise.[3] According to the FTC Chairman at the time, "[f]or years, marketers of diet and exercise products have been preying on overweight, out-of-shape consumers by hawking false hope in a pill, false hope in a bottle, and, now, in a belt. Unfortunately, there are no magic pills, potions, or pulsators for losing weight and getting into shape. The only winning combination is changing your diet and exercise." FTC brought an action, and obtained judgment, including injunction and money damages, for false and misleading advertising of EMS devices, identifying the following categories of false and misleading advertising:[4]

_____

[2] *The Effects of Neuromuscular Electrical Stimulation Training on Abdominal Strength, Endurance, and Selected Anthropometric Measures*, John P. Porcari, et al. (2005 Porcari Study)

[3] https://www.ftc.gov/news-events/press-r`eleases/2002/05/ftc-charges-three-top-selling-electronic-abdominal-exercise-belts

[4] Federal Trade Commission v. Electronic Products Distribution, L.L.C., et al., Southern District of California Case No. 02-cv-888BEN ("FTC Action"); Amended Complaint for Permanent Injunction and Other Equitable Relief can be viewed at https://tinyurl.com/yashswl7

*Loomis v. Slendertone Distribution, Inc.*
COMPLAINT

a.     Causing fat loss and inch loss (FTC Action at ¶¶ 21-22);

b.     Giving users well-defined abdominal muscles (e.g., "rock hard," "six pack" or "washboard" abs) (Id. at ¶¶ 23-24); and

c.     Equivalency or superiority to conventional abdominal exercises, such as sit-ups or crunches. (Id. at ¶ 25).

18.     To lose one pound of weight, the average individual must take in approximately 3,500 fewer calories than he or she expends.[5] EMS devices cannot cause or even assist in the loss of weight, inches, or fat from the human body. To lose weight, a person must exercise, or expend calories, while restricting caloric intake (e.g., diet). If EMS were to cause fat loss it would have to aid in expending calories. However, there is no scientific evidence that demonstrates that use of EMS devices can burn calories to the degree of volitional exercise, and probably not at all. In short, EMS will not be factor in weight loss and cannot provide any of the calorie burning benefits of traditional exercises, including abdominal exercises (like sit-ups, crunches, planking, etc.).

19.     There is no scientific evidence of any biophysical mechanism that would cause EMS to eliminate fat under the skin, or subcutaneous fat. Subcutaneous fat lies between the muscle tissue and the skin and reduces the definition of abdominal muscles. The higher the level of subcutaneous fat, the less defined a person's abs will look. Thus, use of an EMS device cannot result in visible "six pack" or otherwise visibly defined abdominal muscles in a user because it does nothing to reduce subcutaneous fat.

20.     Slendertone, utilizing at least the following false and/or misleading phrases to market and sell the Flex Belt, which individually and, especially taken together, confuse and mislead consumers into believing its use will cause weight loss, fat reduction, contour the body, result in visible "six pack" abs, and otherwise be a total replacement to traditional exercise:

---

[5] *Fed. Trade Comm'n v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1273 (S.D. Fla. 1999)

*Loomis v. Slendertone Distribution, Inc.*
COMPLAINT

a.   "GREAT ABS START HERE"

b.   "Rid Belly Fat with The Flex Belt"

c.   "The perfect abdominal contraction"

d.   "The Ultimate Workout for Abs"

e.   "The Flex Belt helps me stay fit"

f.   "The Flex Belt will stimulate all your major stomach muscles at the same time providing you with the perfect abdominal contraction – that means your upper abs, the lower abs and even your obliques are going to get worked from The Flex Belt . . . and it does all the work for you."

g.   "I can make dinner, I can do the laundry, read a book, sit on the couch or check e-mail. I put on The Flex Belt, it does all the work, and I get the result."

h.   "The Flex Belt is the first Ab Belt Toning system cleared by the FDA for Toning, Firming and Strengthening the stomach muscles. With The Flex Belt, you can train your abs even if you're too busy or too tired for a traditional workout. Just slip on the comfortable toning ab belt and the clinically demonstrated, patented medical-grade technology stimulates the nerves that make your muscles contract and relax. As a result, you get an effective abdominal workout that targets all the muscles in your abdomen – all in just 30 minutes a day."

