# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE LOOMIS, on behalf of herself, all others similarly situated, and the general public,<br><br>                            Plaintiff,<br><br>v.<br><br>SLENDERTONE DISTRIBUTION, INC.,<br><br>                        Defendant. | Case No.  3:19-cv-854 - MMA (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br><br>[Doc. No. 8] |

Jane Loomis, on behalf of herself and others similarly situated, ("Plaintiff") filed a putative class action complaint against Slendertone Distribution, LLC ("Defendant"), alleging five causes of action under California law: (1) violations of the Unfair Competition Law ("UCL"); (2) violations of the False Advertising Law ("FAL"); (3) violations of the Consumer Legal Remedies Act ("CLRA"); (4) breach of express warranty; and (5) breach of the implied warranty of merchantability.  *See* Doc. No. 1 ("Compl.").[1]  On July 12, 2019, Defendant filed a motion to dismiss the class action

---

[1]  All citations refer to the pagination assigned by the CM/ECF system.

complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(2), and 12(b)(6). *See* Doc. No. 8. Plaintiff filed an opposition to Defendant's motion, and Defendant replied. *See* Doc. Nos. 13, 15. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 16. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss.

<u>BACKGROUND</u>[2]

This action arises out of the sale of the Flex Belt by Defendant to Plaintiff on or about April 22, 2016. Compl. ¶ 24. The central issues arise from statements and representations made in Defendant's Flex Belt advertisements.

Plaintiff is an individual domiciled in San Diego, California and brings the action on behalf of herself and a potential class of similarly situated individuals. *Id.* ¶ 5, 34. Defendant is incorporated in and has its principal place of business in New Jersey. *Id.* ¶ 6.

Defendant markets and sells the Flex Belt, an electrical muscle stimulator (EMS). *Id.* ¶ 3. EMS devices are considered Class II Medical Devices by the Food and Drug Administration ("FDA"). The FDA has cleared the Flex Belt as a device that "may be able to temporarily strengthen, tone or firm a muscle." *Id.* ¶ 3; Doc. No. 8-8 at 2. However, the FDA has "specifically disapproved such devices to assist with weight loss, contour the body, develop visible "six-pack" abs, or otherwise to replace traditional exercise." *Id.* ¶ 3. Moreover, the Federal Trade Commission ("FTC") "has already determined that any claims that such ab devices cause fat loss and inch loss, will give users well-defined abdominal muscles (e.g., 'rock hard,' 'six pack' or 'washboard' abs),

---

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

or that use of the ab devices is equivalent to conventional abdominal exercises, such as sit-ups or crunches, are false and misleading." *Id.*

Plaintiff alleges Defendant advertised that the Flex Belt would help consumers achieve the benefits of traditional exercise without traditional exercise. Plaintiff claims she relied on Flex Belt's website and Amazon.com listing before purchasing a Flex Belt and, later, replacement gel pads. *Id.* ¶ 3, 24. Essentially, Plaintiff alleges that Defendant's advertisements were false or misleading because Defendant advertises that using the Flex Belt "would assist in weight loss, body contouring, develop visible 'six-pack' abs, and could be used effectively as a replacement for abdominal exercises." *Id.* ¶ 4. In addition to Defendant's website and Amazon.com listing, Plaintiff claims she also relied on information from Defendant's Facebook advertisements and television commercials. Defendant's other advertising initiatives include "celebrity endorsements, paid-advertisement articles, paid bloggers, social media . . . and third-party retailers. *Id.* ¶ 11.

Plaintiff points to numerous quotations from Defendant's Flex Belt marketing:

GREAT ABS START HERE[.]

Rid Belly Fat with The Flex Belt[.]

The perfect abdominal contraction[.]

The Ultimate Workout for Abs[.]

The Flex Belt helps me stay fit[.]

The Flex Belt will stimulate all your major stomach muscles at the same time providing you with the perfect abdominal contraction—that means your upper abs, the lower abs and even your obliques are going to get worked from The Flex Belt . . . and it does all the work for you.

I can make dinner, I can do the laundry, read a book, sit on the couch or check e-mail.  I put on The Flex Belt, it does all the work, and I get the result.

The Flex Belt is the first Ab Belt Toning system cleared by the FDA for Toning, Firming and Strengthening the stomach muscles.  With The Flex Belt, you can train your abs even if you're too busy or too tired for a traditional workout.  Just slip on the comfortable toning ab belt and the clinically demonstrated, patented medical-grade technology stimulates the nerves that make your muscles contract and relax.  As a result, you get an effective abdominal workout that targets all the muscles in your abdomen— all in just 30 minutes a day.

You don't have to worry about your form or come up with the time to get it done. The Flex Belt is clinically demonstrated to deliver firmer, stronger and more toned abdominal muscles while you are: at home, at work, watching TV, exercising, folding laundry, helping your kids with their homework, taking a walk . . . [.]

My abs look great and when you look good, you feel good.  I would have to do so many different exercises to get all my abs, but with The Flex Belt it works all the ab muscles at the same time.

I don't have to worry about my abs – they will be in shape.

Everybody I know wants the same thing: Great abs. The look, the confidence it gives us. The truth is, abs are a pain to work out.  The Flex Belt saves you time, because it works all your abs at the same time.  Just look how easy this is.

My abs feel like I have had the most amazing work out and I've just worn the belt around the house for 30 minutes. . . . It works.

I would do so many different exercises to get all of my abs, but with the Flex Belt it works all of the ab muscles at the same time.  With the Flex Belt I don't have to worry about my abs—this does work.

I just have to put it on, it does the work, and I get the results.

Being an athlete and fitness model for most of my life I know that good abs come from a lot of hard work.  As my schedule kept getting busier I was

4

having a tough time fitting in my ab workouts because I was spending my exercise time on other things, which is when I decided to give this ab belt a try. I was blown away by how intense the contractions were on my abs and how unbelievable they felt after my first Flex Belt abdominal workout. What was even more incredible was the convenience of it. I could put The Flex Belt® on and continue my day.

Before I experienced The Flex Belt, I had a difficult time training my abs due to a car accident that left me with a bad back. Abdominal exercises hurt my lower back. Thanks to The Flex Belt, I am able to take my ab workout to a whole new level. The best part is I get a great, pain free ab workout in while helping the kids with their homework, making dinner or watching a movie.

Maximum Core Strength[.]

Ultimate Toning Technology[.]

*Id.* ¶ 20.[3] Defendant's website also states the following:

Who Should Use the Flex Belt®? . . . Anyone that wants more attractive abs, regardless of current fitness levels . . . . * The Flex Belt® does not remove inches of fat but it tones, tightens and strengthens your stomach muscles

Build a strong foundation for any exercise program—The Flex Belt's® technology will work for you **quickly and effectively**. If you haven't exercised in a while, you know how hard it can be to motivate yourself to start again. And if you do have a regular exercise program, you know how hard it can be to find the time to get to the gym with your busy schedule. With The Flex Belt®, it doesn't matter what your current exercise status is because **there will always be time to build firmer, stronger abs**. This product is perfect for Casual Exercisers, Fitness Enthusiasts who are already in great shape, Executives who don't have time to make it to the gym,

---

[3] To the extent Plaintiff notes discrepancies between these quotations and what is stated on the actual website, which the Court considers pursuant to the incorporation-by-reference doctrine, the Court addresses the issue *infra*.

> Seniors, Mothers, People with sore backs, **and anyone that wants more attractive abs, regardless of current fitness levels**.
>
> The Flex Belt® can work for you too . . . For those looking for a convenient way to tone, strengthen and flatten the abdominal area, you couldn't make a more solid choice than The Flex Belt®. No matter what else you are doing to work on your stomach area—The Flex Belt® will enhance it. Ab workouts are usually the type of exercise that take a lot of time, dedication, and effort. The Flex Belt® is ideal for everyone who feels he or she doesn't have the time to fit enough ab exercises into their routine. It is also great for fitness enthusiasts who want to take their workouts to the next level. Additionally, The Flex Belt® intensity can be adjusted from level 1-150. As you use this effective ab belt, your muscle strength continually increases. As your abs get stronger you can keep increasing the intensity to always keep yourself advancing.

Doc. No. 8-5 at 6, 8, 9.

Additionally, Plaintiff's Complaint includes screenshots from Defendant's website and Amazon.com listing. *Id.* ¶ 21–24. Plaintiff relies upon testimonials from Flex Belt users to support her claims. *See id.* ¶ 21; Doc. No. 8-5 at 5. Moreover, Defendant's advertising contains several images throughout its Website and Amazon.com listing of individuals with "flat, toned, 'six-pack' abdominal muscles on celebrities and models to convey that such results can be achieved through use of the Flex Belt." Compl. ¶ 23; *see also id.* ¶ 22; Doc. No 8-5 at 3–10; Doc. No. 8-6 at 2–5.

Defendant's website and Amazon.com listing also contain language designed to mitigate expectations of consumers using the Flex Belt:

> Here at The Flex Belt® we believe that having a healthy diet and getting exercise are key to a balanced lifestyle. All of our endorsers use The Flex Belt in addition to their healthy lifestyle to give them an edge and take their results to the next level. The Flex Belt does not remove inches of fat but it tones, tightens and strengthens your stomach muscles. Using The Flex Belt in conjunction with your dedication to Diet, Nutrition and Exercise can help you achieve your goals of a more attractive stomach as well!

Our Motto is Eat Right, Exercise and Use The Flex Belt . . . [.]

The Flex Belt® does not remove inches of fat but it tones, tightens and strengthens your stomach muscles[.]

Winner of the 2012 World Bodybuilding & Fitness Federation Championship! Jill has been a Flex Belt Spoke[s]pers[o]n for the last few years and we proudly sponsored her for this WBFF competition. Jill also won the Ms Universe Figure Championships a Few Years ago. Since then she hasn't competed and she came out of retirement to compete in the WBFF 2012 championships. In conju[n]ction with her grueling workout regimen, Jill used The Flex Belt® and Flex Mini (our Butt Toning Product) daily to supplement her program. Congratulations Jill - We Knew You Would Win!!

**Our Motto - Live Healthy.**
Here at **The Flex Belt** we believe in living a healthy lifestyle. Having a healthy diet and getting exercise are key to a balanced life. We have aligned ourselves with Celebrities and Professional Athletes who believe the same. All of our endorsers use The Flex Belt in addition to their healthy lifestyle.

Our Motto is Eat Right, Exercise and use **The Flex Belt**.

**The Flex Belt** is not a weight loss or fat reduction product. You will need a proper diet and regular exercise for that!

