**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE R. PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 353-0404

***Counsel for Plaintiff and the Class***

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE LOOMIS, on behalf of herself, all others similarly situated, and the general public,<br><br>    Plaintiff,<br><br>  v.<br><br>SLENDERTONE DISTRIBUTION, INC.,<br><br>    Defendant. | Case No: 19-cv-00854-MMA-KSC<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARD**<br><br>Date:  March 8, 2021<br>Time:  2:30 p.m.<br>Judge:  Hon. Michael M. Anello<br>Location: Courtroom 3D |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

NOTICE OF MOTION .......................................................................................... 1

INTRODUCTION .................................................................................................. 1

THE SETTLEMENT, NOTICE, AND THE CLASS'S RESPONSE .................... 3

    I.     The Class .................................................................................................. 3

    II.    Benefits to the Class .............................................................................. 3

         A.    Defendants' Removal of the Challenged Claims ........................ 3

         B.    The $175,000 Common Fund ...................................................... 3

    III.   Class Notice ........................................................................................... 3

    IV.   The Class's Response ............................................................................ 4

    V.    Attorneys' Fees, Costs, and Service Award ......................................... 4

ARGUMENT .......................................................................................................... 4

    I.     Legal Standard ........................................................................................ 4

    II.    The Settlement is Fair, Adequate and Reasonable and Should be
         Approved ................................................................................................. 6

         A.    The Extent of Discovery Completed and the Stage of the
             Proceedings ................................................................................. 8

         B.    The Amount of Settlement ......................................................... 8

         C.    The Experience and Views of Class Counsel ......................... 11

         D.    The Reactions of the Class Members ...................................... 12

i

E.    The Risk of Maintaining Class Action Status Through Trial ................. 13

III.   CLASS COUNSEL IS ENTITLED TO AN AWARD OF
       REASOANBLE FEES AND COSTS .................................................. 13

       A.    The Fee Request is Reasonable Under a Lodestar Analysis, as it
             is Just 78% Percent of Counsel's Presumptively Reasonable
             Lodestar ................................................................................. 14

       B.    The Requested Fee is Reasonable Considering a Percentage-of-
             Fund Cross-Check ................................................................... 19

IV.   A SERVICE AWARD FOR PLAINTIFF IS REASONABLE ..................... 21

CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
913 F. Supp. 2d 964 (E.D. Cal. 2012)................................................................13

*Alvarez v. Farmers Ins. Exch.*,
2017 WL 2214585 (N.D. Cal. Jan. 18, 2017)..................................................22

*Austin v. Foodliner, Inc.*,
2019 WL 2077851 (N.D. Cal. May 10, 2019)................................................22

*Baker v. SeaWorld Entm't, Inc.*,
2020 WL 4260712 (S.D. Cal. July 24, 2020) ..................................................7

*Bayat v. Bank of the W.*,
2015 WL 1744342 (N.D. Cal. Apr. 15, 2015)..................................................9

*Beaver v. Tarsadia Hotels*,
2017 WL 4310707 (S.D. Cal. Sept. 28, 2017)................................................19

*Bennett v. SimplexGrinnell LP*,
2015 WL 12932332 (N.D. Cal. Sept. 3, 2015) ........................................20, 21

*Blum v. Stenson*,
465 U.S. 886 (1984)..........................................................................................17

*Bostick v. Herbalife Int'l of Am., Inc.*,
2015 WL 12731932 (C.D. Cal. May 14, 2015) ................................................9

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ................................................................11

*Brazil v. Dole Packaged Foods, LLC*,
660 F. App'x 531 (9th Cir. 2016) ....................................................................9

*Brown v. 22nd Dist. Agric. Ass'n*,
2017 WL 3131557 (S.D. Cal. July 24, 2017)................................................17

*Chambers v. Whirlpool Corp.*,
214 F. Supp. 3d 877 (C.D. Cal. 2016) ............................................................21

iii

*Chavez v. Netflix, Inc.*,
    162 Cal. App. 4th 43, 66 (2008) ........................................................................19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ..............................................................................10

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998).............................................................................23

*Cunningham v. County of Los Angeles*,
    879 F. 2d 481 (9th Cir. 1988).............................................................................14

*Elliott v. Rolling Frito-Lay Sales, LP*,
    2014 WL 2761316 (C.D. Cal. June 12, 2014) ............................................13, 14

*Espinosa v. Cal. Coll. of San Diego, Inc.*,
    2018 WL 1705955 (S.D. Cal. Apr. 9, 2018)...........................................5, 6

*Foos v. Ann, Inc.*,
    2013 WL 5352969 (S.D. Cal. Sept. 24, 2013) ...................................................16

*Fox v. Vice*,
    563 U.S. 826 (2011) ...........................................................................................15

*Grant v. Martinez*,
    973 F.2d 96 (2d Cir. 1992).................................................................................15

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
    100 F.3d 691 (9th Cir. 1996)..............................................................................18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998).............................................................................5

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011).................................................................16, 17

*Hawthorne v. Umpqua Bank*,
    2015 WL 1927342 (N.D. Cal. 2015) ..................................................................21

*Hendricks v. Starkist Co.*,
    2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ..................................................10

*Hickcox-Huffman v. US Airways, Inc.*,
  2019 WL 1571877 (N.D. Cal. Apr. 11, 2019) ................................................22

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ....................................................9

*Hughes v. Microsoft Corp.*,
  2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ........................................12

*Hunter v. Nature's Way Prod., LLC*,
  2020 WL 71160 (S.D. Cal. Jan. 6, 2020) ......................................................18

*In re Am. Apparel, Inc. S'holder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014) ..............................................11

*In re Beef Indus. Antitrust Litig.*,
  607 F. 2d 167 (5th Cir. 1979) ..........................................................................7

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................6

*In re Consumer Privacy Cases*,
  175 Cal. App. 4th 545 (2009) ........................................................................14

*In re Ferrero Litig.*,
  583 Fed. Appx. 665 (9th Cir. 2014) ..............................................................19

*In re HP Laser Printer Litig.*,
  2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) ..............................................20

*In re LinkedIn User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ..............................................................7, 10

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ..............................................................6, 8, 11

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................13

*In re Online DVD–Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir.2015) ..........................................................................12

*In re Pool Prod. Distrib. Mkt. Antitrust Litig.*,
2015 WL 3486434 (E.D. La. June 2, 2015)................................................................10

*In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ................................................................11