i.   "You don't have to worry about your form or come up with the time to get it done. The Flex Belt is clinically demonstrated to deliver firmer, stronger and more toned abdominal muscles while you are: at home, at work, watching TV, exercising, folding laundry, helping your kids with their homework, taking a walk..."

j.   "My abs look great and when you look good, you feel good. I would have to do so many different exercises to get all my abs, but with The Flex Belt it works all the ab muscles at the same time."

k.   "I don't have to worry about my abs – they will be in shape."

l.   "Everybody I know wants the same thing: Great abs. The look, the confidence it gives us. The truth is, abs are a pain to work out. The Flex Belt saves you time, because it works all your abs at the same time. Just look how easy this is."

m.   "My abs feel like I have had the most amazing work out and I've just worn the belt around the house for 30 minutes. . . . It works."

7

n.  "I would do so many different exercises to get all of my abs, but with the Flex Belt it works all of the ab muscles at the same time. With the Flex Belt I don't have to worry about my abs -- this does work."

o.  "I just have to put it on, it does the work, and I get the results."

p.  "Being an athlete and fitness model for most of my life I know that good abs come from a lot of hard work. As my schedule kept getting busier I was having a tough time fitting in my ab workouts because I was spending my exercise time on other things, which is when I decided to give this ab belt a try. I was blown away by how intense the contractions were on my abs and how unbelievable they felt after my first Flex Belt abdominal workout. What was even more incredible was the convenience of it. I could put The Flex Belt® on and continue my day."

q.  "Before I experienced The Flex Belt, I had a difficult time training my abs due to a car accident that left me with a bad back. Abdominal exercises hurt my lower back. Thanks to The Flex Belt, I am able to take my ab workout to a whole new level. The best part is I get a great, pain free ab workout in while helping the kids with their homework, making dinner or watching a movie."

r.  "Maximum Core Strength"

s.  "Ultimate Toning Technology"

21.  As exemplars only, some of the claims above are depicted as follows:



*Loomis v. Slendertone Distribution, Inc.*
COMPLAINT



**Seeing Results with The Flex Belt**

By using it for only 30 minutes everyday, you should already be seeing apparent results in only a matter of weeks. The best part about this is that you do not have to completely devote you time in merely wearing the device. While you do so, you can also go on you go about with all your daily chores and responsibilities. So whether you are doing laundry, reading, or bonding with your baby, the Flex Belt has been designed to fit into whatever lifestyle.

Another thing about the device is that it is very comfortable. Its material is breathable so wearing it for long periods of time should not hamper ease. This feature will make this the best abs device for people that suffer from back problems. Anyone who is unable to do conventional exercises with such a condition should have no problem using the Felt Belt.

**The Flex Belt: Backed by the Pros**

This product is not only used by people that are in the medical field, this is also used by the top-performing athletes to constantly keep them in shape. In turn, this will make them a step closer to achieving success in their chosen field. This only goes to show just how much reputable the Flex Belt has grown over the years.

Find out how to get rid of belly fat fast the convenient way here.

Posted in Reviews6 Comments

*Loomis v. Slendertone Distribution, Inc.*
COMPLAINT





22.    In a separate "Before & After" section on its website, Slendertone depicts "before and after" pictures, falsely suggesting that use of the Flex Belt will result in body contouring and visible "six pack" abs:





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





*Loomis v. Slendertone Distribution, Inc.*
COMPLAINT



23.    Slendertone also utilizes images, adjacent to many of the claims complained of herein, of flat, toned, "six-pack" abdominal muscles on celebrities and models to convey that such results can be achieved through use of the Flex Belt.