Doc. No. 8-5 at 4, 6, 7; Doc. No. 8-6 at 5. Regardless of the somewhat mitigating statements, Plaintiff alleges Defendant's advertising falsely and misleadingly suggests Flex Belt consumers will gain the health and appearance benefits of traditional exercise. *See* Compl. ¶ 4, 16, 20, 22, 23, 24, 25.

<u>REQUEST FOR JUDICIAL NOTICE</u>

**A. Legal Standard**

Generally, a district court's review on a 12(b)(6) motion to dismiss is "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)).

However, "a court may take judicial notice of matters of public record," *id.* at 689 (internal quotations omitted), and of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125–26; *see also* Fed. R. Evid. 201. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir. 1986) (citing *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,* 245 F.2d 67, 70 (9th Cir. 1956)).

**B. Discussion**

Defendant requests the Court to take judicial notice of a printout from the FDA's website entitled "Electronic Muscle Stimulators." *See* Doc. No. 8-1 at 2; Doc. No. 8-8 at 2–4. Plaintiff does not address or oppose this request. The Court finds judicial notice of these documents is proper pursuant to Federal Rule of Evidence 201(b). *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1159 (S.D. Cal. 2015) (granting plaintiff's and defendant's requests for judicial notice of two printouts from the FDA's website); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008) (granting judicial notice of labels from the FDA's website because the documents are "capable of accurate and ready determination" and "not subject to reasonable dispute"); *see also Interstate Nat. Gas Co. v. S. California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) ("[The court] may take judicial notice of records and reports of administrative bodies."). Therefore, the Court **GRANTS** Defendant's request for judicial notice.

Plaintiff incorporates Defendant's online advertising into her Complaint. *See, e.g.*, Compl. ¶ 20–26. Defendant argues that "Plaintiff cherry-picks quotes from Slendertone's online advertising to create the appearance of a misleading narrative." Doc. No. 8 at 20.

Defendant argues its advertisements "are neither false nor misleading when read in context." *Id.* Defendant attaches exhibits to its motion to give the full picture of Defendant's website and Amazon.com listing in the Complaint. *See* Doc. No. 8-4. However, Defendant does not request the Court to take judicial notice of these exhibits. *See* Doc. No. 8-1. Plaintiff does not directly address Defendant's cherry-picking argument or challenge the authenticity of Defendant's proffered exhibits. Instead, she rests on the facts pleaded in her Complaint, emphasizing "the Court 'must accept as true all the factual allegations in the complaint.'" Doc. No. 13 at 20 (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)).

Despite Defendant failing to request judicial notice, the Court has the power to grant judicial notice sua sponte. Fed. R. Evid. 201(c)(1). Several district courts have found judicial notice proper over publicly available websites. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) (noting that publicly available website are proper subjects of judicial notice); *Caldwell v. Caldwell*, No. C 05-4166 PJH, 2006 WL 618511, at *3 (N.D. Cal. Mar. 13, 2006) (finding websites as proper subjects of judicial notice but denying the request for judicial notice where the parties did not supply the Court with copies of the website and the parties failed to agree on the content of the website); *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965 (C.D. Cal. 2005) (granting judicial notice over two Amazon.com webpages). Accordingly, given Defendant's advertisements are on publicly available websites and Plaintiff does not dispute their contents, the Court sua sponte takes judicial notice of the printouts from Defendant's website and its Amazon.com listing.

### INCORPORATION-BY-REFERENCE

#### A. Legal Standard

"Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.

9

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006)). The Ninth Circuit has noted that there is a "policy concern underlying the rule: Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino*, 146 F.3d at 706; *see also Khoja*, 899 F.3d at 1003 ("[T]he the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs."). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the "incorporation by reference" doctrine applies with equal force to internet pages as it does to printed material."). Incorporation-by-reference allows a court to "treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. While a court "unlike judicial notice . . . may assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6). . . . it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

**B. Discussion**

Incorporation-by-reference is a proper vehicle to allow the Court to consider the exhibits containing printouts from Defendant's website and Amzon.com listing. Plaintiff refers and uses screenshots from both webpages to support her Complaint. *See* Compl. ¶ 20–26. Defendant's motion relies extensively upon the same materials. *See* Doc. No. 8-4. Therefore, the Court finds the printouts of Defendant's website and Amazon.com

listing—as supplied by Defendant—proper subjects of incorporation-by-reference to the extent that the website printouts are not a means to "short-circuit the resolution of a well-pleaded claim" by "serv[ing] to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.

Similarly, incorporation-by-reference is proper for the Flex Belt warranty. *See* Doc. No. 8-3 at 3. Plaintiff's fourth cause of action is breach of an express warranty. Compl. ¶ 73–78. Plaintiff does not dispute the authenticity or challenge the existence of the product warranty. Importantly, because an element of breach of express warranty is "an affirmation of fact or promise or provided a description of its goods," *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) (quoting *Rodarte v. Philip Morris, Inc.*, No. 03–0353FMC, 2003 WL 23341208, *7 (C.D. Cal. June 23, 2003), an actual product warranty could be the basis of the plaintiff's claim. *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1131 (N.D. Cal. 2010) (finding a limited warranty subject to incorporation-by-reference when the plaintiff alleged the defendant made a representation going to the breach of express warranty cause of action). Therefore, the Court finds the Flex Belt warranty supplied by Defendant as incorporated by reference into the Complaint.

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Rule 12(b)(2) allows a Defendant to move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Upon a motion to dismiss, Plaintiff carries the burden to demonstrate proper jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990)). In opposing such a motion, a plaintiff relying solely on written materials must only make a prima facie showing that jurisdiction is appropriate. *Id.* (citing *Sher*, 911 F.2d at 1361). In assessing personal jurisdiction, the plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995). The Court resolves conflicts

between the parties' affidavits in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800 (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996)).

There are two independent limitations on a court's power to exercise personal jurisdiction over a nonresident defendant: the applicable state personal jurisdiction rule, and constitutional principles of due process. *Sher*, 911 F.2d at 1361. California's jurisdictional statute is coextensive with federal due process requirements; therefore, jurisdictional inquiries under state law and federal due process standards merge into one analysis. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 (9th Cir. 1993); *see also* Cal. Civ. Proc. Code § 410.10. The exercise of jurisdiction over a nonresident defendant violates the protections created by the due process clause unless the defendant has "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

The Court proceeds by assessing whether personal jurisdiction over Defendant comports with federal due process requirements under either general or specific jurisdiction.

**A. General Jurisdiction**

General jurisdiction—as applied to a corporation—arises when a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 139 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Int'l Shoe Co.*, 326 U.S. at 318. "[T]he place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137 (quoting Lea Brilmayer Jennifer, et al., *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 735 (1988)).

The place of incorporation and principal place of business are not the only means to achieve general jurisdiction for a corporation. *Id.* However, "[o]nly in an 'exceptional

case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler AG*, 571 U.S. at 139 n.19). The "exceptional case" centers upon "whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render it *essentially at home* in the forum State'"—not whether the contacts are merely "continuous and systematic." *Daimler AG*, 571 U.S. at 138–39 (quoting *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919) (emphasis added); *see also Martinez*, 764 F.3d at 1070. "The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.'" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011) (citing *Schwarzenegger*, 374 F.3d at 801).

To determine whether a corporation is "essentially at home," sufficient to trigger the exceptional case, courts examine the "[l]ongevity, continuity, volume, [and] economic impact" of those contacts, as well as the defendant's "physical presence[] and integration into the state's regulatory or economic markets." *See Mavrix Photo, Inc*, 647 F.3d at 1224. Importantly, a general jurisdiction analysis requires "an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Daimler AG*, 571 U.S. at 139 n.20.

The Ninth Circuit found a corporation not subject to general jurisdiction in California where it had its principal place of business outside the forum state; had no office, staff, or physical presence in the forum state; and was not licensed within the forum state. *Martinez*, 764 F.3d at 1070. Further, the Ninth Circuit did not find general jurisdiction in California proper where a defendant indirectly made purchases of items imported by California entities, had a California choice-of-law provision with some of his sales contracts, used a California direct-mail marketing company, hired a California-incorporated sales training company for consulting, and had a "website accessible by

anyone capable of using the Internet, including people living in California."
*Schwarzenegger*, 374 F.3d at 801; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) ("[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.").

Here, Plaintiff claims the Court has general jurisdiction over Defendant. Doc. No. 13 at 12–14. Defendant counters that it is not "essentially at home" for the purpose of general jurisdiction. Doc. No. 8 at 5–6. Defendant is incorporated in and has its principal place of business in New Jersey, and it is organized under Delaware Law. Compl. ¶ 2; Doc. No. 6-2 at 2. Thus, there is no "paradigm basis" for general jurisdiction over Defendant. *See Daimler*, 571 U.S. at 137.

Given the lack of the paradigm basis for general jurisdiction, Plaintiff continues to carry the burden to demonstrate—under an "exacting standard" only found in exceptional cases—whether Defendant "engages in a substantial, continuous, and systematic course of business" to render it "essentially at home" in California. *Daimler AG*, 571 U.S. at 139. Plaintiff does not meet her burden. As a preliminary matter, Plaintiff overlooks Supreme Court precedent emphasizing the "essentially at home" portion of the general jurisdiction analysis.[4]

Plaintiff argues that general jurisdiction is satisfied because "Slendertone sells, solicits, and engages in business in California, serving the state's market, has designated an agent for service of process in California, and is registered with the California

---

[4] For example, Plaintiff cites to a California Supreme Court case from 1969—long before the Supreme Court's seminal cases outlining the parameters of general jurisdiction. *Compare Buckeye Boiler Co. v. Superior Court of Los Angeles Cty.*, 71 Cal. 2d 893 (1969), *with Daimler AG*, 571 U.S. 117. First, this Court is not bound by state court cases regarding the federal due process requirements for personal jurisdiction. Second, Plaintiff misreads *Buckeye* and attempts to use a specific jurisdiction "minimum contacts" analysis to argue general jurisdiction. Third, Plaintiff focuses on "continuous and systematic" contacts with the forum state while overlooking the critical part of the rule propounded by the Supreme Court: whether the contacts are so continuous and systematic to render Defendant "*essentially at home*" in California. *Daimler AG*, 571 U.S. at 139 (emphasis added).

Secretary of State.  Doc. No. 13 at 13; *see also* Doc. No. 13-1 at 2; Doc. No 13-2 at 2; Doc. No 13-3 at 2.  Plaintiff also highlights that Defendant uses "television commercials," "a website, celebrity endorsements, paid-advertisement articles, paid bloggers, social media (including Facebook)[,] and third party retailers."  Compl. ¶ 11, 24.  Supplying supporting exhibits from advertisements on Defendant's website, Plaintiff argues Defendant specifically targets California residents:

> Slendertone targets, specifically, California residents through its own website, claiming "We put The Flex Belt® in [the] hands of some of best Trainers in Los Angeles. These are people that are in peak physical shape and understand how to work their abs." . . . . Slendertone also touts that it has "2 Million users worldwide." . . . . The Slendertone website even includes a broad banner stating "Hear what some of the biggest Disc Jockeys in America have to say . . ." and includes a link to a radio broadcast from "Ellen K from the Ryan Seacrest Show" and advertises that she is the "#1 Female DJ in Los Angeles" and a link to listen to "what Howard Stern has to say about the Flex Belt®.  The biggest man in radio.