*In re Walgreen Co. Wage & Hour Litig.*,
2014 WL 12853547 (C.D. Cal. Oct. 3, 2014)................................................................22

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
720 F. Supp. 1379 (D. Ariz. 1989)................................................................6

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)................................................................13

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ................................................................5

*Johnson v. Quantum Learning Network, Inc.*,
2017 WL 747462 (N.D. Cal. Feb. 27, 2017) ................................................................12

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ................................................................15

*Lealao v. Beneficial Cal., Inc.*,
82 Cal. App. 4th 19 (2000)................................................................15

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)................................................................8

*Linney v. Cellular Alaska P'ship*,
1997 WL 450064 (N.D. Cal. 1997) ................................................................11, 20

*Loomis v. Slendertone Distrib.*, *Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019)................................................................6, 8

*Low v. Trump University, LLC*,
246 F. Supp. 3d 1295 (S.D. Cal. 2017)................................................................3

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819 (D. Mass 1987) ................................................................11

*Margolin v. Regional Planning Comm.*,
 134 Cal. App. 3d 999 (1982)...........................................................16

*Martin v. AmeriPride Servs., Inc.*,
 2011 WL 2313604 (S.D. Cal. June 9, 2011)..............................11

*McGrath v. Wyndham Resort Dev. Corp.*,
 2018 WL 637858 (S.D. Cal. Jan. 30, 2018)................................19

*Molski v. Gleich*,
 318 F.3d 937 (9th Cir. 2003).........................................................5

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
 339 U.S. 306 (1950)..........................................................................3

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004)...............................................6

*Nguyen v. Radient Pharms. Corp.*,
 2014 WL 1802293 (C.D. Cal. May 6, 2014) ...........................7

*Officers for Justice v. Civil Serv. Comm'n*,
 688 F.2d 615 (9th Cir. 1982)........................................................5

*Oxina v. Lands' End, Inc.*,
 2016 WL 7626190 (S.D. Cal. Dec. 2, 2016)....................passim

*Paul, Johnson, Alston, & Hunt v. Graulty*,
 886 F.2d 268 (9th Cir. 1989)......................................................13

*Perez v. Asurion Corp.*,
 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ....................................9

*Rael v. Children's Place, Inc.*,
 2020 WL 434482 (S.D. Cal. Jan. 28, 2020)..............................8

*Rigo v. Kason Indus., Inc.*,
 2013 WL 3761400 (S.D. Cal. July 16, 2013) .........................10

*Rodriguez v. W. Publ'g Corp.*,
 563 F. 3d 948 (9th Cir. 2009).......................................................21

*Rojas v. Zaninovich*,
    2015 WL 3657172 (E.D. Cal. June 11, 2015) ...................................................................7

*Savills, Inc. v. Musgjerd*,
    2020 WL 6395839 (S.D. Cal. Nov. 2, 2020) ..................................................................17

*Schneider v. Chipotle Mexican Grill, Inc.*,
    2020 WL 6484833 (N.D. Cal. Nov. 4, 2020) ..................................................................8

*Schwarz v. Sec'y of Health and Human Serv.*,
    73 F.3d 895 (9th Cir. 1995).............................................................................................17

*Shames v. Hertz Corp.*,
    2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ..................................................................14

*Shannon v. Sherwood Mgmt. Co.*,
    2020 WL 2394932 (S.D. Cal. May 12, 2020).............................................................8, 9

*Smith v. Am. Greetings Corp.*,
    2016 WL 2909429 (N.D. Cal. May 19, 2016) ...............................................................11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)....................................................................................passim

*Stuart v. Radioshack Corp.*,
    2010 WL 3155645 (S.D. Cal. Aug. 9, 2010) .................................................................18

*Tait v. BSH Home Appliances Corp.*,
    2015 WL 4537463 (C.D. Cal. July 27, 2015)....................................................6, 13, 14

*Theodore Broomfield v. Craft Brew Alliance, Inc.*,
    2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ..................................................................9

*Torres v. Pick-A-Part Auto Wrecking*,
    2018 WL 3570238 (E.D. Cal. July 23, 2018) ................................................................21

*Touhey v. United States*,
    2011 WL 3179036 (C.D. Cal. July 25, 2011)............................................................9, 12

*Van Ba Ma v. Covidien Holding, Inc.*,
    2014 WL 2472316 (C.D. Cal. May 30, 2014) ...............................................................10

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ...................................................................22

*Vargas v. Berkeley Unified Sch. Dist.*,
    2017 WL 5991857 (N.D. Cal. Dec. 4, 2017) ...................................................14

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ............................................................................13

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ...................................................21

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)...........................................................................14

*Werdebaugh v. Blue Diamond Growers*,
    2014 WL 2191901 (N.D. Cal. May 23, 2014) ...................................................7

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) .............................................................................16

*White v. Experian Info. Sols., Inc.*,
    2009 WL 10670553 (C.D. Cal. May 7, 2009) .................................................11

**Statutes**

Cal. Civ. Code § 1780(e).......................................................................................13

**Rules**

Fed. R. Civ. P. 23(c)(2) ...........................................................................................3

Fed. R. Civ. P. 23(e) ................................................................................................4

Fed. R. Civ. P. 23(e)(2) ...........................................................................................6

Fed. R. Civ. P. 23(h) .........................................................................................13, 21

**Other Authorities**

*Manual for Complex Litigation* ..............................................................................5

## <u>NOTICE OF MOTION</u>

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on March 8, 2021, at 2:30 p.m. or as soon thereafter as may be heard, in Courtroom 3D of the United Stated District Court for the Southern District of California, 221 West Broadway, San Diego, California 92101 (Edward J. Schwartz Building), Plaintiff will move the Court, the Honorable Michael M. Anello presiding, for an Order

1. Finally certifying the Settlement Class;

2. Finally approving the Settlement as fair, reasonable, and adequate to the Class;

3. Directing the parties to undertake the obligations set forth in the Settlement Agreement that arise out of the Court's final approval;

4. Awarding attorneys' fees and costs;

5. Granting a Class Representative service award;

6. Entering Judgment; and

7. Maintaining jurisdiction over this matter for purpose of enforcing the Judgment.

The Motion is based upon this Notice of Motion, the accompanying memorandum, the Declaration of Jack Fitzgerald ("Fitzgerald Decl."), the Declaration of Jane Loomis ("Loomis Decl."), the Declaration of Dana Boub ("Boub Decl."), all exhibits thereto, and all pleadings and proceedings had to date, and any written or oral argument offered in support of or in opposition to this motion.