## **PLAINTIFF'S PURCHASE AND RELIANCE**

24.    On or about April 22, 2016, plaintiff Jane Loomis purchased the Flex Belt through Amazon.com. In initially deciding to purchase the Flex Belt, plaintiff relied on Slendertone's claims that its use would result in weight loss, body contouring, well-defined abdominal muscles (e.g. "six-pack" abs), and that it could replace traditional exercise to result in improved health, fitness, and body shape. Plaintiff thereafter purchased some replacement gel pads as instructed by Slendertone. Plaintiff relied not only on the false and misleading claims identified herein on the Slendertone Flex Belt website, but on the false and misleading promises and affirmations contained on the Amazon webpage, which includes many, if not all, of the claims asserted on the Flex Belt website, on Facebook advertisements, and television commercials. The following are some exemplars of advertising on the Amazon webpage:

*Loomis v. Slendertone Distribution, Inc.*
COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



THE FLEX BELT will stimulate all your major stomach muscles at the same time providing you with the perfect abdominal contraction – that means your upper abs, the lower abs and even your obliques are going to get worked from THE FLEX BELT. ..and it does all the work for you. You don't have to worry about your form or come up with the time to get it done.

THE FLEX BELT is clinically demonstrated to deliver firmer, stronger and more toned abdominal muscles while you are: at home, at work, watching TV, exercising, folding laundry, helping your kids with their homework, taking a walk. ..virtually anytime and anywhere.

Clinically demonstrated results you can see and feel in just weeks.



**THE FLEX BELT can work for you, too.**



**Adrianne Curry – TV Star and Fitness Fanatic – Winner America's Next Top Model**

The Flex Belt tightens, tones and strengthens my stomach without me even having to think about it. It has taken my abs to a whole other level. I can take it anywhere. The Flex Belt is incredibly portable. With the Flex Belt. ..working out my core might be the easiest thing I do all day.

It's something that I don't have to put thought into and nobody even has to know I have it on, because it hides under your clothes. I can make dinner, I can do the laundry, read a book, sit on the couch or check e-mail. I put on The Flex Belt, it does all the work, and I get the results.

*Loomis v. Slendertone Distribution, Inc.*
COMPLAINT



# About this item

## Features

- Ultimate Toning Technology
- Intense Abs Workout
- Maximum Core Strength
- FDA Cleared for Toning, Firming and Strengthening Ab Muscles
- In a 6 week clinical trial, 100% of users reported firmer, more toned abs and a 72% increase in abdominal muscle endurance (core strength) when used 5 times per week for 6 weeks.
- Kindly refer the user manual attached below for troubleshooting steps and instructions.

## Product information

| Product Dimensions | 10.7 x 7.1 x 2.8 inches |
|---|---|
| Item Weight | 1.2 pounds |
| Shipping Weight | 1.3 pounds |
| Department | unisex-adult |
| Manufacturer | The Flex Belt |

*Loomis v. Slendertone Distribution, Inc.*
COMPLAINT

25.    In purchasing the Flex Belt, Ms. Loomis was seeking a product that would allow her to replace traditional abdominal exercise and permit her to engage in other activities while at the same time achieving all of the benefits of traditional exercise, that use as directed would result in fat loss, body contouring, and well-defined abdominal muscles. Ms. Loomis relied on Slendertone's advertising claims to believe that what she was purchasing would provide these benefits.

26.    The advertising of the Flex Belt, however, was misleading, and had the capacity, tendency, and likelihood to confuse or confound Ms. Loomis and other consumers acting reasonably (including the putative class), as described in detail herein.

27.    Ms. Loomis acted reasonably in relying on Slendertone's advertising and claims, which Slendertone intentionally placed on its website, various third party advertisers, social

media, and third party retailers like Amazon.com, with the intent to induce average consumers into purchasing the Flex Belt.

28. The Flex Belt cost more than similar products without misleading advertising and would have cost less absent the false and/or misleading advertising.

29. If Slendertone was enjoined from engaging in the false and/or misleading advertising, the market demand and price for the Flex Belt would drop, as it has been artificially and fraudulently inflated due to Slendertone's use of deceptive advertising.

30. Ms. Loomis paid more for the Flex Belt, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading claims complained of herein.