Doc. No. 13 at 13 (citations omitted) (emphasis omitted).  The fact that a few people have the product or advocate the product from California does not meet the exacting standard that makes Defendant "essentially at home" in California.  *See Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 418 (holding that regular purchases are insufficient to trigger general jurisdiction).  Even though a designated service for process agent and registration with the California Secretary of State are factors indicating a presence within California, they still do not suggest that Defendant is essentially "at home" in California.

Further, Plaintiff has not compared Defendant's operations within California to its operations in other states: the Court is left without evidence of the "[l]ongevity, continuity, volume, [and] economic impact" of those contacts, as well as the defendant's "physical presence[] and integration into the state's regulatory or economic markets."  *See Mavrix Photo, Inc*, 647 F.3d at 1224; *see also Daimler AG*, 571 U.S. at 139 n.20.

15

There is no evidence of Defendant's physical presence within California other than its general business similar to the business conducted across other states.

Therefore, Plaintiff has not carried her burden to prove the Court has general jurisdiction over Defendant. Given the facts that Defendant is neither incorporated in nor has its principal place of business in California, Plaintiff has not provided the Court with sufficient evidence to meet the exacting standard of being "essentially at home" in California.

**B. Specific Jurisdiction**

"Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause[s] of action." *Sher,* 911 F.2d at 1361 (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, Inc., 557 F.2d 1280, 1286 (9th Cir. 1977)). Specific jurisdiction is analyzed using a three-prong test: "(1) the non-resident defendant must purposefully direct its activities towards, or consummate some transaction with, the forum or a resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987). The party invoking the Court's jurisdiction must meet each of these conditions. *See Insurance Co. of N. Am. v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir. 1981).

**1. Purposeful Direction**

A Plaintiff may satisfy the first prong in the analysis by demonstrating that the defendant "purposefully directed" its conduct toward the forum state, or "purposefully availed" itself of the privilege of doing business in the forum. *Schwarzenegger,* 374 F.3d at 802. Courts typically utilize the "purposefully directed" standard in tort cases, whereas the purposeful availment test is most useful for contract-based claims. *Id.* To establish the defendant "purposefully directed" its conduct toward the forum, the plaintiff usually

produces "evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803. Thus, the court applies "an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). Derived from *Calder v. Jones*, 465 U.S. 783 (1984), the "effects test" "requires that 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *CollegeSource, Inc.*, 653 F.3d at 1077 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)); *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

### i. Intentional Act

Under this requirement, courts "construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Plaintiff alleges that Defendant sells its product worldwide—including to residents of California—through third party retailers with false and misleading claims. Compl. ¶ 10, 11, 24; Doc. No. 13 at 16. Because Defendants developed, advertised, and sold the product, the Court finds Plaintiff has carried her burden to show an intentional act by Defendant.

### ii. Express Aim

The parties' purposeful direction analysis predominately focuses on the express aiming requirement. Defendant argues "something more" is necessary when a passive website is employed to establish specific jurisdiction and contends Plaintiff has not shown there is "something more." Doc. No. 8 at 16. Defendant emphasizes in its reply brief that merely shipping a product into the forum state is an insufficient basis for specific jurisdiction. *See* Doc. No. 15 at 3. Plaintiff responds that she has shown

something more: interaction with Defendant's website, worldwide sales by Defendant, targeting California through Facebook and television advertisements, "consummation [of] a deal" between the parties, and expectation that the product would enter into California through the stream of commerce.  Doc. No. 13 at 16; *see also* Compl. ¶ 11, 24.

Although "[t]he exact form of our analysis varies from case to case and 'depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue,'" *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 807), a plaintiff must still prove that "the 'effects' caused by the defendants' [conduct]—i.e., the injury to the plaintiff[] . . . —connected the defendants' conduct to California, not just to a plaintiff who lived there."  *Walden v. Fiore*, 571 U.S. 277, 288 (2014).  The express aim of the defendant must pertain to the forum state—"not the defendant's contacts with a resident of the forum."  *Picot*, 780 F.3d at 1214.  "A plaintiff does not show express aiming by alleging injuries that are 'entirely personal to him and would follow him wherever he might choose to live or travel' and 'not tethered to California in any meaningful way.'"  *Graco Minnesota Inc. v. PF Brands, Inc.*, No. 18-CV-1690-WQH-AGS, 2019 WL 1746580, at *4 (S.D. Cal. Apr. 17, 2019) (quoting *Picot*, 780 F.3d at 1215).

In assessing specific jurisdiction through Internet conduct, "the common thread . . . is that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'"  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  Courts have adopted a sliding scale when assessing whether operating a website can give rise to sufficient minimum contacts within the forum state:

> At one end of the scale are "passive" websites which merely display information, such as an advertisement.  Personal jurisdiction is not appropriate when a website is merely . . . passive.  At the other end of the scale are "interactive" websites which function for commercial purposes and

where users exchange information. Personal jurisdiction is appropriate when an entity is conducting business over the internet. Where a website is somewhere between the two extremes, the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet.

*j2 Cloud Servs., Inc. v. Fax87*, No. 13-05353 DDP (AJWX), 2017 WL 1535083, at *6 (C.D. Cal. Apr. 27, 2017) (quoting *American Auto. Ass'n, Inc. v. Darba Enterprises Inc.*, No. C 09–510 SI, 2009 WL 1066506, *4 (N.D. Cal. Apr. 21, 2009); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (holding that the sale of one item over eBay, where eBay was not used to conduct general business nor were there regular sales in California or elsewhere, was insufficient to form a "substantial connection to California," but also noting that there could be personal jurisdiction in circumstances where eBay was used to conduct regular business). Internet advertisements alone are insufficient "to subject the advertiser to jurisdiction in the plaintiff's home state." *Cybersell, Inc.*, 130 F.3d 414 at 418; *see also Mavrix Photo, Inc.*, 647 F.3d at 1229 ("[M]aintenance of a passive website alone cannot satisfy the express aiming prong."); *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) (holding in an unpublished decision that there was no specific jurisdiction regarding false advertising committed by Defendant in Georgia placed on its website, which "was a global, universal publication without any express aiming at the California market," and Plaintiff flailed to show "something more"). Instead, "something more" is necessary "to subject the advertiser to jurisdiction in the plaintiff's home state." *Cybersell, Inc.*, 130 F.3d 414 at 418.

Courts have looked at several factors to assess whether a defendant has done "something more": "the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Mavrix Photo, Inc.*, 647 F.3d at 1229 (citations omitted). In *Graco Minnesota Inc.*, the district court held in a trademark infringement

case that there was no specific jurisdiction in California where a defendant sold products on its website and third-party websites; a defendant shipped a product to California; a defendant stated he never had been to California in a business capacity, did not advertise in California, did not have offices or employees in California, and had low number of overall sales to California; the defendant entity was not registered with the California Secretary of State; defendants made sales to California customers; defendants did not target a "California-specific market or industry"; and "[t]he record [did] not show that California [was] the "focal point" of both the infringement claims and the alleged harm." 2019 WL 1746580, at *5–6. However, in *Lindora, LLC*, the district court held the "express aiming" prong was satisfied because defendant "exploit[ed] an important consumer base for commercial gain" by selling more product in California than in any other state; having more Associates in California than any other state; holding trainings and conferences in California; having several California-residing Associates as success stories on its website; having a California-specific webpage for California consumers; and receiving a cease-and desist letter from plaintiff's counsel in California, which put Defendant on notice sufficient to "turn what might otherwise have been general economic activity into 'individualized targeting.'" *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1139 (S.D. Cal. 2016).

Here, Plaintiff has shown that the express aim of Defendant was toward California—not only Plaintiff—through maintaining an interactive website and taking advantage of the California advertising market. Compl. ¶ 10–11, 24, 27. Defendant maintains an interactive website and also uses Amazon.com as a third-party retailer. Unlike a passive website that merely displays or advertises information, Defendant's site is for commercial purposes because it sells the Flex Belt through its website. *See* Compl. ¶ 10; Doc. No. 8-5 at 4–7; Doc. No. 13 at 6. By having a "CLICK HERE TO ORDER" function directly on its site, Defendant allows higher interconnectivity and an exchange of information necessary for the commercial transaction. *See Cybersell, Inc.*, 130 F.3d

414 at 418; *j2 Cloud Servs., Inc.*, 2017 WL 1535083, at \*6 ("Personal jurisdiction is appropriate when an entity is conducting business over the internet.").

Even if Defendant's website alone were insufficient to demonstrate express aiming, there is "something more." First, Defendant has a designated agent for service of process and is registered with the California Secretary of State. Doc. No. 13 at 5; Doc. No. 13-2 at 2; Doc. No. 13-3 at 2. Second, Defendant has directly targeted California with television commercials directed to Plaintiff's California home and advertisements on Defendant's own website: "We put The Flex Belt® in the hands of the best Trainers in Los Angeles," and "Ellen K from the Ryan Seacrest Show uses The Flex Belt®-#1 Female DJ in Los Angeles." Compl. ¶ 24; Doc. No. 8-5 at 7; Doc. No. 13 at 13. By placing Flex Belt in the hands of California-specific individuals, Defendant has targeted a California fitness community to help advertise its product and thus went beyond merely making a connection between Defendant and Plaintiff. *See Walden*, 571 U.S. at 288; *Picot*, 780 F.3d at 1214. Therefore, under the totality of the circumstances and regardless of whether Defendant specifically targeted Plaintiff or knew Plaintiff to be a California resident, Defendant operated an interactive, commercial website that expressly targeted California through capitalizing on its influential fitness community. Defendant also maintains ties to California through having a designated agent for service of process and registration with the California Secretary of State.

### iii. Foreseeable Harm

The foreseeable harm element requires that a defendant "caus[es] harm that the defendant knows is likely to be suffered in the forum state.'" *CollegeSource, Inc.*, 653 F.3d at 1077 (quoting *Brayton Purcell LLP*, 606 F.3d at 1128); *see also Axiom Foods, Inc*, 874 F.3d at 1069. "The touchstone of this requirement is not the magnitude of the harm, but rather its foreseeability." *Lindora, LLC*, 198 F. Supp. 3d at 1141 (citing *Yahoo! Inc.*, 433 F.3d at 1207).