## <u>INTRODUCTION</u>

On December 1, 2020, the Court preliminarily approved a California-wide class action Settlement between plaintiff Jane Loomis and defendant Slendertone Distribution, Inc. *See* Dkt. No. 42, Order Granting Preliminary Approval of Class Settlement ("PA Order"). The Settlement resolves allegations that Defendant violated California's Unfair Competition Law, False Advertising Law, Consumers Legal Remedies Act, and breached express warranties by misleadingly and unlawfully marketing an Electrical Muscle Stimulator called the "Flex Belt," as effective in assisting in weight loss, body contouring, developing visible "six-pack"

abs, and by representing that Flex Belt could be used effectively as a replacement for abdominal exercises. *See* Dkt. No. 1, Compl.

Notice has been provided to the Class in accordance with the approved Notice Plan, providing direct notice to those Flex Belt purchasers for whom the parties had email addresses, and over 4 million web impressions, resulting in over 4,500 unique website visits. *See* Boub Decl. ¶ 5, Ex. A. The Class's response has been uniformly positive: 314 claims[1] have been filed, only one Class Member opted out, and no objections have been received.

The positive response is for good reason. The Settlement provides substantial relief to the California Class: a $175,000 non-reversionary common fund, and Slendertone's changing its advertising and website to omit two statements the Court found might plausibly be misleading. *See* Dkt. No. 39-2, Fitzgerald Prelim. Approval Decl. Ex. 1, Settlement Agreement ("SA") ¶ 2.2. This is a fair, reasonable, and adequate result for the Class, while eliminating the inherent risk of litigation and the risk that Defendant's financial situation might make it judgment proof.

Class Counsel obtained this Settlement without compensation thus far. Pursuant to the Settlement Agreement, Class Counsel seeks fees and costs significantly less than their presumptively-reasonable lodestar incurred in prosecuting this case. The requested fee-and-expense award is fair and reasonable in light of, among other things, Class Counsel's lodestar and the results obtained for the Class. Similarly, the award requested for Ms. Loomis is reasonable compensation for her service to the Class, and as a policy matter, to incentivize future volunteer class representatives.

Accordingly, Plaintiff respectfully requests the Court grant the motion and enter judgment granting final approval.

---

[1] As of the date of filing, 296 out of 314 claims have been verified as valid. The total number of valid claims will be at least 296, and as high as 314. *See* Boub Decl. ¶¶ 5, 8-9.

## I. The Class

The proposed Settlement is on behalf of a Class of all persons in the United States who purchased during the Class Period, for personal or household use, the Slendertone EMS device known as the Flex Belt. SA ¶ 1.3. The Class Period runs from May 7, 2015 to December 1, 2020, the date of preliminary approval, *id.* ¶ 1.4; *see also* PA Order.

## II. Benefits to the Class

### A. Defendants' Removal of the Challenged Claims

Slendertone warrants that it has changed its advertising to omit certain written statements, and has otherwise revised its website to address the issues identified by the Court in its Order:

• "For those looking for a convenient way to tone, strengthen and flatten the abdominal area;"

• "Who Should Use the Flex Belt®? . . . Anyone that wants more attractive abs, regardless of current fitness levels."

SA ¶ 2.2.

### B. The $175,000 Common Fund

Defendants have established a non-reversionary $175,000 common fund to pay Class Member claims and all Settlement expenses, namely notice and administration; fees, costs, and a service award; and Class Member claims. *Id.* ¶ 2.3.

## III. Class Notice

Where there is a proposed settlement, "[d]ue process requires notice to be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1311 (S.D. Cal. 2017) (quoting *Mullane v. Cent. Hanover Bank & Tr.*

---

[2] The relevant procedural history was laid out in Plaintiff's Motion for Preliminary Approval. Dkt. No. 39 ["PA Mot."].

*Co.*, 339 U.S. 306, 314 (1950)). The Court previously approved the Settlement's Notice Plan, including the form and content of the Class Notice and the procedures for disseminating it, finding the plan "meets the requirements of Federal Rule of Civil Procedure 23(c)(2), and due process, and further constitutes the best notice practicable under the circumstances." PA Order ¶ 8.

The Class Administrator, RG2, subsequently executed the Notice Plan in accordance with this Court's Order and the Settlement Agreement. *See* Boub Decl. ¶¶ 3-7. RG2 initially estimated total cost of notice and administration of $62,722. *See* PA Mot. at 5. It agreed to cap its costs to be paid from the common fund at $60,000, *id,* and was ultimately able to keep its costs and expenses to a modest $33,769.00. Boub Decl. ¶ 10.

## IV.    The Class's Response

The response from the Class has been positive, with 314 claims having been received.[3] No objections have been received, and only one opt-out. *Id*. ¶ 5(b).[4]

## V.    Attorneys' Fees, Costs, and Service Award

As of January 19, 2021, Class Counsel had expended over 132 hours of work on this matter, incurring a fee lodestar of over $75,000. Fitzgerald Decl. ¶¶ 4-7. Counsel requests herein a fee-and-cost award of only $60,000, comprising $939.80 in recoverable costs and $59,060.20 in fees, approximately 78% of counsel's lodestar. *Id*. Plaintiff requests a service award of $10,000 for her work as the Class Representative.

## **ARGUMENT**

## I.    Legal Standard

A class action settlement must be approved by the Court before it can become effective. *See* Fed. R. Civ. P. 23(e). The process for court approval of class action settlements is

---

[3] The claims period closed on January 12, 2021, and so this number is likely close to the final claims rate, which will only increase if valid claims postmarked on or before January 12, 2021 are still in transit.

[4] The deadline to opt out was January 12, 2021, while the deadline for objections is February 2, 2021.

comprised of three steps: (1) preliminary approval, (2) dissemination of notice to the class which provides class members the opportunity to object or opt out and, (3) a final approval hearing, at which the court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class and whether plaintiff's request for attorneys' fees, expense reimbursement and service awards should be approved. *See* MANUAL FOR COMPLEX LITIGATION, §§ 21.632-34; *see also In re: Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 721680, at *16 (N.D. Cal. Jan. 28, 2016). The first two steps are completed and Plaintiff now seeks an order finally approving the Settlement.

"Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case." *Espinosa v. Cal. Coll. of San Diego, Inc.*, 2018 WL 1705955, at *4 (S.D. Cal. Apr. 9, 2018) (Anello, J.) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). However:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

To that end, a "court considers several factors in determining whether a proposed settlement is 'fair, reasonable, and adequate' under Rule 23(e)." *Espinosa*, 2018 WL 1705955, at *4. They include: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery, and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Id*. (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). The Court need not weigh all of the factors and may consider only those relevant to protect absent class

5

members. *Id.* (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (overruled in part on other grounds)). Ultimately, "[j]udicial policy favors settlement in class actions and other forms of complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation." *Id.* at *5 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989)).

## II. The Settlement is Fair, Adequate and Reasonable and Should be Approved

"The Court may issue final approval of a class settlement 'only after a hearing and on finding that it is fair, reasonable, and adequate.'" *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *3 (C.D. Cal. July 27, 2015) (citing Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). "To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Espinosa*, 2018 WL 1705955, at *5 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). As this court explained:

> The Court shall consider the vagaries of litigation and compare the
> significance of immediate recovery by way of the compromise to the mere
> possibility of relief in the future, after protracted and expensive litigation. In
> this respect, "it has been held proper to take the bird in hand instead of a
> prospective flock in the bush."

*Id.* (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted)).

Of the many class action lawsuits Class Counsel have brought and prosecuted during the last several years, this case presents unique challenges. *See generally* PA Mot. at 15-16. On the merits, Plaintiff and her counsel believe Slendertone overreached in its advertising of the Flex Belt, with promises that using the Flex Belt will deliver a "flatten[ed]" abdominal area and "more attractive abs." *See* S.A. ¶ 2.2. However, just as the Court acknowledged that Slendertone makes "disclaiming language that the Flex Belt is insufficient to achieve weight

6

loss and that a more attractive abdominal area requires proper diet and exercise," *Loomis v. Slendertone Distrib.*, Inc., 420 F. Supp. 3d 1046, 1083 (S.D. Cal. 2019) (Anello, J.), a jury could potentially find that disclaiming language defeats liability completely or calls for significantly reduced damages.

There would also likely be unique challenges in certifying a class here because a proper measure of damages in a consumer fraud case is the difference between the value of the product as misrepresented, and its actual value, or the "price premium." *See*, *e.g.*, *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at \*22 (N.D. Cal. May 23, 2014) (plaintiff "must present a damages methodology that can determine the price premium attributable to [defendant's] use of the [challenged] labeling statements"). Plaintiff's damages model would have been especially complex given that only two statements among a veritable sea of advertising language on the website were found to be plausibly misleading, *and* those statements were coupled with disclaiming language. While Plaintiff is confident she could have developed expert opinion properly modeling damages, it would have been time-consuming and expensive, and subject to vigorous attack by defendant and its experts.

Courts considering approval rightly consider "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F. 2d 167, 179 (5th Cir. 1979); *see also Rojas v. Zaninovich*, 2015 WL 3657172, at \*12 (E.D. Cal. June 11, 2015) (Courts consider, among other things, the "normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, [and] the lengthy process of establishing specific damages"). "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Baker v. SeaWorld Entm't, Inc.*, 2020 WL 4260712, at \*7 (S.D. Cal. July 24, 2020) (Anello, J.) (quoting *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015)); *see also Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at \*2 (C.D. Cal. May 6, 2014) (granting final approval where "although the claims were quite strong, there were clear factual challenges facing Plaintiffs at trial" including "challenges of calculating damages").

## A. The Extent of Discovery Completed and the Stage of the Proceedings

Investigation and discovery have been sufficient to permit the parties and Court to make an informed analysis. The parties have exchanged documents and written discovery responses. The parties were also aided by the Court's thorough discussion in its 53-page Order on Slendertone's motion to dismiss. *See Loomis*, 420 F. Supp. 3d 1046. That discovery was not yet complete is of no moment: "formal discovery may not be necessary where 'the parties have sufficient information to make an informed decision about settlement.'" *Shannon v. Sherwood Mgmt. Co.*, 2020 WL 2394932, at *9 (S.D. Cal. May 12, 2020) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (explaining that a combination of "investigation, discovery, and research" conducted prior to settlement can provide sufficient information for class counsel to make an informed decision about settlement).

Discovery has yielded information sufficient for the parties to understand the class size; to know how much, on average, each class member spent; and to examine the science relied upon by defendant, consumer reactions to the product, and Slendertone's communications with regulatory agencies concerning its advertising. Defendant also provided additional information about its financial condition. All this has permitted Class Counsel to reasonably estimate its chances at trial, and the potential recovery in light of all the risks.

## B. The Amount of Settlement

The Settlement's $175,000 Common Fund for a California Class of approximately 20,000 class members is fair, reasonable, and adequate. Assuming the Court awards $60,000 in attorneys' fees and costs, a $10,000 service award, and notice and administration costs of $33,769, there will be $71,231 left in the Common Fund to divide among claimants.

Here, the 314 claims results in a claims rate of about 1.6%, which is on par with other consumer class actions.[5] This rate results in each claimant receiving about $227. With an

---

[5] "[C]onsumer class actions tend to result in claims rates in the low single digits." *Rael v. Children's Place, Inc.*, 2020 WL 434482, at *9 (S.D. Cal. Jan. 28, 2020); *see also Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 6484833, at *9 (N.D. Cal. Nov. 4, 2020) ("Here,

average price of $158,[6] this represents a recovery of about **144%** of the average purchase price for the claimants. Even for those consumers who paid the full $199.99 MSRP, *see* Fitzgerald PA Mot. Decl. Ex. 3, their recovery is still significantly *more* than they paid. This is a material recovery since, to establish damages at trial, Plaintiff would have to show "the difference between the prices customers paid and the value of the [product] they bought—in other words, the 'price premium' attributable to [Defendant's advertising claims]," which would likely only be a small fraction of the purchase price. *See Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016).

At trial, the Class's recovery would necessarily be limited to far below that amount, particularly as a result of the disclaiming language in Slendertone's advertising. Consequently, the Settlement represents a fair, reasonable, and adequate result for the Class. *See Shannon*, 2020 WL 2394932, at *9 (approving a $450,000 settlement compared to potential recovery of $3 million); *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020) (Concluding that a $1.00 recovery per bottled

---

the 0.83% claims rate [] is on par with other consumer cases, and does not otherwise weigh against approval." (citing *Theodore Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (approving settlement with response rate of "about two percent")); *Bostick v. Herbalife Int'l of Am., Inc.*, 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015) (approving settlement with "response rate of less than 1%" and explaining "this ratio is not dispositive and should not be given great significance because many factors affect response rates." (citation and internal quotations omitted)); *Bayat v. Bank of the W.*, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (Approving settlement with 1.9% claims rate even though it was "well below the parties' estimated claims rate at the preliminary approval stage," which was based in part on the fact that the parties had contact information for over half of the potential class members, because the relatively high monetary relief of $151 per claimant was reasonable and "not a trifling sum by any means."); *Touhey v. United States*, 2011 WL 3179036, at *7 (C.D. Cal. July 25, 2011) (Approving settlement where only 38 claims were filed, which was "approximately 2%" claims rate, based on "the lack of objections and the proposed rate of recovery"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377–78 (S.D. Fla. 2007) (approving settlement with claims rate of about 1.2%).