31. For these reasons, the Flex Belt was worth less than what Ms. Loomis paid for it, and may have been worth nothing at all.

32. Ms. Loomis would consider purchasing an EMS device again in the future if she were assured that the product was marketed truthfully and not falsely or misleadingly, and that the price of the product matched the benefit of the bargain she expected, for instance, only in providing temporary strengthening or toning of abdominal muscles (or other muscles to which the EMS device is directed) and not for a replacement for traditional exercise, weight-loss, fat loss, body-contouring, and for visible "six pack" abs.

33. Moreover, Ms. Loomis is not a scientist and would have no way of knowing if, in the future, FDA approves a medical device for those benefits she originally thought she was obtaining from the Flex Belt. Thus, if technology does exist in the future that will permit a user to obtain the benefits she sought (including fat loss, replacement for traditional exercise, and well-defined abdominal muscles), and Ms. Loomis was assured that such advertising was not false or misleading because Slendertone were enjoined from engaging in false advertising and she knew she could safely rely on such claims, she would purchase an EMS device from Slendertone in the future.

## CLASS ACTION ALLEGATIONS

34. Pursuant to Fed. R. Civ. P. 23, plaintiff seeks to represent a class comprised of all persons in California who, at any time from four years preceding the date of this Complaint

17

to the time a class is notified, purchased the Flex Belt for their own personal, family, or household use and not for resale

35.    Plaintiff nevertheless reserves the right to divide into subclasses, expand, narrow, more precisely define, or otherwise modify the class definition prior to (or as part of) filing a motion for class certification.

36.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

37.    Questions of law and fact common to plaintiff and the Class include:

   a.    Whether Slendertone's various advertising claims are material to reasonable consumers;

   b.    Whether Slendertone's various advertising claims are false, misleading, or reasonably likely to deceive the public or consumers acting reasonably because the Flex Belt is not capable of providing the benefits advertised;

   c.    Whether Slendertone made any statement it knew or should have known was false or misleading;

   d.    Whether Slendertone's practices were immoral, unethical, unscrupulous, or substantially injurious to consumers;

   e.    Whether the utility of any of Slendertone's practices, if any, outweighed the gravity of harm to its victims;

   f.    Whether Slendertone's conduct violated public policy;

   g.    Whether the consumer injury caused by Slendertone's conduct was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided;

   h.    Whether Slendertone's policies, acts, and practices with respect to the Flex Belt were designed to, and did result in the purchase and use of the Flex Belt by the class members primarily for personal, family, or household purposes;

i. Whether Slendertone represented that the Flex Belt has characteristics, uses, or benefits which they do not have, within the meaning of Cal. Civ. Code § 1770(a)(5);

j. Whether Slendertone represented that the Flex Belt is of a particular standard, quality, or grade, when it was really of another, within the meaning of Cal. Civ. Code § 1770(a)(7);

k. Whether Slendertone advertised The Flex Belt with the intent not to sell them it as advertised, within the meaning of Cal. Civ. Code § 1770(a)(9);

l. Whether Slendertone represented that the Flex Belt has been supplied in accordance with previous representations when it has not, within the meaning of Cal. Civ. Code § 1770(a)(16);

m. Whether through the challenged labels and advertising, Slendertone made affirmations of fact or promises, or descriptions of the goods;

n. Whether Slendertone's affirmations of fact or promises, or descriptions of the goods became part of the basis of the bargain for the Class's purchases;

o. Whether Slendertone failed to provide the goods in conformation with its affirmations of fact, promises, and descriptions of the goods;

p. Whether Slendertone's conduct violates state or federal statutes or regulations;

q. The proper amount of damages, including punitive damages;

r. The proper amount of restitution;

s. The proper scope of injunctive relief; and

t. The proper amount of attorneys' fees.

38. These common questions of law and fact predominate over questions that affect only individual Class Members.

39. Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Slendertone's conduct.

Specifically, all Class Members, including plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Flex Belt and suffered economic injury because the Flex Belt's advertising is false and/or misleading. Absent Slendertone's business practice of deceptively and unlawfully labeling the Flex Belt, plaintiff and Class Members would only have been willing to pay less, or unwilling to purchase the product at all.