Here, Plaintiff alleges Defendant targeted California and caused harm through selling the falsely advertised Flex Belt. Compl. ¶ 14–16. The Court finds it foreseeable

that Defendant's website and advertising that emphasized California-based fitness influencers would cause harm to California-domiciled Plaintiff if those advertisements and representations contained false or misleading information. Thus, Plaintiff has sufficiently alleged Defendant caused her a foreseeable harm.

### iv. Conclusion

In sum, Plaintiff's allegations are sufficient to satisfy all three parts of the purposeful direction's effects test.

### 2. Arising Out of or Relating to Forum Activities

The second prong in the analysis requires that the claim arise out of or result from the defendant's forum-related activities. A claim arises out of a defendant's conduct if the claim would not have arisen "but for" the defendant's forum-related contacts. *Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir.1998).

Defendant argues Plaintiff's claims originate from online activities Defendant generally directed toward the entire world. Doc. No. 8 at 17. It adds that "[i]f Slendertone can be haled into California merely on the basis of its universally accessible online material, then it could be haled into court in every state, and respectively, every online advertiser worldwide could be haled into court in California." *Id.* Plaintiff responds that Defendant ignores the source of her alleged injury:

> "the purchase of The Flex Belt from Slendertone, which Defendant shipped to Plaintiff, and which did not conform to the false and misleading promises made by Defendant. Plaintiff incurred no injury until Slendertone sold her the Flex Belt, and shipped her an EMS device that did not live up to its promises. Thus, as a matter of logic, the 'but for' test is satisfied because 'but for' Defendant selling the Flex Belt to Plaintiff, no claim could exist, whereas Slendertone's online advertising does not give rise to a claim for any non-purchaser."

Doc. No. 13 at 16–17.

Here, Plaintiff's claims arise out of her contacts with California. But for Defendant's alleged false and misleading statements as to the Flex Belt and associated contacts with California, *see supra*, the claim would not have arisen. As to Defendant's fear of being haled into every state, Defendant overlooks what makes its California contacts distinct from its contacts with other states—such as Defendant claiming on its own website that it has placed the Flex Belt "in the hands of some of [the] best Trainers in Los Angeles. These are people that are in peak physical shape and understand how to work their abs. Our goal was to have them [] give us their honest first impression of what they thought about The Flex Belt®." Doc. No. 8-5 at 7. Therefore, Plaintiff has satisfied the second prong of specific jurisdiction.

**3. Reasonableness**

If the plaintiff satisfies the first two prongs, the defendant bears the burden of overcoming a presumption that jurisdiction is reasonable by presenting a compelling case that specific jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985); *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir.1986). Seven factors are considered in assessing whether the exercise of jurisdiction over a nonresident defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) conflicts of law between the forum state and the defendant's home jurisdiction; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Caruth v. International Psychoanalytical Ass'n,* 59 F.3d 126, 128 (9th Cir. 1995).

Here, Plaintiff contends that the third prong also supports the Court having personal jurisdiction over Defendant. Doc. No. 13 at 17. Plaintiff argues Defendant fails to carry its burden under this prong because it has not even addressed it and fails to explain why jurisdiction would be unreasonable. *Id.* Indeed, Defendant has not directly

addressed this prong and thus fails to meet its burden to prove the unreasonableness of jurisdiction.

### 4. Conclusion

Plaintiff has made a prima facie showing that Defendant purposefully directed its advertising initiatives at California and that those activities arose out of or relate to Plaintiff's claims. Further, Defendant has not made a showing to overcome the presumption that jurisdiction is reasonable. Accordingly, the Court concludes that Defendant is subject to specific jurisdiction in California and **DENIES** Defendant's motion to dismiss for lack of personal jurisdiction.[5]

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**A. Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form

---

[5] As such, Plaintiff's request for jurisdictional discovery is moot.

of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to

defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look

beyond the complaint for additional facts. *Ritchie*, 342 F.3d at 908. "A court may,

however, consider certain materials—documents attached to the complaint, documents

incorporated by reference in the complaint, or matters of judicial notice—without

converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also*

*Lee*, 250 F.3d at 688. "However, [courts] are not required to accept as true conclusory

allegations which are contradicted by documents referred to in the complaint." *Steckman*

*v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is

appropriate, a court should grant leave to amend unless the plaintiff could not possibly

cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942

(9th Cir. 2009).

     Additionally, allegations of fraud or mistake require the pleading party to "state

with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The context surrounding the fraud must "be 'specific enough to give defendants notice of

the particular misconduct . . . so that they can defend against the charge and not just deny

that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124

(9th Cir. 2009) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

"'Averments of fraud must be accompanied by "the who, what, when, where, and how"

of the misconduct charged.' A party alleging fraud must 'set forth more than the neutral

facts necessary to identify the transaction.'" *Kearns*, 567 F.3d at 1124 (first quoting *Vess*

*v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) and then quoting *In re*

*GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

**B. Discussion**

    **1. Preemption**

As a preliminary matter, Defendant argues "Plaintiff's claims are preempted because they are based in part on the theory that Slendertone's representations regarding the Flexbelt violate the United States Federal Food, Drug, and Cosmetic Act ('FDCA')." Doc. No. 8 at 24. Defendant asserts that Plaintiff's claims are impliedly preempted "[t]o the extent Plaintiff is suggesting that the FDA should not have cleared the Flex Belt, or that the statement that the Flex Belt is effective 'for Toning, Firming and Strengthening the stomach muscles' is false or misleading despite the fact that the FDA has cleared the Flex Belt for precisely such purposes." *Id.* Defendant emphasizes that "Plaintiff's UCL cause of action is explicitly premised, *inter alia*, on an alleged violation of the FDCA." *Id.* Plaintiff counters that Defendant's argument is moot because she does not allege that the FDA should have not cleared the Flex Belt or that Defendant's FDA-cleared language is false or misleading. Doc. No. 13 at 17.

The Supremacy Clause of the United States Constitution grants Congress preemption power over state laws when Congress acts pursuant to one of its enumerated powers. US. Const. Art. VI cl. 2; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("A fundamental principle of the Constitution is that Congress has the power to preempt state law."); *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824) ("In every such case, the act of Congress, or the treaty, is supreme; and the law of the State, though enacted in the exercise of powers not controverted, must yield to it."). However, state statutes legislating traditional state police powers are presumed to not be preempted by federal law "unless that was the clear and manifest purpose of Congress." *United States v. Locke*, 529 U.S. 89, 108, (2000) (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "Parties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming "the starting presumption that Congress does not intend to supplant state law."'" *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (en banc) (citing *De Buono v. NYSA–ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)). "Federal preemption is an affirmative defense upon which the defendants bear the burden of proof." *Hesano v. Iovate Health Scis., Inc.*, No.

13CV1960-WQH-JMA, 2014 WL 197719, at *5 (S.D. Cal. Jan. 15, 2014) (quoting *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251 n.2 (2011)).

State statutes may be preempted through either express or implied preemption. *See Crosby*, 530 U.S. 363, 372 (2000). Implied preemption—which Defendant here claims to be at issue—arises (1) "[w]hen Congress intends federal law to 'occupy the field,'" or (2) "to the extent of any conflict with a federal statute." *Id.* (citations omitted). In terms of the latter conflict-implied preemption, there are again two subvarieties: (a) direct conflict preemption "where it is impossible for a private party to comply with both state and federal law"; and (b) obstacle conflict preemption where "under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372–73 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

"[T]he rule that emerges from cases discussing the FDCA's preemptive force is as follows[:] To avoid express preemption under Section 343–1(a), the plaintiff must be suing for conduct that *violates* the FDCA. However, the plaintiff must not be suing solely *because* the conduct violates the FDCA, else his claim would be impliedly preempted under [21 U.S.C. §] 337(a)." *Hesano*, , 2014 WL 197719, at *6–7 (S.D. Cal. Jan. 15, 2014) (quoting *Trazo v. Nestle USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218, at *5 (N.D. Cal. Aug. 9, 2013)); *see also Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (originating the rule in *Hesano* and *Trazo*). "As for the implied preemption provision [i.e., 21 U.S.C. § 337(a)], the plain language prohibits private enforcement of the FDCA, but does not apply this ban to parallel state statutory schemes. The FDCA therefore does not preclude states from adopting their own parallel laws and adopting a different mechanism for enforcing those laws." *Hesano*, 2014 WL 197719, at *7 (quoting *Trazo*, 2013 WL 4083218, at *6).

However, parallel state "consumer protection laws, such as the UCL, FAL, and CRLA, are nonetheless preempted if they seek to impose requirements that contravene the requirements set forth by federal law." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107,

1113 (S.D. Cal. 2011); *see also Stengel*, 704 F.3d at 1228 ("[T]he [Medical Device Amendments to the FDCA] does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the MDA"); *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 928 (N.D. Cal. 2014) ("In other words, state law claims are not impliedly preempted 'insofar as the state-law duty parallels a federal-law duty.'"). Nevertheless, "district courts have routinely rejected arguments that state-law UCL, FAL, and CLRA food-labeling claims and related claims under the Sherman Law are impliedly preempted under § 337(a) and *Buckman*." *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 995 (S.D. Cal. 2015) (concluding that the plaintiff's state Sherman Law, UCL, FAL, and CLRA claims regarding an over-the-counter sexual performance drug were not impliedly preempted).

Here, Defendant argues

> Plaintiff's claims are preempted because they are based in part on the theory that Slendertone's representations regarding the Flex Belt violate the United States Federal Food, Drug, and Cosmetic Act ("FDCA").
> . . . .
> *To the extent* Plaintiff is suggesting that the FDA should not have cleared the Flex Belt, or that the statement that the Flex Belt is effective "for Toning, Firming and Strengthening the stomach muscles" is false or misleading despite the fact that the FDA has cleared the Flex Belt for precisely such purposes, then Plaintiff's claims are impliedly preempted.

Doc. No. 8 at 24 (emphasis added). However, Plaintiff's allegations do not address whether the FDA should have cleared the Flex Belt or whether the specific FDA-cleared statement is misleading. *See* Compl. ¶ 2 ("Slendertone's advertising falsely conveys that use of its Flex Belt will lead to weight loss by 'getting rid of belly fat,' will contour the body, provide visible 'six pack' abs, and is a total replacement for traditional abdominal exercise."); Compl. ¶ 3 ("[The] FDA has only approved devices such as the Flex Belt to 'temporarily strengthen, tone or firm a muscle' and has specifically disapproved such

devices to assist with weight loss, contour the body, develop visible 'six-pack' abs, or otherwise to replace traditional exercise.").