[6] Counsel for Slendertone represents that the average sale price for the Flex Belt during the Class Period was $158. PA Fitzgerald Decl. ¶ 16.

purchased "is an excellent result" considering the fraction of purchase price recoverable at trial and in light of expert opinion that the price premium attributable to the false claim was approximately 19%).

Here, California sales of the Flex Belt in California during the Class Period were about $3.5 million. Assuming total success at trial for the Plaintiffs, the Class would have to prove a 5% price premium on the challenged claims in order to obtain a $175,000 verdict. That each claimant is receiving more than a full refund, without the risk of going to trial, is substantial for a class action where no class had been certified, weighing in favor of granting approval. *See Van Ba Ma v. Covidien Holding, Inc.*, 2014 WL 2472316, at *3 (C.D. Cal. May 30, 2014) ("[I]t is not uncommon for a class action settlement to amount to approximately 10% of the total potential value. [Citation]. The Court finds that this factor weighs in favor of final approval because the settlement is somewhere between 9% and 18% of what the plaintiffs were likely going to recover."); *cf. City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Hendricks v. Starkist Co.*, 2016 WL 5462423, at *5 (N.D. Cal. Sept. 29, 2016) (approving settlement in which class members would receive $1.97 cash or $4.43 tuna can voucher per claim for, and noting that the "settlement amount, while constituting only a single-digit percentage of the maximum potential exposure, is reasonable given the stage of proceedings and defenses asserted").

This favorable comparison to potential recovery at trial supports granting final approval. *See In re Pool Prod. Distrib. Mkt. Antitrust Litig.*, 2015 WL 3486434, at *7, *11 (E.D. La. June 2, 2015) (granting final approval when settlement fund was less than 3.8% of the maximum potential damages); *In re Linkedin User Privacy Litig.*, 309 F.R.D. at 587 ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation."); *Rigo v. Kason Indus., Inc.*, 2013 WL 3761400, at *5 (S.D. Cal. July 16, 2013) (amount of settlement weighed in favor of final

approval where "[e]ven after proration of claims, class members will receive 40% of the total amount paid for the hardware components" and "40% appears above and beyond their actual damages"); *cf. Martin v. AmeriPride Servs., Inc.*, 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011) (granting final approval where "common fund represents approximately 36% of the total potential damages").

This is particularly true where, as here, there remain significant obstacles to both certification and full recovery at trial. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 ("the Settlement amount . . . was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate"); *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (amount of settlement weighed in favor of approval where award "represent[ed] 5% to 30% of the recovery that might have been obtained" since that was "not a *de minimis* amount" "[g]iven the likelihood that plaintiffs would have been unable to prove actual damages and the risk that they would have been unable to prove willfulness"); *Smith v. Am. Greetings Corp.*, 2016 WL 2909429, at *4–5 (N.D. Cal. May 19, 2016) (award of 20% of potential recovery was fair and reasonable "[b]ecause of the risk, expense, complexity, and likely duration attached to the litigation of these claims"); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *12 (C.D. Cal. July 28, 2014) (settlement recovery equal to "24% of [the] potential recovery at trial" was fair and adequate because "[i]t takes into account the risks the class faced in seeking certification and at trial" and "eliminates the possibility that class members would have to wait years to receive compensation.").

## C. The Experience and Views of Class Counsel

"The judgment of experienced counsel regarding the settlement is entitled to great weight." *White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *12 (C.D. Cal. May 7, 2009) (citing *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997)). Thus, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Id.* (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).

11

Class Counsel is highly experienced in consumer class actions and believes the settlement is not only fair, adequate, and reasonable, but a solid result for the Class. In prosecuting dozens of consumer class actions involving misleading claims, Class Counsel has an understanding of this case's strengths and risks. Counsel has reviewed the Flex Belt's sales records, written discovery, and other documents produced by Slendertone. Class Counsel is also cognizant of the impact that the COVID pandemic has had on Slendertone's business and the risk that it would have no ability to satisfy a judgment even if the claims were pursued through trial. *See* PA Mot. at 3.

Given the risks of prevailing, the risks of not collecting a judgment even in the event of a favorable jury verdict, and the recovery for each claimant, in Class Counsel's estimation, this settlement is a strong result for the Class and is more than fair, adequate, and reasonable.

### D. The Reactions of the Class Members

"The reaction of the class members to the proposed settlement has been muted, but positive," *Touhey*, 2011 WL 3179036, at *7, with 314 claims filed, only one class member opting out (with the deadline to do so expired), and no Class Members yet objecting. The lack of opt-outs and objections strongly weighs in favor of approving the Settlement. *See Johnson v. Quantum Learning Network, Inc.*, 2017 WL 747462, at *2 (N.D. Cal. Feb. 27, 2017) ("The lack of objections and the low rate of opt-outs (less than 1%) are 'indicia of the approval of the class.'" (citation omitted)); *In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir. 2015) (district court did not err in approving settlement with 3.4% claim rate where "722 class members opted out of the class and 30 lodged objections.").

In sum, the Settlement provides a substantial common fund as well as appropriate changes to defendants' advertising practices. The common fund allows claimants to receive an amount that is more than they could have received at trial, and at the same time removing the substantial risk that the case may not be certified or that Plaintiff would not prevail at trial. In Class Counsel's experience, this is a strong outcome for the Class and the Class's approval of the Settlement—as demonstrated by the high number of claims and lack of objections and opt-outs—confirms this view. Accordingly, the Court should grant final

12

approval to the settlement.

     **E.**     **The Risk of Maintaining Class Action Status Through Trial**

     Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (Even where a class has already been certified, "it is possible that the class could have been decertified or modified before the conclusion of trial."). For many of the same reasons discussed above, particularly in establishing a damages model that satisfies *Comcast*, there is some risk that the Class would either not be certified or that something may arise before trial that would require the Court to decertify a class. As such, this factor favors approval of the settlement.