40.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising.

41.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

42.     Slendertone has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

43.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

44.     Class treatment may also be appropriate as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**

### **Violations of the Unfair Competition Law,**

### **Cal. Bus. & Prof. Code § 17200 *et seq.***

45.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

46.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

47.     The acts, omissions, misrepresentations, practices, and non-disclosures of Slendertone as alleged herein constitute business acts and practices.

**Fraudulent**

48. A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

49. As set forth herein, Slendertone's claims relating to the Flex Belt are likely to deceive reasonable consumers and the public.

**Unlawful**

50. The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 352 *et seq.*, and specifically § 352(a) (prohibiting labeling that is "false or misleading in any particular"). Further, Section 201(n) states that if an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading, there shall be taken into account (among other things) representations made or suggested by statement, word, design, device, or any combination thereof. The phrase "false or misleading" is not confined in meaning to untrue, forged, fraudulent, or deceptive. In fact, the word, statement, or illustration may be true in the strict sense of the word; however, the labeling can violate of the law if it proves deceptive to the customer. It is not a necessary condition that the labeling should be flatly and baldly false; the word "misleading" in the Act means that labeling is deceptive if it is such as to create or lead to a false impression in the mind of the reader. A "false impression" may result not only from a false or deceptive statement, but may also be instilled in the mind of the purchaser by ambiguity or misdirection; and

- The California Sherman Food, Drug, and Cosmetic Act, Cal. Health & Safety Code §§ 109875 *et seq.*, including § 111330.

21

**Unfair**

51.     Slendertone's conduct with respect to the labeling, advertising, and sale of the Flex Belt was unfair because Slendertone's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

52.     Slendertone's conduct with respect to the labeling, advertising, and sale of the Flex Belt was also unfair because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law.

53.     Slendertone's conduct with respect to the labeling, advertising, and sale of the Flex Belt was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

54.     Slendertone profited from its sale of the falsely, deceptively, and unlawfully advertised product to unwary consumers.

55.     Plaintiff and Class Members are likely to be damaged by Slendertone's continued deceptive trade practices, as Slendertone continues to falsely advertise and sell the Flex Belt. Thus, injunctive relief enjoining this deceptive practice is proper.

56.     Slendertone's conduct caused and continues to cause substantial injury to plaintiff and the other Class Members, who have suffered injury in fact as a result of Slendertone's unlawful conduct.

57.     In accordance with Bus. & Prof. Code § 17203, plaintiff, on behalf of herself, the Class, and the general public, seeks an order enjoining Slendertone from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

58.     Plaintiff, on behalf of herself and the Class also seeks an order for disgorgement and restitution of all monies from the sale of the Flex Belt and replacement gel pads, which were unjustly acquired through acts of unlawful competition.

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

59.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

60.    Under the FAL, "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

61.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Slendertone relating to the Flex Belt misled consumers acting reasonably that use of the Flex Belt will result in weight loss, body contouring, fat loss, well-defined abdominal muscles (i.e. visible "six pack" abs), and/or is a more or equally effective replacement for traditional abdominal exercises.

62.    Plaintiff suffered injury in fact as a result of Slendertone's actions as set forth herein because plaintiff purchased the Flex Belt in reliance on Slendertone's false and misleading marketing claims.

63.    Slendertone's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Slendertone has advertised the Flex Belt in a manner that is untrue and misleading, which Slendertone knew or reasonably should have known.

64.    Slendertone profited from its sales of the falsely and deceptively advertised the Flex Belt to unwary consumers.

65.    As a result, pursuant to Cal. Bus. & Prof. Code § 17535, plaintiff and the Class are entitled to injunctive and equitable relief and restitution.