Plaintiff's allegations are also distinct from the cases cited by Defendant. *Buckman* does not apply because the alleged false representations triggering preemption involved statements *made to the FDA itself* regarding Class III medical devices, whereas Plaintiff here alleges false representations *made to consumers* regarding Class II medical devices. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 343 (2001). *PhotoMedes* is similarly distinguishable because Plaintiff is not attempting to circumvent the FDA's enforcement authority. Plaintiff does not bring a Lanham Act claim, and she does not address whether a subsequent, similar medical product requires FDA approval under the FDCA's 510(k) clearance process. *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 928 (9th Cir. 2010).

In sum, the Court finds Plaintiff's California-based claims not preempted. The Court proceeds to the merits of the Rule 12(b)(6) motion and the plausibility of Plaintiff's claims.

### 2. UCL – Cal. Bus. & Prof. Code §§ 17200, *et seq*.

California Business & Professions Code § 17200 "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999) (internal quotations omitted). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

Plaintiff alleges Defendant violated the UCL under all three prongs. *See* Compl. ¶ 45–58. Defendant argues that Plaintiff lacks standing to pursue injunctive and restitutionary relief, Plaintiff fails to plead her claim with particularity, and Plaintiff fails to plead sufficient facts to support her claim because Defendant's advertising is not misleading. *See* Doc. No. 8 at 17, 19–20, 21, 24, 26.

### i. Standing

As a preliminary matter, Defendant argues Plaintiff's UCL claim fails as a matter of law because remedies for a UCL violation are limited to injunctive and restitutionary relief and, here, none are available to Plaintiff. Doc. No. 8 at 26–29. Article III standing requires a plaintiff to demonstrate three elements: (1) plaintiff must have "suffered an 'injury in fact'"; (2) "there must be a causal connection between the injury and the conduct complained of" and; (3) it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotations and citations omitted).

### a. Injunctive Relief

Defendant argues Plaintiff lacks standing to claim injunctive relief because there is no threat of repeated injury. Doc. No. 8 at 26–28. Plaintiff responds that she pleaded sufficient facts support her entitlement to injunctive relief. Doc. No. 13 at 24–26.

A plaintiff seeking injunctive relief must prove (1) he or she "has suffered or is threatened with a 'concrete and particularized' legal harm. . . coupled with 'a sufficient likelihood that he will again be wronged in a similar way,'" and (2) "a real and immediate threat of repeated injury." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citations omitted). Past wrongs constitute evidence of "a real and immediate threat of repeated injury"; however, "past wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 926 (N.D. Cal. 2012) (first quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) and then quoting *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)); *see also Lujan*, 504 U.S. at 564 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). In the Ninth Circuit, a single incident cannot establish "a likelihood of future injury." *Id.*; *see also Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (holding that a single stop by Border Patrol over ten years did not constitute a sufficient likelihood of future injury). The Ninth Circuit has held that "a previously deceived consumer may

have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). The Ninth Circuit noted that in some cases, "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product she would like to." *Id.* at 970. In other cases, "the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.*

Plaintiff alleges that she

> . . . would consider purchasing an EMS device again in the future if she were assured that the product was marketed truthfully and not falsely or misleadingly, and that the price of the product matched the benefit of the bargain she expected, for instance, only in providing temporary strengthening or toning of abdominal muscles (or other muscles to which the EMS device is directed) and not for a replacement for traditional exercise, weight-loss, fat loss, body-contouring, and for visible "six pack" abs.

Compl. ¶ 32. Plaintiff adds that she has no means of knowing whether the FDA approves a medical device that yields the benefits "she originally thought she was obtaining from the Flex Belt." *Id.* ¶ 32. If the technology were developed that provided her originally sought benefits without the false or misleading statements, and she "was assured that such advertising was not false or misleading because Slendertone were enjoined from engaging in false advertising and she knew she could safely rely on such claims, she would purchase an EMS device from Slendertone in the future." *Id.* ¶ 33.

These allegations are insufficient to state a plausible claim for injunctive relief. The *Davidson* court held the plaintiff bringing UCL, FAL, and CLRA causes of action

had standing to pursue injunctive relief where she adequately alleged an imminent or actual threat of future harm because the plaintiff

> alleged that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet"; "would purchase truly flushable wipes manufactured by [Kimberly–Clark] if it were possible"; "regularly visits stores . . . where [Kimberly–Clark's] 'flushable' wipes are sold"; and is continually presented with Kimberly–Clark's flushable wipes packaging but has "no way of determining whether the representation 'flushable' is in fact true.

*Davidson*, 889 F.3d at 970–71 (recognizing this conclusion was a "close question"). Here, Plaintiff only "would consider" buying an "EMS device"—lacking the specificity in *Davidson* where the plaintiff there "continu[ed] to desire" the *specific product* manufactured by defendant. *Compare* Compl. ¶ 32, *with Davidson*, 889 F.3d at 970–71. Further, Plaintiff's own allegations that "EMS devices cannot cause or even assist in the loss of weight, inches, or fat from the human body," Compl. ¶ 18, appear to defeat her assertion that she would purchase an EMS device from Defendant if the technology becomes available to permit the fat-loss replacement for exercise benefits, Compl. ¶ 32. Given the vague nature of her allegations regarding purchasing an EMS device in the future and the speculative nature of EMS device's ability to achieve weight loss, Plaintiff's conflicting allegations do not meet the Article III standing requirement of "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985; *see also Lujan*, 504 U.S. at 560. Here, Plaintiff's allegations are conjectural as presently pleaded—even under the Ninth Circuit's lax standing requirements for UCL claims. Therefore, the Court finds Plaintiff lacks standing to pursue injunctive relief. However, the Court grants Plaintiff leave to amend her claim for injunctive relief.

### b. Restitutionary Relief

Defendant argues Plaintiff lacks standing to claim restitutionary relief because Plaintiff never paid Defendant.  Doc. No. 8 at 28–29.  Plaintiff responds that restitution is still proper even when payment is made indirectly to Defendant.  Doc. No. 13 at 25–26.

Restitution is the "return [of] money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1140 (2003) (citation omitted).

> [T]he California Supreme Court explained that "restitutive damages encompass, at a minimum, quantifiable sums": "Restitutive damages, in short, are akin to special damages, i.e., they are quantifiable amounts of money due an injured private party from another party to compensate for the pecuniary loss directly resulting from the second party's violation of law." The Unfair Competition Law "operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair business practice" to require that restitution "must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be supported by evidence."

*Johnson v. GMRI, Inc.*, No. CVF 07-0283 LJODLB, 2007 WL 2009808, at *3 (E.D. Cal. July 6, 2007) (first quoting *Walnut Creek Manor v. Fair Employment & Hous. Com.*, 814 P.2d 704, 714 (Cal. 1991) and then quoting *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 61 (Ct. App. 2006)) (emphasis omitted).

Plaintiff alleges she bought the Flex Belt through Amazon.com.  Compl. ¶ 24.  Defendant relies on *Korea Supply Co.* to argue restitution can only be recovered for funds actually paid to Defendant.  Doc. No. 13 at 28.  In *Korea Supply Co.*, the California Supreme Court addressed the issue "whether disgorgement of profits allegedly obtained by means of an unfair business practice is an authorized remedy under the UCL where these profits are neither money taken from a plaintiff nor funds in which the plaintiff has an ownership interest," and held that "disgorgement of such profits is not an authorized remedy in an individual action under the UCL."  *Korea Supply Co.*, 29 Cal. 4th at 1140.  The facts were later summarized by the California Court of Appeal:

The plaintiff in Korea Supply was a business that represented manufacturers of military equipment. It represented one such manufacturer in a deal with the government of the Republic of Korea that would have netted the plaintiff a commission of $30 million had its bid been accepted. The plaintiff alleged that it lost the contract to another bidder, Lockheed Martin, even though plaintiff's bid was lower and its product superior, because Lockheed Martin's agent had "offered bribes and sexual favors to key Korean officials" . . . . Even though the plaintiff had never paid the defendant any money, it sought "restitution" and disgorgement of the profits the defendant had received as the result of its wrongful conduct.

*Shersher v. Superior Court*, 65 Cal. Rptr. 3d 634, 638 (Ct. App. 2007) (quoting *Korea Supply Co.*, 29 Cal. 4th at 1140). In reaching its holding, the California Supreme Court noted that the plaintiff did not seek return of money or property that it once possessed and any recovery from the defendant "would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff." *Korea Supply Co.*, 29 Cal. 4th at 1149.

Defendant overstates *Korea Supply Co.*'s holding. The California Court of Appeal has noted that "in appropriate circumstances, the plaintiff in a UCL action may obtain restitution from a defendant with whom the plaintiff did not deal directly." *Shersher*, 65 Cal. Rptr. 3d at 640 (holding that the plaintiff had a valid UCL claim against the defendant-manufacturer despite purchasing the product at issue from a third-party retailer and noting further that the UCL is to be interpreted broadly); *see also Cabebe v. Nissan of N. Am., Inc.*, No. 18-CV-00144-WHO, 2018 WL 5617732, at *5 (N.D. Cal. Oct. 26, 2018) ("In *Shersher v. Superior Court*, the California Court of Appeal held that *Korea Supply* does not limit UCL restitution claims to direct purchases as a matter of law."); *Hirsch v. Bank of Am.*, 132 Cal. Rptr. 2d 220, 229 (Ct. App. 2003) ("Appellants have stated a valid cause of action for unjust enrichment based on Banks' unjustified charging and retention of excessive fees which the title companies passed through to them.").

Plaintiff alleges that Defendant received unjust enrichment of money through "the sale of the Flex Belt and replacement gel pads." Compl. ¶ 58; *see also Cabebe*, 2018 WL 5617732, at *6 (denying defendant's motion to dismiss where the plaintiff alleged that Defendant "was unjustly enriched as a result of its allegedly unlawful business practices"). By stating that Defendant unjustly benefited by its UCL violations, even though those funds were received indirectly, Plaintiff has provided sufficient underlying facts to sustain allegations in a Rule 12(b)(6) challenge. Therefore, the Court finds Plaintiff has standing to pursue restitutionary relief.

### ii. Fraudulent Prong

#### a. Rule 9(b) Heightened Pleading Standard and Parallels between the UCL, FAL, and CLRA

Rule 9(b)'s heightened pleading standard applies to UCL, FAL, and CLRA causes of actions because they "are 'grounded in fraud' or 'sound in fraud.'" *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011) (quoting *Kearns*, 567 F.3d at 1125). Plaintiff alleges that Defendant used several false or misleading phrases to market and sell the Flex Belt. Because these allegations sound in fraud, they must meet the heightened pleading standards by alleging the "the who, what, when, where, and how." *Kearns*, 567 F.3d at 1124–25 (quoting *Vess*, 317 F.3d at 1106). As such, the Court must ensure Plaintiff meets the Rule 9(b) threshold before assessing whether Plaintiff alleges sufficient facts to demonstrate a reasonable consumer would be deceived by the advertisements.