## III.    CLASS COUNSEL IS ENTITLED TO AN AWARD OF REASOANBLE FEES AND COSTS

     Successful claims under the CLRA mandate an award of fees. *See* Cal. Civ. Code § 1780(e) (court "shall award court costs and attorney's fees to a prevailing plaintiff"); *see also Tait*, 2015 WL 4537463, at *9 ("the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.") (citing Fed. R. Civ. P. 23(h)). "In cases involving fee-shifting statutes, the primary method for establishing the reasonable attorney fees is the lodestar method." *Oxina v. Lands' End, Inc.*, 2016 WL 7626190, at *7 (S.D. Cal. Dec. 2, 2016) (Anello, J.). Alternatively, "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014) (quoting *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)). "This rule, known as the 'common fund doctrine,' is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel." *Id.* (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (quoting *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989))).

"District courts have the discretion to calculate fees by either calculating a lodestar or awarding a percentage of the common fund." *Id.* (citing *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994)). "Regardless of whether attorneys' fees are determined using the lodestar method or awarded based on a 'percentage-of-the-benefit' analysis under the common fund doctrine, [t]he ultimate goal . . . is the award of a 'reasonable' fee to compensate counsel for their efforts, irrespective of the method of calculation." *Tait*, 2015 WL 4537463, at *10 (quoting *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557-58 (2009) (internal quotation marks omitted)). "[P]articularly where obtaining injunctive relief likely accounted for a significant part of the fees expended, courts can use the common fund version or the lodestar method either to set the fee award or as a cross-check to assist in the determination of how the 'relevant circumstance' of the injunctive relief should affect a percentage award." *Staton*, 327 F.3d at 974.

**A.    The Fee Request is Reasonable Under a Lodestar Analysis, as it is Just 78% Percent of Counsel's Presumptively Reasonable Lodestar**

Where "Plaintiffs pursued claims under statutes with fee-shifting provisions" the Court may "choose[] to apply the lodestar method." *Shames v. Hertz Corp.*, 2012 WL 5392159, at *18 (S.D. Cal. Nov. 5, 2012) (Anello, J.). But even when applying the percentage method, the court can use the lodestar method as a cross-check to determine the fairness of the fee award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

"[The lodestar] figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Elliott*, 2014 WL 2761316, at *10 (citing *Vizcaino*, 290 F.3d at 1050) (quoting *Bluetooth*, 654 F.3d at 941) (alterations in original). "[T]he lodestar figure is presumptively reasonable," *Baker*, 2020 WL 4260712, at *9 (citations and internal quotes omitted); *c.f. In re Bluetooth*, 654 F.3d at 941 ("[T]he lodestar figure is 'presumptively reasonable'" (quoting *Cunningham v. County of Los Angeles*, 879 F. 2d 481, 488 (9th Cir. 1988)); *see also Vargas v. Berkeley Unified Sch. Dist.*, 2017 WL 5991857, at *1 (N.D. Cal. Dec. 4, 2017) ("Fee awards calculated under the lodestar

14

method are generally presumed to be reasonable.").

"[T]he unadorned lodestar reflects the general local hourly rate for a *fee-bearing* case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider," *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001). California courts may therefore adjust the lodestar upward, applying a positive multiplier to approximate a "percentage fee[] freely negotiated in comparable litigation." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 50 (2000).

As demonstrated below, Class Counsel's hours and rates are reasonable. These rates and hours generate a presumptively reasonable lodestar of $75,587.50. Accordingly, counsel's fee request of $59,060.20 is just 78 percent of the presumptively-reasonable lodestar (or a *negative*, -0.22 multiplier). This strongly indicates that the request is reasonable.

### 1. The Hours Expended on the Litigation are Reasonable

Class Counsel are entitled to be compensated for reasonable time spent at all points in the litigation. Courts should avoid engaging in an "*ex post facto* determination of whether attorney hours were necessary to the relief obtained." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id*; *See also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.")

Timekeepers from The Law Office of Jack Fitzgerald, PC ("LOJF") include principal Jack Fitzgerald and associate Trevor M. Flynn. Each timekeeper's total hours is as follows.

15

| Timekeeper[7] | Position | Total Hours |
|---|---|---|
| Jack Fitzgerald | Principal | 6.1 |
| Trevor Flynn | Associate | 123.5 |
| | **Total** | **129.6** |

This time includes, *inter alia*: pre-filing investigation and research; preparing and filing the complaint; subsequent pleadings, motions, oppositions, and briefing; propounding and responding to formal discovery; document review; legal research and analyses of the applicable laws; settlement negotiations; obtaining preliminary approval; and ensuring the Class Notice was disseminated. Fitzgerald Decl. ¶ 6.

"[S]ummaries and declarations provide a sufficient showing of the hours counsel performed on this case." *Foos v. Ann, Inc.*, 2013 WL 5352969, at *5 (S.D. Cal. Sept. 24, 2013); *see also Oxina*, 2016 WL 7626190, at *6 ("[D]etailed time sheets are not necessary"); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) ("California case law permits fee awards in the absence of detailed time sheets."); *Margolin v. Regional Planning Comm.*, 134 Cal. App. 3d 999, 1006-07 (1982) (attorney declaration as to number of hours worked by firm members was sufficient); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644-45 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Neither California courts or federal courts require counsel to submit complete time records when requesting an attorneys' fee award. A court may review the summaries provided in declarations by counsel without reviewing contemporaneous time records."). To give the Court a clear understanding of how Class Counsel's time was spent, time entries were divided into 8 categories as follows:[8]

---

[7] Prior to calculating the number of hours in this matter, counsel reviewed those records for errors and exercised billing discretion to remove time that was performed by other attorneys who spent minimal time on the case and for staff. For example, one other attorney and a paralegal billed hours on this matter, but their time was not included in calculating the lodestar. Thus, the number of hours used to calculate the lodestar is lower than the number of hours actually expended in litigating this matter. Fitzgerald Decl. ¶ 5.