### THIRD CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act,

### Cal. Civ. Code §§ 1750 *et seq.*

66.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

67.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

68.     Slendertone's false and misleading labeling and other policies, acts, and practices described herein were designed to, and did, induce the purchase and use of the Flex Belt for personal, family, or household purposes by plaintiff and other Class Members, and violated and continue to violate at least the following sections of the CLRA:

a.     § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.     § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.     § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.     § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

69.     Slendertone profited from its sales of the falsely, deceptively, and unlawfully advertised the Flex Belt to unwary consumers.

70.     Slendertone's wrongful business practices regarding The Flex Belt constituted, and constitute, a continuing course of conduct in violation of the CLRA.

71.     Pursuant to California Civil Code § 1782, plaintiff notified Slendertone in writing by certified mail, return receipt requested of her claims and the particular violations of § 1770 of the Act, but Slendertone failed to remedy the violations within 30 days thereafter. Because Slendertone failed to implement remedial measures, plaintiff, on behalf of herself

and the Class, seeks actual and punitive damages, including attorneys' fees, as well as restitution and injunctive relief.

72.     In compliance with Cal. Civ. Code § 1782(d), an affidavit of venue is filed concurrently with this Complaint.

## FOURTH CAUSE OF ACTION
### Breaches of Express Warranties,
### Cal. Com. Code § 2313(1)

73.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

74.      Through the Flex Belt's advertising, Slendertone made affirmations of fact or promises, or description of goods, that the Flex Belt provides specific benefits which it does not. These representations were "part of the basis of the bargain," in that plaintiff and the Class purchased the products in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

75.     Slendertone breached its express warranties by selling products that do not provide the benefits promised by the advertising claims.

76.     That breach actually and proximately caused injury in the form of the lost purchase price that plaintiff and Class members paid for the Flex Belt.

77.     Plaintiff notified Slendertone of the breach prior to filing, but Slendertone failed to rectify the breach.

78.     As a result, plaintiff seeks, on behalf of herself and other Class Members, actual damages arising as a result of Slendertone' breaches of express warranty.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability,
### Cal. Com. Code § 2314

79.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

80.   Slendertone, through its acts set forth herein, in the sale, marketing, and promotion of the Flex Belt, made representations to plaintiff and the Class that, among other things, the Flex Belt will result in weight loss, well-defined abdominal muscles, and is a superior or equal replacement for traditional abdominal exercises.

81.   Slendertone is a merchant with respect to the goods of this kind which were sold to plaintiff and the Class, and there was, in the sale to plaintiff and other consumers, an implied warranty that those goods were merchantable.

82.   However, Slendertone breached that implied warranty in that the Flex Belt does not conform to the various advertising claims made by Slendertone.

83.   As an actual and proximate result of Slendertone's conduct, plaintiff and the Class did not receive goods as impliedly warranted by Slendertone to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods, in violation of Cal. Com. Code § 2314(2)(f).

84.   Plaintiff notified Slendertone of the breach prior to filing, but Slendertone failed to rectify the breach.

85.   As a result, plaintiff seeks, on behalf of herself and other Class Members, actual damages arising as a result of Slendertone' breaches of implied warranty.

**PRAYER FOR RELIEF**

86.   Wherefore, plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Slendertone as to each and every cause of action, and the following remedies:

A.   An Order declaring this action to be a proper class action, appointing plaintiff as class representative, and appointing undersigned counsel as class counsel;

B.   An Order requiring Slendertone to bear the cost of class notice;

C.   An Order enjoining Slendertone from using any challenged labeling or marketing claim that is found to be false, misleading, or unlawful;

D.   An Order compelling Slendertone to conduct a corrective advertising campaign;

*Loomis v. Slendertone Distribution, Inc.*
COMPLAINT

E.      An Order compelling Slendertone to destroy all misleading and deceptive advertising materials, and The Flex Belt' product packaging and labels that bear such misleading and deceptive claims;

F.      An Order requiring Slendertone to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising;

G.      An award of attorneys' fees and costs;

H.      An Order requiring Slendertone to pay statutory, compensatory, and punitive damages where permitted by law;

I.      Pre- and post-judgment interest; and

J.      Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

87.     Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: April 26, 2019          /s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Attorneys for Plaintiff and the Putative Class***