Plaintiff alleges that on April 22, 2016 (the "when"), Plaintiff (the "who") purchased a Flex Belt—and later replacement gel pads—through Defendant's Amazon.com listing (the "where"). Compl. ¶ 24. Plaintiff asserts that Defendant misled customers through "false and misleading promises and affirmations contained on the Amazon page" (the "what"). *Id.* Plaintiff expands on the "what" by detailing that Defendant's advertisements suggesting weight loss and attainment of six-pack abdominal muscles through using the Flex Belt are false or misleading because "while an EMS

device may be able to temporarily strengthen, tone or firm a muscle, no EMS devices have been cleared at this time for weight loss, girth reduction, or for obtaining 'rock hard' abs." *Id.* ¶ 13, 15, 16, 24.  Plaintiff alleges she relied on Defendant's claims that using the Flex Belt would "result in weight loss, body contouring, well-defined abdominal muscles (e.g. 'six-pack' abs), and that it could replace traditional exercise to result in improved health, fitness, and body shape" (the "how").  *Id.* ¶ 24.  Believing that the Flex Belt would result in weight loss and six-pack abs and relying on Defendant's advertisements, Plaintiff purchased the Flex Belt and replacement gel pads.  *Id.*

Defendant argues that Plaintiff fails to allege that the false or misleading representations were online at the time she purchased the Flex Belt in 2016.  Defendant further asserts that Plaintiff fails to allege when the representations appeared online.  *See* Doc. No. 8 at 18.  Defendant also contends that Plaintiff fails to allege which specific advertisements she relied upon in addition to where the representations were published and who published them.  *Id.*

The Court is not persuaded by Defendant's argument.  Plaintiff "set[s] forth *more* than the neutral facts necessary to identify the transaction"; indeed, she "set[s] forth what is false or misleading about a statement, and why it is false."  *Vess*, 317 F.3d at 1106. Plaintiff provides statements that it claims are misleading, Compl. ¶ 20–23; the reason why they are misleading in light of FDA authority, *id.* ¶13; and the location of the statements on Defendant's website and Amazon.com listing—both of which Plaintiff relied upon, *id.* ¶14.  As to the timing, the Court finds it sufficient that Plaintiff alleges she purchased the Flex Belt on or about April 22, 2019 and, in deciding to purchase the Flex Belt, relied upon Defendant's representations.  *See Safransky v. Fossil Grp., Inc.*, No. 17CV1865-MMA (NLS), 2018 WL 1726620, at *10 (S.D. Cal. Apr. 9, 2018) (illustrating that the "when" is satisfied where the plaintiff alleged the date of the purchase and that the plaintiff noticed the representation at issue before the purchase); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 849 (N.D. Cal. 2018); Compl. ¶ 24.

Accordingly, Plaintiff pleads her UCL, FAL, and CLRA causes of action with sufficient particularity to place Defendant on notice of the circumstances constituting the alleged fraud.[6]

### b. Reasonable Consumer Test and the UCL, FAL, and CLRA[7]

Under the UCL's fraudulent prong, a plaintiff must "show deception to some members of the public ... [or] allege that members of the public are likely to be deceived." *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1207 (E.D. Cal. 2013) (internal quotations and citations omitted). Fraudulent conduct must be pleaded with particularity. *See Kearns*, 567 F.3d at 1127 (noting that Rule 9(b) applies to claims in federal court under the UCL). Deceptive advertising will usually be a question of fact not appropriate for decision on demurrer. *Id. But see Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir. 1995).

California's FAL broadly proscribes "untrue or misleading statements in advertising." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137 (C.D. Cal. 2005) (internal quotation marks omitted). "The FAL prohibits unfair, deceptive, untrue, or misleading advertising." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 n.2 (9th Cir. 2016) (emphasis omitted). "Any violation of the false advertising law" necessarily violates the UCL. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted).

The underlying purpose of the CLRA is "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. The CLRA "shall be liberally construed and applied to promote its underlying purpose." *Id.* California Civil Code § 1770 lists

---

[6] However, to the extent Plaintiff attributes specific quotations to support her causes of action without indicating where the quotations originate, the Court declines to consider them.

[7] "Because the same standard for fraudulent activity governs all three statutes, courts often analyze the three statutes together." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017).

unlawful practices under the CLRA.  *See* Cal. Civ. Code § 1770.  For example, "[a]dvertising goods or services with intent not to sell them as advertised" is an unlawful practice.  Cal. Civ. Code § 1770(a)(9).

To state a claim under the FAL, UCL, or CLRA, a plaintiff must allege that the defendant's purported misrepresentations are likely to deceive a reasonable consumer. *See Williams*, 552 F.3d at 938 (explaining that unless the advertisement at issue targets a particularly vulnerable group, courts must evaluate claims for false or misleading advertising from the perspective of a reasonable consumer).  "A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'"  *Davis*, 691 F.3d at 1161–62 (quoting *Colgan*, 38 Cal. Rptr. 3d at 48).  "Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012) (quoting *Lavie v. Procter & Gamble Co*., 129 Cal. Rptr. 2d 486, 495 (Ct. App. 2003)).  Rather, "the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie*, 129 Cal. Rptr. 2d at 495.  "In determining whether a statement is misleading under the statute, the primary evidence in a false advertising case is the advertising itself."  *Colgan*, 38 Cal. Rptr. 3d at 46 (quoting *Brockey v. Moore*, 131 Cal. Rptr. 2d 746, 756 (Ct. App. 2003)).  The Ninth Circuit has emphasized that under the reasonable consumer test, it is a "*rare situation* in which granting a motion to dismiss is appropriate" because "it raises questions of fact."  *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *Williams*, 552 F.3d 939 (emphasis added).

However, "'[g]eneralized, vague, and unspecified assertions constitute "mere puffery" upon which a reasonable consumer could not rely, and hence are not actionable' under the UCL, FAL, or CLRA"  *In re Ferrero Litig.*, 794 F. Supp. 2d at 1115 (quoting *Anunziato*, 402 F. Supp. 2d at 1139); *see also Williams*, 552 F.3d at 939 n.3.  "While

product superiority claims that are vague or highly subjective often amount to nonactionable puffery, 'misdescriptions of specific or absolute characteristics of a product are actionable.'" *In re Ferrero Litig.*, 794 F. Supp. 2d at 1115 (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir.1997)).

In *Freeman*, the Ninth Circuit affirmed dismissal of UCL, FAL, and CLRA causes of action after finding that a reasonable person would not be deceived. *Freeman*, 68 F.3d at 290. There, the plaintiff alleged he was deceived by a mailer that stated he won a million-dollar sweepstakes, but the mailer also included the condition that winning required having a winning sweepstakes number. *Id.* at 287, 289–90. The court further noted that the qualifying language was not hidden or unreadably small and "appear[ed] immediately next to the representations it qualifies and no reasonable reader could ignore it." *Id.* at 289. The circuit court concluded its analysis by noting that the representations must be addressed in context and quotes the lower court that the "statements, in context, are not misleading." *Id.* (quoting the lower court order and *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1403 (E.D. Cal. 1994)).

In contrast, the Ninth Circuit in *Williams* reversed dismissal of UCL, FAL, and CLRA claims, finding that a reasonable consumer would be deceived. *Williams*, 552 F.3d at 940. There, the plaintiff alleged that the use of "Fruit Juice" on a snack accompanied with images of fruit was deceptive because the snack "contained no fruit juice from any of the fruits pictured on the packaging and because the only juice contained in the product was white grape juice from concentrate." *Id.* at 936. The plaintiff also challenged language on the side panel of the packaging that the snack "was made 'with real fruit juice and other all natural ingredients,' even though the two most prominent ingredients were corn syrup and sugar" and was "one of a variety of nutritious Gerber Graduates foods and juices." *Id.* The Ninth Circuit disagreed with the district court's assessment that "no reasonable consumer upon review of the package as a whole would conclude that Snacks contains juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified."

*Id.* at 939.  Instead, the Ninth Circuit noted that consumers should not "be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."  *Id.*

Here, the parties paint different pictures of the Defendant's advertisements. Plaintiff alleges Defendant uses several false or misleading phrases that, taken together, "confuse and mislead consumers into believing its use will cause weight loss, fat reduction, contour the body, result in visible 'six pack' abs, and otherwise be a total replacement to traditional exercise."  Compl. ¶ 20; Doc. No. 13 at 20.  Plaintiff claims she took that representation as truth, the representation was false, and lost money by purchasing the Flex Belt.  Compl. ¶¶ 20–31; Doc. No. 13 at 20.  Defendant argues that Plaintiff takes these representations out of context "to create the appearance of a misleading narrative."  Doc. No. 8 at 20.  Defendant puts forth the same websites proffered by Plaintiff to illustrate it advertises that achieving stomach attractiveness requires more than just the Flex Belt—it *also* requires diet and exercise.  *Id.* at 21; Doc. No. 8-5 at 4.  The Court proceeds by looking at the representations in their complete context to determine whether Defendant's advertisements would deceive a reasonable consumer.

As a preliminary matter, the parties both highlight that the FDA has cleared the Flex Belt as an EMS device for toning, firming, and strengthening abdominal muscles. *See* Compl. ¶13; Doc. No. 8 at 23–24; Doc. No. 8-8 at 4; Doc. No 13 at 9.  Because the FDA has cleared Flex Belt for such use, such representations cannot be deceptive to a reasonable person.  However, it would be deceptive to market an EMS device as cleared by the FDA "for weight loss, girth reduction, or for obtaining 'rock hard' abs" because "no devices have been cleared at this time" for such uses.  Doc. No 8-8 at 2.  Plaintiff argues that Defendant crosses the line and advertised results that the FDA has not cleared and that the Flex belt alone cannot achieve.

Many of the testimonials upon which Plaintiff relies contain puffery.[8]  For example,

> With my schedule I can't do an ab workout every day, but with The Flex Belt® I'll put it on every day because I'm doing things at the same time. So it's really just being smart.  It's easy, I wear it every clay and my abs are there to show for it!  My abs feel like I've had the most amazing workout and I just wore The Flex Belt® around the house for 30 minutes.

> The Flex Belt® tightens, tones, and strengthens my stomach without me even having to think about it.  It has taken my abs to a whole new level. . . . Working out my core might be the easiest thing I do all day.  I can make dinner, I can do the laundry, read a book, sit on the couch or check e-mail.  I put on The Flex Belt®, it does all the work, and I get the results.

Compl. ¶ 21; Doc. No. 8-5 at 5.  These testimonials alone are nonactionable puffery because they are highly subjective to the individuals giving the statements.