[8] Class Counsel's detailed time records can be provided to the Court upon request.

| Task | Hours | % |
|---|---|---|
| Pre-Filing Investigation | 18.7 | 14.43% |
| Complaint | 18.3 | 14.12% |
| Case Management | 2.6 | 2.01% |
| Rule 12 Briefing | 22.2 | 17.13% |
| Discovery | 13 | 10.03% |
| Settlement | 18.1 | 13.97% |
| Preliminary Approval and Class Notice | 18.9 | 14.58% |
| Final Approval | 17.8 | 13.73% |
| **Total** | **129.6** | **100%** |

The need for careful investigation and pleading, the work on surviving Defendant's Motion to Dismiss, as evidenced by the extensive 53-page published opinion, *see* Dkt. No. 17, and extent of settlement negotiations readily demonstrates the time expended was reasonable and necessary to obtain this substantial Settlement for the Class. Thus, the hours expended on the litigation are reasonable.

### 2. Class Counsel's Rates are Reasonable

"A reasonable hourly rate must be in line with the rates 'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Savills, Inc. v. Musgjerd*, 2020 WL 6395839, at *3 (S.D. Cal. Nov. 2, 2020) (Anello, J.) (internal quotes and citations omitted); *c.f. Hartless*, 273 F.R.D. at 644 ("A reasonable hourly rate is determined pursuant to the prevailing market rates in the relevant community."). "To assist the court in calculating the lodestar, a plaintiff must submit 'satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Brown v. 22nd Dist. Agric. Ass'n*, 2017 WL 3131557, at *4 (S.D. Cal. July 24, 2017) (quoting *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984)). "The relevant community is that in which the district court sits." *Id*. (citing *Schwarz v. Sec'y of Health and Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995).

Declarations regarding the prevailing market rate in the relevant community suffice to

17

establish a reasonable hourly rate. *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996) (noting that declarations from attorneys in the community can provide adequate proof of the reasonableness of counsel's rates). Class Counsel's requested rates herein are as follows.

| Timekeeper | Position | Rate |
|---|---|---|
| Jack Fitzgerald | Principal | $750 |
| Trevor Flynn | Associate | $575 |

These rates have been approved in this district for a similar false advertising class action brought under the UCL and CLRA. *See Hunter v. Nature's Way Prod., LLC*, 2020 WL 71160, at *7 (S.D. Cal. Jan. 6, 2020) (approving rates of "750 per hour for Jack Fitzgerald (of The Law Office of Jack Fitzgerald, PC); [and] $575 per hour for Trevor Flynn (an associate of The Law Office of Jack Fitzgerald, PC)"). The *Hunter* court found, in part, these "rates are reasonable because other District Courts in the Southern District of California have found a blended rate of $708 to be reasonable." *Id*. (citing *Stuart v. Radioshack Corp.*, 2010 WL 3155645, at *6 (S.D. Cal. Aug. 9, 2010)); *see* Fitzgerald Decl. ¶¶ 9-11.

As further evidenced in the accompanying Fitzgerald Declaration, these rates are also reasonable because they are in line with previous fee awards and rates charged for similar complex class action litigation by attorneys in the Southern District of California with comparable experience, skill, and reputation.[9] *See* Fitzgerald Decl. ¶¶ 12; *see also Oxina*, 2016 WL 7626190, at *5-6 (In 2016 approving rates of $605 for partners that had significant experience in litigating consumer class action cases, and noting average rates of between $550 and $747 per hour for partners and $346 and $508 per hour for associates in San Diego).

### 3. Class Counsel's Fee Request is Substantially Less than Its Lodestar, Indicating the Reasonableness of the Request

Although factors such as contingent risk may support applying a multiplier to Class

---

[9] The rates are further reasonable because they reflect additional costs often billed to clients for which Class Counsel does not seek reimbursement, such as photocopying, first class postage, working meals, legal research, and PACER charges. Fitzgerald Decl. ¶ 13.

Counsel's lodestar, Class Counsel does not seek one here, instead requesting fees that are substantially *less* than its lodestar. Accordingly, the $75,587.50 lodestar supports the reasonableness of the $59,060.20 fees requested, as it is just 78 percent of Class Counsel's lodestar, representing a negative multiplier. This also supports a finding of reasonability. *Oxina*, 2016 WL 7626190, at *5 ("Class Counsel's request for fees is reasonable, given that the requested fees are a negative multiplier of Class Counsel's lodestar to date.").

### B. The Requested Fee is Reasonable Considering a Percentage-of-Fund Cross-Check

District courts have the discretion to apply the lodestar method in awarding fees even in common fund cases, where, as here, the lodestar award would be greater than the 25% percent-of-fund benchmark. *In re Ferrero Litig.*, 583 Fed. Appx. 665, 668 (9th Cir. 2014) ("Objectors' argument relies on the incorrect premise that the district court was, or should have been, using a 'percentage of the fund' calculation method, in which fees are typically limited to 25% of the overall value of a settlement fund. . . . However, the district court here had discretion instead to award attorneys' fees using the lodestar method." (citing *Staton*, 327 F.3d at 968)). "District courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case." *McGrath v. Wyndham Resort Dev. Corp.*, 2018 WL 637858, at *9 (S.D. Cal. Jan. 30, 2018) (citing *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017) (collecting cases)); *see also Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66, n.11 (2008) ("[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"). Here, Class Counsel's fee request is 33.7% of the common fund, which is well within the range of reasonableness and supported by the circumstances of this case, especially when considering Class Counsel's lodestar.

First, the injunctive relief obtained by for the Class justifies an increase from the benchmark. *Staton*, 327 F.3d at 974 (injunctive relief should not normally be used to calculate the value of the common fund but "courts should consider the value of the injunctive relief

19

obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees"). The Settlement provides important prospective relief that prohibits Defendant from advertising the product as capable of contouring the body, providing weight-loss, or otherwise resulting in physically better looking abs. SA ¶ 2.2. This is important relief going to the heart of the suit, and thus justifying a modest upward departure from the benchmark, which otherwise does not account for the value this provides to the class. *See In re HP Laser Printer Litig.*, 2011 WL 3861703, at *6 (C.D. Cal. Aug. 31, 2011) ("The injunctive relief accepted by Defendant provides substantial benefit. The Court has considered the disproportion between the monetary value for the class in the form of e-credits and the multimillion dollar fee award and concludes that the fees are justified due to the lodestar calculation and the benefit of the injunctive relief."); *Bennett v. SimplexGrinnell LP*, 2015 WL 12932332, at *6-7 (N.D. Cal. Sept. 3, 2015) ("Although the requested award represents 38.8% of the common fund—on the higher side of the range of approved awards in this circuit—the Court concludes that such an award is warranted in this case" in part because "Plaintiffs obtained substantial prospective relief"); *Linney*, 1997 WL 450064, at *7 ("even if one argues that the injunctive relief provided for in the settlement is worthless, a proposition the Court and the parties sincerely doubt,[] class counsel will receive no more than one-third of the relief obtained for the class" and "Courts in this district have consistently approved attorneys' fees which amount to approximately one-third of the relief procured for the class.").