The website and the Amazon.com listing further state that "[t]he Flex Belt® will stimulate all your major stomach muscles at the same time providing you with the **perfect abdominal contraction**—that means your upper abs, the lower abs and even your obliques are going to get worked from The Flex Belt . . . and it does all the work for you.  You don't have to worry about your form or come up with the time to get it done."  Compl. ¶ 20; Doc. No. 8-5 at 4; Doc. No. 8-6 at 4.  This blurb likewise lacks language indicating that the Flex belt alone will result in weight loss, girth reduction, or an attractive appearance.  Rather, it merely describes what the product does: "delivers a

---

[8]  Given the Plaintiff provides only narrow screenshots of portions of Defendant's website, the Court additionally relies on the full website printout supplied by Defendant.  The Court also notes that Plaintiff quotes several phrases attributable to Defendant in paragraph twenty of the Complaint.  Compl. ¶ 20.  Although Plaintiff alleges these phrases were used to market and sell the Flex Belt, Plaintiff fails to detail *where* she saw and relied upon them.  To the extent these phrases are not part of the screenshots or presented in Defendant's printout of Defendant's website, the Court declines to consider them.

small amount of electricity to the body, which stimulates the muscles and causes them to contract." Compl. ¶ 1.

Additional short phrases fall under nonactionable puffery: "GREAT ABS START HERE," "Maximum Core Strength," and "Ultimate Toning Technology" Compl. ¶¶ 20, 24. These statements are nonspecific to the effects of the Flex Belt on physical appearance and the modifiers "great," maximum," and "ultimate" are "outrageous generalized statements." *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 931 (C.D. Cal. 1996) (finding that the phrase "perfectly reliable" was "mere puffery" under the Lanham Act); *see also Anunziato*, 402 F. Supp. 2d at 1140 (finding that the words "quality," "performance," "latest technology," and "high quality" were nonactionable puffery but "most stringent quality control tests" was not puffery).

Plaintiff further alleges that Defendant "markets the Flex Belt as a 'miracle device' that provides a 'perfect' abdominal workout in only 30 minutes of use per day while watching television, reading, cooking, or undertaking other mundane, non-physical activities. Slendertone further markets the Flex Belt as causing fat loss and well-defined abdominal muscles (i.e., 'six pack' abs), and as a better alternative to, or at least the equivalent of, conventional abdominal exercises, such as sit-ups or crunches." Compl. ¶ 11. Defendant correctly points out that "miracle device," "perfect abdominal workout," and "fat loss" do not appear on its advertising. Indeed, Plaintiff fails to allege with specificity under Rule 9(b) where those statements are found. Moreover, it appears Defendant's website states "perfect abdominal *contraction*" not workout. Compl. ¶ 20; Doc. No. 8-5 at 4; Doc. No. 8-6 at 4. Additionally, Plaintiff claims Defendant used the following marketing phrasing: "Rid Belly Fat with The Flex Belt." Compl. ¶ 20. Although Plaintiff attaches a screenshot of a YouTube page with that statement as the title, neither the YouTube page nor the Plaintiff shows or alleges that the video was prepared or published by Defendant. *See* Compl. ¶¶ 20, 21.

Defendant is further correct that any reference to fat loss is accompanied by disclaiming language that the Flex Belt is insufficient to achieve weight loss and that a

more attractive abdominal area requires proper diet and exercise. *See* Doc. No. 8 at 23. For example, Defendant's website highlights that the "Flex Belt does not remove inches of fat but it tones, tightens, and strengthens your stomach muscles. Using The Flex Belt in conjunction with your dedication to Diet, Nutrition and Exercise can help you achieve your goals of a more attractive stomach as well!" Doc. No. 8-5 at 4. This language is not buried at the bottom of the website or in smaller print than the rest of the website; rather, it is in the upper portion of the front page of the website in its standard font. Moreover, that language is immediately followed by the following larger font: "Our Motto is Eat Right, Exercise and Use The Flex Belt . . . ." *Id.* at 4. In a section labeled "Who Should Use the Flex Belt®?," Defendant provides disclaiming language in the same font and size as the surrounding language: "* The Flex Belt® does not remove inches of fat but it tones, tightens and strengthens your stomach muscles." *Id.* at 6. In describing Flex Belt use by one of Defendant's spokespersons, the website states "In conju[n]ction with her grueling workout regimen, Jill used The Flex Belt® and Flex Mini (our Butt Toning Product) daily *to supplement her program. Id.* at 7 (emphasis added). This cautionary message about how to achieve weight loss or fat reduction is echoed on Defendant's Amazon.com listing:

> **Our Motto - Live Healthy**.
> Here at **The Flex Belt** we believe in living a healthy lifestyle. Having a healthy diet and getting exercise are key to a balanced life. We have aligned ourselves with Celebrities and Professional Athletes who believe the same. All of our endorsers use The Flex Belt in addition to their healthy lifestyle.
>
> Our Motto is Eat Right, Exercise and use **The Flex Belt**.
>
> **The Flex Belt** is not a weight loss or fat reduction product. You will need a proper diet and regular exercise for that!

Doc. No 8-6 at 5.  Next to this language is the following: "**FDA Cleared\* to tone, firm and strengthen the abdominal muscles**"—language that both parties agree is proper. *See* Compl. ¶13; Doc. No. 8 at 23–24; Doc. No. 8-8 at 4; Doc. No 13 at 9.

However, despite the puffery and the disclaiming language, specific statements on Defendant's website, taken in their context, give rise to a plausible claim that a reasonable person would be deceived.  Directly above the cautionary language that the Flex Belt "does not remove inches of fat," Defendant's website provides that "Who Should Use the Flex Belt®? . . . Anyone that wants more attractive abs, regardless of current fitness levels."  Doc. No. 8-5 at 6.  Further down, the website provides that

> With The Flex Belt®, it doesn't matter what your current exercise status is because **there will always be time to build firmer, stronger abs**.  This product is perfect for Casual Exercisers, Fitness Enthusiasts who are already in great shape, Executives who don't have time to make it to the gym, Seniors, Mothers, People with sore backs, **and anyone that wants more attractive abs, regardless of current fitness levels**.

*Id.* at 8.  Towards the bottom, Defendant appears to shift its FDA-approved language of "toning strengthening, and *firming*" to language of "[f]or those looking for a convenient way to tone, strengthen and *flatten* the abdominal area."  *Id.* at 9.

Taken together with the above "**anyone that wants more attractive abs**" statement, Defendant's advertisement makes it "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" to believe the Flex Belt could help consumers achieve more attractive abdominal muscles. *Lavie*, 129 Cal. Rptr. 2d at 495.  Defendant's disclaiming language does not automatically remove potentially deceptive statements outside the protection of the UCL, FAL, and CLRA.  The Court has a duty to interpret these statutes "broadly to embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity,

likelihood or tendency to deceive or confuse the public." *Leoni v. State Bar*, 704 P.2d 183, 194 (Cal. 1985) (en banc).

Interpreting these statutes broadly, the Court finds that they do not permit Defendant to make misleading statements as to improved abdominal appearance with the Flex Belt while simultaneously disclaiming that "The Flex Belt does not remove inches of fat" to avoid judicial scrutiny on a motion to dismiss. Doc. No. 8-5 at 4, 8, 9. Unlike the *Freeman* case, where dismissal was appropriate given the *conditional* language and its immediate proximity to the language-at-issue, Defendant's website appears to provide *contradictory* language that could plausibly deceive a reasonable person. Although the additional personal testimonials and pictures of six-pack abdominal muscles constitute puffery, the testimonials and pictures "contribute 'to the deceptive context of the packaging as a whole." *In re Ferrero Litig.*, 794 F. Supp. 2d at 1116 (quoting *Williams*, 552 F.3d at 939 n.3). As in *Williams* where the defendant had packaging with the phrase "Fruit Juice" accompanied with images of fruit, 552 F.3d at 936, Defendant in this case provides language indicating improved abdominal appearance accompanied with pictures of individuals with attractive abdominal muscles. Thus, this is not the rare situation where dismissal of Plaintiff's claims is proper.

### iii. Unlawful

Under the "unlawful prong," Plaintiff alleges Defendant violated the FAL; CLRA; the Federal Food, Drug, and Cosmetic Act; and the California Sherman Food Drug, and Cosmetic Act. Compl. ¶ 40. While the parties go into depth regarding the fraudulent prong, the parties fail to explicitly address the unlawful prong.

An action brought under the "unlawful" prong of this statute "borrows" violations of other laws when committed pursuant to business activity. *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992). This prong is essentially an incorporation-by-reference provision." *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 952 (S.D. Cal. 2016); *see also Cel-Tech Commc'ns, Inc.*, 973 P.2d at 539–49 ("By proscribing 'any unlawful' business practice, 'section 17200 "borrows"

violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable."). Accordingly, "[w]hen a statutory claim fails, a derivative UCL claim also fails." *Obesity Research Inst., LLC*, 165 F. Supp. 3d at 953 (quoting *Aleksick v. 7–Eleven, Inc.*, 140 Cal. Rptr. 3d 796, 801 (2012)).

Here, Plaintiff can succeed on this prong only if she pleaded sufficient facts to support another violation. *See Aleksick*, 140 Cal. Rptr. 3d at 801. Because Plaintiff has pleaded sufficient facts to bolster her FAL and CLRA causes of action, her "unlawful prong" UCL claim survives Defendant's challenge.

### iv. Unfair Prong

Plaintiff alleges Defendant's actions were unfair because its conduct was immoral, unethical, unscrupulous, injurious, and violative of public policy. Compl. ¶ 51–58. Because of past and continuing injury, Plaintiff seeks injunctive and restitutionary relief. Compl. ¶ 57–58. As with the unlawful prong, the parties fail to explicitly address the unfair prong.

With respect to the "unfairness" prong, the California Supreme Court has defined the word "unfair" under the UCL to mean conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 973 P.2d at 544. However, Courts have struggled to "define 'unfair' in the *consumer* action context after *Cel-Tech*." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007); *Rael v. New York & Co., Inc.*, No. 16-CV-369-BAS(JMA), 2017 WL 3021019, at *5 (S.D. Cal. July 17, 2017). "California courts define an unfair business practice as either a practice that undermines a legislatively declared policy or threatens competition, or a practice that has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer." *In re Ferrero Litig.*, 794 F. Supp. 2d at 1117 (citing *Lozano*, 504 F.3d at 736) (noting a lack of certainty of the balancing approach in consumer cases in light of the "tethered" test detailed in *Cel-Tech*). This Court has assessed the following factors to

determine this prong: "(1) whether the consumer injury is substantial; (2) whether the injury is outweighed by any countervailing interests; and (3) whether the injury is one that consumers themselves could not reasonably have avoided." *Safransky*, 2018 WL 1726620, at *14 (citing *Camacho v. Auto. Club of S. California*, 48 Cal. Rptr. 3d 770, 777 (Ct. App. 2006)). "Whether a practice is . . . unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer." *Id.* (quoting *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 321 (Ct. App. 2012).