Second, Class Counsel took on risk in litigating this case on a contingency basis. For example, there was a risk the case would never be certified. Further, there were substantial risks that Plaintiff would not prevail on the merits, or that any jury award would be tempered (or even nominal) given the limitations on what claims survived the motion to dismiss and Defendant's disclaiming language on the website. These risks also justify a modest increase from the 25 percent benchmark. *Bennett*, 2015 WL 12932332, at *6-7 ("the attorneys' fee award should take into account the risk of representing these class action Plaintiffs on a contingency basis over a period of four years.").

Given that the fee request is only 78% of counsel's presumptively-reasonable lodestar, an increase from the benchmark is justified by the efforts expended, the inherent risk of the case, the delay in payment and the injunctive relief obtained. Accordingly, the Court should grant Class Counsel's requested fee of $59,060. *See Torres v. Pick-A-Part Auto Wrecking*, 2018 WL 3570238, at *9 (E.D. Cal. July 23, 2018) (approving fees of 33% where "counsel's requested award is less than the lodestar, even without the application of a multiplier,[] which further supports the reasonableness of the requested fee amount").

In addition, "[c]lass counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case." *Oxina*, 2016 WL 7626190, at *7; *see also* Fed. R. Civ. P. 23(h). Here, Class Counsel requests reimbursement of expenses totaling $939.80. These expenses consist of the case initiation fee of $400, and $539.80 for air travel and accommodation expenses for Class Representative Ms. Loomis relating to the Early Neutral Evaluation. Fitzgerald Decl. ¶ 13.

## IV.    A SERVICE AWARD FOR PLAINTIFF IS REASONABLE

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 958 (9th Cir. 2009). "These awards 'are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *11 (C.D. Cal. May 6, 2014) (citing *Rodriguez*, 563 F.3d 948, 958–59). In class actions, service awards typically range from $5,000 to $10,000, with "[m]any courts in the Ninth Circuit hav[ing] . . . held that a $5,000 incentive award is 'presumptively reasonable.'" *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 906 (C.D. Cal. 2016) (quoting *Hawthorne v. Umpqua Bank*, 2015 WL 1927342, *8 (N.D. Cal. 2015)).

Here, Ms. Loomis requests a service award of $10,000, which is within the normal range and justified by Ms. Loomis' substantial efforts, without which there would be no recovery for the Class, and her fortitude in continuing to prosecute the matter despite the length of time from first contact with counsel until its resolution.

21

In *Van Vranken v. Atl. Richfield Co.,* the Northern District approved a $50,000 award where the named plaintiff participated in the case over many years, consisting of many conference calls and meetings with class counsel, attendance at pre-trial hearings, and was deposed and testified at trial. 901 F. Supp. 294, 299–300 (N.D. Cal. 1995); *see also Austin v. Foodliner, Inc.,* 2019 WL 2077851, at *8 (N.D. Cal. May 10, 2019) (Service award of $10,000 for named plaintiffs reasonable where they were "integral to the initiation and successful prosecution of th[e] lawsuit" and "spent 80 hours working on this case."); *Hickcox-Huffman v. US Airways, Inc.,* 2019 WL 1571877, at *2 (N.D. Cal. Apr. 11, 2019) (Service award "of $10,000.00 is fair and reasonable in light of the amount of personal time devoted to fulfilling her duties as the class representative in this action."); *Alvarez v. Farmers Ins. Exch.,* 2017 WL 2214585, at *1 (N.D. Cal. Jan. 18, 2017) (Finding "$10,000 service award for each of the named Plaintiffs is reasonable and appropriate" where each "submitted a declaration detailing the ways in which he or she assisted Class Counsel in the litigation of this case" and where they "took a significant risk" including "a risk that they may have been liable for Defendant's costs and attorneys' fees."); *In re Walgreen Co. Wage & Hour Litig.,* 2014 WL 12853547, at *12 (C.D. Cal. Oct. 3, 2014) (awarding $9,500 each to two named plaintiffs after finding they "exerted a significant effort to move the lawsuit forward by searching for documents, participating in interviews with their respective counsel, reviewing the Settlement Agreement, responding to discovery requests, and being available to answer questions.").

Here, Ms. Loomis volunteered to serve as a named plaintiff in April 2017, almost four years ago. Loomis Decl. ¶ 2. Since then, she has invested significant personal time, providing critical factual support to the case, and has ever since been involved in its successful prosecution. For example, Ms. Loomis assisted in providing the details and factual support necessary to draft the original CLRA demand letter in May 2017, then stayed in regular contact with counsel, assisting with the drafting of the complaint two years later in 2019, carefully reviewing and, ultimately, approving the filing. *Id*. ¶¶ 3-6. She subsequently reviewed later court filings, assisted with the motion to dismiss, and invested time responding

22

to interrogatories and requests for admission, and searching for documents responsive to Defendants' requests. *Id*. Ms. Loomis also made herself available to assist counsel with other tasks necessary to the litigation. These include personal attendance at the Early Neutral Evaluation, for which she flew into San Diego from her home in Washington State, and did so a day early, so that she could confer with counsel prior to the ENE to strategize. *Id*. Due to that travel, Ms. Loomis missed multiple days of work and was unable to attend an important family function. *Id*. Finally, Ms. Loomis reviewed the Settlement Agreement to ensure it was in the best interest of the Class. *Id*.

In short, Ms. Loomis' substantial efforts as Class Representative render the requested award of $10,000 reasonable. Moreover, the requested award is justified because, as the only named plaintiff, without Ms. Loomis' willingness to volunteer and give assistance in the case, the Class would not have obtained the significant monetary, injunctive, and educational benefits provided by the Settlement that she helped secure. *See Staton*, 327 F.3d at 977 (In determining a reasonable enhancement award, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation"); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (Awarding $25,000 incentive award "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.")

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant final approval to the Settlement and enter judgment as requested. The Court should also award Class Counsel $60,000 in fees and costs, RG/2 $33,769 in actual fees and expenses, and Plaintiff a service award of $10,000.

Dated: January 19, 2021

Respectfully Submitted,

/s/ Jack Fitzgerald
**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 353-0404

***Class Counsel***

24