Here, Plaintiff has pleaded facts showing customer injury. Plaintiff showcases specific statements regarding the physical appearance benefits of the Flex Belt on Defendant's website that a reasonable consumer could find misleading. Plaintiff alleges she relied on these representations in hope of attaining the promoted benefits without traditional exercise. Taking Plaintiff's allegations as true, the Court finds an injury. Defendant does not point the court to any countervailing interests. Finally, given that whether consumers could have avoided the injury is a question of fact, Rule 12(b)(6) dismissal is inappropriate. Thus, the Court finds Plaintiff properly pleaded sufficient facts to satisfy the unfair prong under the *Camacho* test.

### v. Conclusion

Accordingly, the Court **DENIES** Defendant's motion to dismiss as to Plaintiff's UCL, FAL, and CLA causes of action.

### 3. CLRA Nonfraud Claims – Cal. Civ. Code §§ 1770(a)(7), 1770(a)(16)

Defendant argues that Plaintiff's allegations regarding California Civil Code §§ 1770(a)(7), 1770(a)(16) are unsupported by facts and must be dismissed. Doc. No. 8 at 25. Plaintiff does not respond to these arguments in her opposition brief.

As to subsection 1770(a)(7), Defendant asserts there are no facts alleging "subpar quality or poor construction." *Id.* Plaintiff simply quotes the language from the statute without showing how Defendant violated the subsection with factual support, and

Plaintiff's allegations rest on false advertising claims. Accordingly, Plaintiff fails to state a viable claim under California Civil Code § 1770(a)(7).

As to subsection 1770(a)(16), Defendant claims "Plaintiff has not alleged any representations subsequent to the alleged initial representation." Doc. No 8 at 25. Several district courts have found subsection 1770(a)(16) "to target not the initial representation in a transaction, but a subsequent representation which is deceptive." *Ehret v. Uber Techs.*, Inc., 68 F. Supp. 3d 1121, 1139 (N.D. Cal. 2014) (quoting *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 455 (S.D.N.Y. 2010)). Here, Plaintiff fails to allege a subsequent representation after purchasing the Flex Belt. Thus, Plaintiff fails to state a viable claim under California Civil Code § 1770(a)(16).

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's CLRA claims under California Civil Code §§ 1770(a)(7), 1770(a)(16) **without prejudice** and with leave to amend.

### 5. Express Warranties – Cal. Com. Code § 2313(1)

Plaintiff alleges Defendant made representations regarding the Flex Belt's health benefits that were part of the basis of the bargain; however, Plaintiff claims the Flex Belt failed to yield the advertised benefits. Compl. ¶ 74–75. Plaintiff claims Defendant breached the express warranty and caused Plaintiff damages. *Id.* ¶ 75–76, 78.

An express warranty is created by the following means:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Cal. Com. Code § 2313(1). To plead breach of an express warranty under California law, a "plaintiff must allege that the seller '(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff.'" *Viggiano*, 944 F. Supp. 2d at 893 (quoting *Rodarte*, 2003 WL 23341208, *7); *see also* Cal. Com. Code § 2313(1)(a). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* § 2313(1)(b). Under the California Commercial Code, a plaintiff need not show reliance. *Weinstat v. Dentsply Internat., Inc.*, 103 Cal. Rptr. 3d 614, 626 (2010); *see also* Cal. Com. Code § 2313 cmt. 3.

Plaintiff has adequately pleaded a claim for breach of express warranty regarding the benefits of using the Flex Belt. As discussed in depth, *supra*, Plaintiff identified specific statements regarding the appearance benefits of using the Flex Belt. *See* Doc. No. 8-5 at 6. Plaintiff claims that the purported benefit was the basis for purchasing the Flex Belt. Compl. ¶ 24, 25. She further alleges that the Flex Belt could not achieve the results associated with traditional exercise. *See id.* ¶ 13, 18, 19. Finally, she claims the breach caused a financial injury. *Id.* ¶ 28.

However, Defendant argues that it only provided a limited express warranty—a warranty only addressing product defects. Doc. No. 8 at 29. Defendant's warranty for the Flex Belt states "THIS LIMITED WARRANTY IS THE ONLY WARRANTY FOR THE PRODUCT, AND THERE ARE NO OTHER EXPRESS WARRANTIES, ORAL OR WRITTEN, PROVIDED BY [Slendertone]." Doc. No. 8-3 at 3.

Under California law, "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other." Cal. Com. Code § 2316. "Because a disclaimer or modification is inconsistent with an express warranty, words of disclaimer or modification give way to words of warranty unless some clear agreement between the parties dictates the contrary relationship." *Hauter v. Zogarts*, 534 P.2d 377, 386 (Cal.

1975).  Limitation of warranties are allowed "only by means of [w]ords that clearly
communicate that a particular risk falls on the buyer."  *Id.*  Further, disclaimers or
modifications "must be strictly construed against the seller."  *Id.* (citing *Burr v. Sherwin
Williams Co.*, 268 P.2d 1041, 1047 (Cal. 1954)).  Importantly, "[a] unilateral
nonwarranty cannot be tacked onto a contract containing a warranty."  *Id.* (citing *Klein v.
Asgrow Seed Co.*, 54 Cal. Rptr. 609, 616 (Ct. App. 1966)).

Noting the presumption of construing warranties as consistent with one another,
the burden against the seller, and the fact the limited warranty was included in the
packaging for the Flex Belt *after* Plaintiff purchased it, *see* Doc. No. 8-2 at 2, the Court
finds that the limited warranty does not upset Plaintiff's alleged express warranty cause
of action.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's breach
of express warranty cause of action.

### 6. Implied Warranty of Merchantability – Cal. Com. Code § 2314

Plaintiff alleges that Defendant is a merchant of the kind of goods sold and
impliedly warranted that "the Flex Belt will result in weight loss, well-defined abdominal
muscles, and is a superior or equal replacement for traditional abdominal exercise."
Compl. ¶ 80–81.  Plaintiff claims Defendant breached the implied warranty and caused
Plaintiff damages.  *Id.* ¶ 82–83, 85.

"Unlike express warranties, which are basically contractual in nature, the implied
warranty of merchantability arises by operation of law."  *Am. Suzuki Motor Corp.*, 37
Cal. App. 4th at 1295 (citing *Hauter*, 534 P.2d at 385).  "The implied warranty of
merchantability 'is breached when the goods do not conform to the promises or
affirmations contained on the container or label or are not fit for the ordinary purposes for
which the goods are used.'  These are two separate definitions of merchantability."
*Kanfer*, 142 F. Supp. 3d at 1104 (quoting *Martinez v. Metabolife Int'l, Inc.*, 6 Cal. Rptr.
3d 494, 500 (2003)); *see also* Cal. Com. Code § 2314.

Defendant argues this cause of action is not available to Plaintiff because Plaintiff bought the Flex belt through Amazon.com and thus lacks the necessary vertical privity with Defendant. *See* Doc. No. 8 at 31. Plaintiff responds that there is privity because the parties are linked in the distribution chain and—even if no privity exists—the claim can proceed under the third-party beneficiary exception. Doc. No. 13 at 28.

A plaintiff asserting breach of an implied warranty must be in vertical privity with the defendant. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Osborne v. Subaru of Am., Inc.*, 243 Cal. Rptr. 815, 821 n.6 (Ct. App. 1988)). Because vertical privity requires the buyer and seller to be "in *adjoining links* of the distribution chain[,] . . . an end consumer. . . who buys from a retailer is not in privity with a manufacturer." *Id.* (citing *Osborne*, 243 Cal. Rptr. at 821 n.6) (emphasis added). One exception is where the plaintiff relies on the advertisements or labels of the manufacturer, *id.*; however, this exception is "applicable only to express warranties." *Burr*, 268 P.2d at 1049 (Cal. 1954). Here, Plaintiff and Defendant are not in adjoining links because Plaintiff bought the Flex Belt through Amazon.com and not directly from Defendant. *See* Compl. ¶ 24. Thus, under *Clemons*, because Plaintiff was a buyer who bought from a retailer, Plaintiff is not in privity with defendant.

Moreover, the Court finds there is no third-party beneficiary exception to California's privity requirement. The Ninth Circuit has found that "California courts have painstakingly established the scope of the privity requirement under California Commercial Code section 2314, and a federal court sitting in diversity is not free to create new exceptions to it." *Clemens*, 534 F.3d at 1024. There is such an exception where "the owner of a building could bring an implied warranty of fitness claim against a subcontractor who installed a leaky roof, despite a lack of privity, because the owner was an intended beneficiary of the contract between the subcontractor and the general contractor that the owner had hired." *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017) (citing *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 145 Cal. Rptr. 448, 450 (Ct. App. 1978)). Despite there being a split among the federal

district courts on whether there is a third-party beneficiary exception to the privity requirement, *Mandani v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2019 WL 652867, at *6 (N.D. Cal. Feb. 15, 2019), "no published decision of a California court has applied this doctrine in the context of a consumer claim against a product manufacturer." *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d at 787.  Indeed, this Court finds that carving out an additional exception would violate the *Clemens* court's finding that California courts "have painstakingly established the scope of the privity requirement" and that federal courts are not free to tinker with the exceptions when sitting in diversity.  *Clemens*, 534 F.3d at 1024.  Therefore, the lack of privity forecloses Plaintiff's breach of implied warranty claims.

Accordingly, the Court **DISMISSES** Plaintiff's express warranty claim **with prejudice** because as a matter of law Plaintiff cannot cure the privity defect.  *See Knappenberger*, 566 F.3d at 942.

**C. Conclusion**

In sum, the Court **GRANTS** Defendant's motion to dismiss as to Plaintiff's breach of implied warranty claim and CLRA claims under California Civil Code §§ 1770(a)(7), 1770(a)(16) and **DENIES** Defendant's motion to dismiss as to Plaintiff's UCL and FAL claims, CLRA claims under California Civil Code §§ 1770(a)(5), 1770(a)(9), and breach of express warranty claims.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. Plaintiff may file an amended complaint that cures the deficiencies identified herein with respect to her request for injunctive relief and CLRA claims under California Civil Code §§ 1770(a)(7), 1770(a)(16) on or before **November 22, 2019**.

      **IT IS SO ORDERED**.

Dated: November 4, 2019

                          Hon. Michael M. Anello
                          United States District Judge

3:19-cv-854 - MMA (KSC)