1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   JANE LOOMIS, on behalf of herself, all        Case No. 19-cv-854-MMA (KSC)
     others similarly situated, and the general
12   public,                                        **ORDER GRANTING MOTION FOR**
                                                    **FINAL APPROVAL OF CLASS**
13                                    Plaintiff,    **SETTLEMENT, ATTORNEYS' FEES**
                                                    **AND COSTS, AND SERVICE**
14   v.                                             **AWARD**

15   SLENDERTONE DISTRIBUTION, INC.,
                                                    [Doc. No. 43]
16                                    Defendant.

17

18

19        Jane Loomis, on behalf of herself, all others similarly situated, and the general

20   public, ("Plaintiff") brings several causes of action against Slendertone Distribution, Inc.

21   ("Defendant"), alleging Defendant's advertising falsely and misleadingly suggests that

22   consumers of Defendant's Flex Belt will gain the health and appearance benefits of

23   traditional exercise.  *See* Doc. No. 1 ("Compl.") ¶¶ 4, 16, 20, 22, 23, 24, 25.  Plaintiff

24   now moves for final approval of the class settlement, attorneys' fees and costs, and a

25   class representative service award.  *See* Doc. No. 43 at 11.[1]  Defendant does not oppose

26

27   ────────────────

28
     [1] All citations refer to the pagination assigned by the CM/ECF system.

                                          1

Plaintiff's motion.  The Court issued a tentative ruling and held a final approval hearing on these matters pursuant to Federal Rule of Civil Procedure 23(e)(2).  *See* Doc. Nos. 46, 47.  For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.[2]

## I. BACKGROUND

This action arises out of the sale of the Flex Belt by Defendant to Plaintiff on or about April 22, 2016.  Compl. ¶ 24.  Plaintiff's allegations center on statements and representations made in Defendant's Flex Belt advertisements.

Defendant markets and sells the Flex Belt, an electrical muscle stimulator ("EMS").  *Id.* ¶ 1.  EMS devices are considered Class II Medical Devices by the Food and Drug Administration ("FDA").  *Id.* The FDA has cleared the Flex Belt as a device that "may be able to temporarily strengthen, tone or firm a muscle."  *Id.* ¶ 3.  However, the FDA has "specifically disapproved such devices to assist with weight loss, contour the body, develop visible 'six-pack' abs, or otherwise to replace traditional exercise."  *Id.* Moreover, the Federal Trade Commission ("FTC") decided that "any claims that such ab devices cause fat loss and inch loss, will give users well-defined abdominal muscles (e.g., 'rock hard,' 'six pack' or 'washboard' abs), or that use of the ab devices is equivalent to conventional abdominal exercises, such as sit-ups or crunches, are false and misleading."  *Id.*

Plaintiff alleges Defendant advertised that the Flex Belt would help consumers achieve the benefits of traditional exercise without traditional exercise.  *Id.* ¶ 2.  Plaintiff claims she relied on Flex Belt's website and Amazon.com listing before purchasing a Flex Belt and, later, replacement gel pads.  *Id.* ¶ 24.  In addition to Defendant's website and Amazon.com listing, Plaintiff claims she also relied on information from Defendant's Facebook advertisements and television commercials.  *Id.* ¶ 24.  Defendant's other advertising initiatives include "celebrity endorsements, paid-advertisement articles, paid

---

[2] Unless otherwise defined in this Order, the capitalized terms herein shall have the same meaning as they have in the Settlement Agreement.

bloggers, social media . . . and third-party retailers." *Id.* ¶ 11.  In sum, Plaintiff alleges Defendant's advertising falsely and misleadingly suggests Flex Belt consumers will gain the health and appearance benefits of traditional exercise.  *See id.* ¶¶ 4, 16, 20, 22, 23, 24, 25.  Based on these allegations, Plaintiff filed this action, alleging five causes of action under California law: (1) violations of the Unfair Competition Law ("UCL"); (2) violations of the False Advertising Law ("FAL"); (3) violations of the Consumer Legal Remedies Act ("CLRA"); (4) breach of express warranty; and (5) breach of the implied warranty of merchantability.  *See id.* ¶¶ 45–85.

On August 31, 2020, Plaintiff filed a notice of settlement.  *See* Doc. No. 36.  On September 30, 2020, Plaintiff filed a motion for preliminary approval of class settlement, which Defendant joined.  *See* Doc. Nos. 39, 40.  On December 1, 2020, the Court granted the motion for preliminary approval and set a final approval hearing on the proposed settlement and related matters for March 8, 2021 at 2:30 P.M.  *See* Doc. No. 42.

On January 19, 2021, Plaintiff filed the instant motion for final approval of the class settlement, attorneys' fees and costs, and a class representative service award.  *See* Doc. No. 43.  Defendant has not opposed or otherwise responded to Plaintiff's motions, nor have any objections been filed to the proposed settlement.  On March 8, 2021, the Court held a final approval hearing on these matters.  *See* Doc. No. 47.

## II. OVERVIEW OF THE SETTLEMENT

### A. Settlement Class

The Settlement Class is defined as a Class of all persons in the United States who purchased during the Class Period, for personal or household use, the Slendertone EMS device known as the Flex Belt.  The Class Period runs from May 7, 2015 to December 1,

2020, the date of preliminary approval.  Doc. No. 43 at 13 (citing Fitzgerald Decl., Ex. 1, Doc. No. 39-1 at 3 (§§ 1.3–1.4)).[3]  The following are excluded from the class:

> (a) persons or entities who purchased the Flex Belt for the purpose of resale or distribution; (b) persons who are directors and Officers of Slendertone or its parent, subsidiary, or affiliate companies; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in the Agreement; and (e) persons who signed a release of Slendertone for compensation for the claims arising out of the facts or claims asserted in the Action; and (f) and any judge to whom this matter is assigned, and his or her immediate family (spouse, domestic partner, or children).

Settlement Agreement at 3 (§ 1.3).

**B. Settlement Terms**

The Settlement involves two main components: changed advertising and monetary relief.  *See* Doc. No. 43 at 13; *see also* Doc. No. 39 at 11–13; Settlement Agreement at 5–6 (§ 2).  Defendant has changed its advertising to omit several statements identified in the Court's order grating in part and denying in part Defendant's motion to dismiss.  *See* Doc. No. 43 at 13 (citing Settlement Agreement at 5 (§ 2.2)) (referring to the Court's order at Doc. No. 17).  These statements include the following: "For those looking for a convenient way to tone, strengthen and flatten the abdominal area;" and "Who Should Use the Flex Belt®? . . . Anyone that wants more attractive abs, regardless of current fitness levels."  *See id.* (citing Settlement Agreement at 5 (§ 2.2)).  As to the monetary relief, Defendant has created a "non-reversionary $175,000 common fund to pay Class Member claims and all Settlement expenses, namely notice and administration; fees, costs, and a service award; and Class Member claims."  *Id.* (citing Settlement Agreement

---

[3] The parties' signed Class Action Settlement Agreement is attached to Plaintiff's motion for preliminary approval of class settlement.  *See* Fitzgerald Decl., Ex. 1, Doc. No. 39-2 at 2–12 ("Settlement Agreement").

at 5–6 (§ 2.3)).  Class Members with validated claims "will be reimbursed on an equal, pro-rata basis for each Class Product purchased, with proof of purchase required to receive reimbursement for more than one unit."  Settlement Agreement at 6 (§ 2.3).

The Common Fund will pay the class notice and administration costs.  Doc. No. 39 at 12 (citing Settlement Agreement at 6 (§ 2.3).  The parties selected "RG/2 Claims Administration, LLC ('RG2') as the Claim Administrator."  *Id.* (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 10).  RG2 estimated the cost for Notice and Administration to be $62,722 but agreed to cap the amount that will be paid from the Common Fund to $60,000.  *Id.* (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 10).  The parties agreed that excess costs will be reimbursed through the following means: (1) payment through uncashed and voided checks and (2) Defendant contributing an additional amount up to $3,000.  *Id.* (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 10).  However, if RG2 is compensated and there are remaining funds, then the remainder "will be distributed to a *cy pres* recipient approved by the Court."  *Id.* (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 10).  Ultimately, RG2's expenses for notice, administration, and distribution services totaled $33,769. Doc. No. 43 at 14 (citing Boub Decl., Doc. No. 43-2 ¶ 10); Flynn Decl., Doc. No. 45 ¶ 3.

In addition to the Settlement's main components and the notice and administrative provisions, the Settlement allows Class Counsel to request from the Court attorneys' fees and costs as well as allows Plaintiff to request an incentive award.  *See* Doc. No. 43 at 14; *see also* Settlement Agreement at 6 (§ 2.4).  Specifically, Class Counsel requests $59,060.20 in attorneys' fees and $939.80 in costs, and Plaintiff requests "$10,000 for her work as the Class Representative."  *Id.*

### III. FINAL APPROVAL OF CLASS SETTLEMENT

**A. Legal Standard**

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

1   parties, and that the settlement, taken as a whole, is fair, reasonable and

2   adequate to all concerned.

3

4   *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615,

5   625 (9th Cir. 1982).

6       A court considers several factors in determining whether a Settlement Agreement

7   is "fair, reasonable, and adequate" under Rule 23(e).  The Rule provides that a court

8   should consider whether  (1) "the class representatives and class counsel have adequately

9   represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief

10  provided for the class is adequate," taking into consideration the risks associated with

11  continued litigation, the effectiveness of distributing the proposed relief to the class, the

12  terms of any proposed attorneys' fees, and the underlying settlement agreement; and (4)

13  "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P.

14  23(e)(2).  The Ninth Circuit has identified additional factors, including: (1) the strength

15  of the case; (2) "the risk, expense, complexity, and likely duration of further litigation";

16  (3) "the risk of maintaining class action status throughout the trial"; (4) the settlement

17  amount; (5) the stage of the proceedings; (6) "the experience and views of counsel"; (7)

18  whether there is a "governmental participant"; and (8) "the reaction of the class members

19  to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)

20  (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled in part on other*

21  *grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010)); *see also In re*

22  *Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (first citing

23  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); and then citing

24  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

25      Judicial policy favors settlement in class actions and other complex litigation

26  where substantial resources can be conserved by avoiding the time, cost, and rigors of

27  formal litigation.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

28  1992).

**B. Discussion**

The Court proceeds by addressing Rule 23(e)(2)'s "fair, reasonable, and adequate" factors and the related factors noted by the Ninth Circuit.[4]

### 1. Adequate Representation

Rule 23(e)(2) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Relatedly, the Court also considers the experience and views of counsel. *See Staton*, 327 F.3d at 959 (quoting *Molski*, 318 F.3d at 953). "'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'" *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted) (first quoting *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.); and then quoting *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Class Counsel's primary practice area is class actions and have experience in litigating misleading advertising cases. *See* Fitzgerald Decl., Doc. No. 39-1 ¶ 18; *see also* Fitzgerald Decl., Exh. 4, Doc. No. 39-5 at 2–6. Class Counsel represent that they have reviewed the discovery, Flex Belt sales during the class period, and Defendant's financial position. *See* Doc. No. 43 at 22; Doc. No. 39 at 23. Class Counsel claim that claimants' refund in the Settlement is "a fair, reasonable, and adequate result" given the circumstances of the case. Doc. No. 39 at 23 (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 17); *see also infra* Sections III.B.3.i, III.B.3.iv.

Class Counsel do not stand to recover an unreasonable proportion of the Common Fund in relation to claimants' recovery of about 144% of the average Flex Belt purchase

---

[4] Because of the overlap between the Rule 23(e)(2)'s factors and the Ninth Circuit's additional factors, the Court folds the Ninth Circuit's factors into its analysis of Rule 23(e)(2).

price of $158.  *See* Doc. No. 43 at 18–19 (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 16).

Relatedly, the Settlement Agreement is not contingent upon the Court granting the

attorneys' fees and costs request or the incentive award request.  *See* Settlement

Agreement at 6 (§ 2.4).  Class Counsel are not entitled to the remaining balance from the

Common Fund.  *See* Settlement Agreement at 5–6 (§ 2.3).  Class Counsel demonstrate

that they have adequately represented the class.  *See In re Bluetooth Headset Prod. Liab.*

*Litig.*, 654 F.3d at 947 (noting situations where counsel pursue their own self-interest

ahead of the class's interest).

Additionally, Class Counsel note that the COVID-19 pandemic has impacted

Defendant's sales and, thus, there is a "risk that it would have no ability to satisfy a

judgment even if the claims were pursued through trial."  Doc. No. 43 at 22; *see also*

Doc. No. 39 at 10; Fitzgerald Decl., Doc. No. 39-1 ¶ 7.

Accordingly, the Court finds that adequate representation and the experience and

views of counsel favor approval of the Settlement Agreement.

**2. Arm's Length Negotiation**

Rule 23(e)(2) requires the Court to consider whether "the proposal was negotiated

at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Courts must ensure settlements are not the

product of collusion or other conflicts of interest.  *See In re Bluetooth Headset Prod.*

*Liab. Litig.*, 654 F.3d at 947; *Staton*, 327 F.3d at 960.  "A settlement following sufficient

discovery and genuine arms-length negotiation is presumed fair."  *Nat'l Rural*

*Telecommunications Coop.*, 221 F.R.D. at 528.  The Ninth Circuit has outlined several

circumstances that may indicate collusion:

> (1) "when counsel receive a disproportionate distribution of the settlement,
> or when the class receives no monetary distribution but class counsel are
> amply rewarded"; (2) "when the parties negotiate a 'clear sailing'
> arrangement providing for the payment of attorneys' fees separate and apart
> from class funds"; and (3) "when the parties arrange for fees not awarded to
> revert to defendants rather than be added to the class fund."

*Ferrell v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-LJO-SAB, 2020 WL 291042, at *20 (E.D. Cal. Jan. 21, 2020), *report and recommendation adopted*, 2020 WL 4364647 (E.D. Cal. July 30, 2020) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 569 (9th Cir. 2019) (noting these same "typical" collusive signs).

The parties reached this Settlement more than a year after Plaintiff filed her Complaint. *See* Doc. Nos. 1, 36. The Settlement also occurred after the Court ruled on Defendant's motion to dismiss and after the parties engaged in discovery, attended an Early Neutral Evaluation conference, and held settlement negotiations from June to mid-July 2020. *See* Doc. No. 39 at 20. Additionally, as noted above, Class Counsel do not stand to recover an unreasonable proportion of the Common Fund even if the Court grants their motion for attorneys' fees and costs in full. *See supra* Section III.B.1; *see also* Doc. No. 43 at 18–19 (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 16). The Settlement Agreement does not become unenforceable if the Court denies Plaintiff's attorneys' fees and costs request or the inventive award request. *See supra* Section III.B.1; *see also* Settlement Agreement at 6 (§ 2.4). The remaining balance of the Common Fund—after deducting notice and administration fees, attorneys' fees, costs, and incentive award—is paid to Class Members who submit a valid claim. *See supra* Section III.B.1; *see also* Settlement Agreement at 5–6 (§ 2.3). Accordingly, the Court finds that the arm's length negotiations favor approval of the Settlement Agreement.

### 3. Adequate Relief

Rule 23(e)(2) requires the Court to consider whether "the relief provided for the class is adequate" after assessing several factors, such as the risks associated with continued litigation, the effectiveness of proposed relief to the class, the terms of any proposed attorneys' fees, and the underlying settlement agreement. Fed. R. Civ. P. 23(e)(2)(C). To determine whether the relief is adequate and in assessing the other underlying subfactors, "the Court must balance the continuing risks of litigation (including the strengths and weaknesses of Plaintiffs' case), with the benefits afforded to

members of the Class, and the immediacy and certainty of a substantial recovery." *Baker v. SeaWorld Entm't, Inc.*, No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *6 (S.D. Cal. July 24, 2020).  In particular,

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526 (quoting *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974)).

The Court proceeds by assessing whether the Settlement's offered relief is adequate through assessing Rule 23(e)(2)(C)'s subfactors.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

### i. Risks of Continued Litigation

"In determining whether to approve a Settlement Agreement, the Court should also consider the expense, complexity and likely duration of further litigation or delay of trial and appeal." *Baker*, 2020 WL 4260712, at *7 (citing Fed. R. Civ. P 23(e)(2)(C)(i)).  "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) (quoting *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014)).

In ruling on Defendant's motion to dismiss, the Court found, in part, that Plaintiff plausibly pleaded that a reasonable person would be deceived under the UCL, FAL, and CLRA.  *See* Doc. No. 17 at 44.  Plaintiff notes that a jury may find that her allegations are undercut by disclaiming language on the advertisements.  *See* Doc. No. 43 at 16–17; *see also* Doc. No. 17 at 42–44 (noting the disclaiming language).  Thus, the facts of the case make the ultimate result uncertain and would make further litigation more costly.

Plaintiff argues that the measure of damages adds a further layer of complexity because the damages model would require an expert to untangle potential misleading and disclaiming language, drive up costs, and meet a strong defense by opposing counsel and its experts. *See id.* at 17. Additionally, without this Settlement, the parties would face pre-trial class certification and summary judgment motion practice. Plaintiff represents that discovery has provided sufficient information to make an informed decision to pursue settlement. *See id.* at 18. This information includes class information, scientific background behind the Flex Belt, consumer reactions to the Flex Belt, Defendant's communications with regulatory agencies, and Defendant's financial condition. *Id.* Accordingly, the Court finds that the strength of the case; the costs, risks, complexity, and delay of trial and appeal; the stage of the proceedings; and the risk of maintaining class action status throughout the trial favor approval of the Settlement Agreement.

### ii. Effectiveness of Proposed Relief Distribution

In determining the effectiveness of distributing the proposed relief to the class and the processing of class claims, the Court should "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

Here, the parties contracted with RG/2 to create an online claims portal; publish the Settlement Notice; create a media plan; process claims, opt out letters, and objections; correspond with claimants; pay claimants from the Settlement; handle tax reporting; and communicate with counsel. Boub Decl., Doc. No. 43-2 ¶ 3. Class Members were required to submit claims through an online claims portal. *See id.* ¶ 8. As of March 1, 2021, 304 claims were verified as valid. *See* Flynn Decl., Doc. No. 45 ¶ 3; *see also* Doc. No. 43 at 12 n.1 (citing Boub Decl., Doc. No. 43-2 ¶¶ 5, 8–9). Claims were required to be submitted online with a proof of purchase. *See* Wickersham Decl., Doc. No. 39-6 ¶ 25. Although this could be viewed as burdensome, this requirement is properly tailored

to how Class Members purchased the Flex Belt.  Because "all" Class Member purchased Flex Belts online and received a confirmation e-mail or electronic receipt, *id.*, the Court does not find the claim submission process unduly burdensome.  Additionally, any subjective burden by a Class Member would be sufficiently mitigated by the toll-free helpline and settlement website to provide assistance.  *See id.* ¶¶ 20–22.  Accordingly, the effectiveness of the proposed method of distributing relief to the Class favors approval of the Settlement Agreement.

### iii. Terms of Proposed Attorneys' Fees

In assessing whether the relief for a class is adequate, "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."  Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. "Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards.  Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award."  *Id.*

Here, the Settlement Agreement contains an attorneys' fees provision.  *See* Settlement Agreement at 6 (§ 2.4).  The provision permits Class Counsel to apply for an attorneys' fees award, which would be paid from the Common Fund.  *See id.*  The provision notes that the Parties have not agreed to an amount that may be requested and Defendant may respond to Class Counsel's request.  *See id.*  If the Court's order provides an amount less than the Class Counsel's requested amount, "this shall not be a basis for rendering the entire Settlement null, void or unenforceable."  *Id.*  In Plaintiff's instant motion, Class Counsel request an attorneys' fees award of $59,060.20 to be paid from the $175,000 Common Fund.  *See* Doc. No. 43 at 14, 25, 29; Settlement Agreement at 5–6 (§§ 2.3–2.4).  The requested attorneys' fees amount to about 34% of the Common Fund, but Class Counsel highlight that the requested amount is "78 percent of the presumptively-reasonable lodestar (or a negative, -0.22 multiplier)."  *See* Doc. No. 43 at 25 (emphasis omitted).

This subfactor considers the "terms" of attorneys' fees.  *See* Fed. R. Civ. P. 23(e)(C)(iii).  Class Counsel's entitlement to such award is ultimately contingent upon the corresponding motion for attorneys' fees and costs, and there is no evidence of collusion or self-interest in the Agreement's formation or ultimate terms.  *See supra* Section III.B.2.  Accordingly, the terms of any proposed award of attorneys' fees favor approval of the Settlement Agreement.

### iv. Underlying Settlement Agreement

"It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Rodriguez v. Bumble Bee Foods, LLC*, No. 17-cv-2447-MMA (WVG), 2018 WL 1920256, at *4 (S.D. Cal. Apr. 24, 2018) (brackets omitted) (quoting *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 527).  That is because a settlement "embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).  Further, the Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered.  *See Mandujano v. Basic Vegetable Prod., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976) (first citing *Bryan v. Pittsburgh Plate Glass Co. (PPG Indus.)*, 494 F.2d 799, 803 (3d Cir. 1974); and then citing *Amalgamated Meat Cutters & Butcher Workmen of N. Am., Local 340 v. Safeway Stores, Inc.*, No. W-3915, 1972 WL 141, at *1 (D. Kan. Feb. 4, 1972)).  The absence of a large number objectors supports the fairness, reasonableness, and adequacy of the settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" that 84% of the class filed no opposition).

Here, the Settlement Agreement provides for a $175,000 Common Fund for a class of about 20,000 members.  *See* Doc. No. 43 at 18.  Assuming the Court awards $60,000 in attorney fees, a $10,000 service award, and notice and administration costs of $33,769,

"there will be $71,231 left in the Common Fund to divide among claimants." *Id.*; *see also* Flynn Decl., Doc. No. 45 ¶ 3.  As of March 1, 2021, 304 claims were verified as valid.  *See* Flynn Decl., Doc. No. 45 ¶ 3; *see also* Doc. No. 43 at 12 n.1 (citing Boub Decl., Doc. No. 43-2 ¶¶ 5, 8–9).  There have been no objections and only one opt-out. *See* Doc. No. 43 at 12; *see also* Boub Decl., Doc. No. 43-2 ¶ 6.  Plaintiff represents that claims rate of 1.6% is similar to other class actions.  *See* Doc. No. 43 at 18; *see also Rael v. Children's Place, Inc.*, No. 3:16-cv-00370-GPC-LL, 2020 WL 434482, at *9 (S.D. Cal. Jan. 28, 2020) ("[C]onsumer class actions tend to result in claims rates in the low single digits.").  This recovery rate would yield about $234.31 per claimant, which is a recovery of more than 144% of the average purchase price of $158.  *See* Flynn Decl., Doc. No. 45 ¶ 3; Doc. No. 43 at 18–19 (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 16).  Plaintiff argues that this Settlement Amount is more favorable than a potential recovery at trial.  *See* Doc. No. 43 at 20.  Additionally, the Settlement Agreement requires Defendant to change its advertising to omit several plausibly misleading statements, and Defendant has complied with the condition.  *See id.* at 13 (citing Settlement Agreement at 5 (§ 2.2)).  Accordingly, the Court finds that the underlying Settlement Agreement, Settlement amount, and reaction of class members to the Settlement favor approval of the Settlement Agreement.

### v. Conclusion

Therefore, the Court finds that the relief provided for the class is adequate and favors approval of the Settlement Agreement.

### 4. Equitable Treatment of Class Members

Rule 23(e)(2) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  In assessing this factor, courts determine whether the settlement unreasonably gives

preferential treatment to the class representatives or other class members.  *See Ferrell v. Buckingham Prop. Mgmt.*, 2020 WL 291042, at *23 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, Class Members with validated claims "will be reimbursed on an equal, pro-rata basis for each Class Product purchased."  Settlement Agreement at 6 (§ 2.3).  Additionally, the Agreement allows Plaintiff to apply for an incentive award from the Court.  *See id.* at 6 (§ 2.4).  Similar to the attorney's fees provision, the Agreement notes that the Parties have not agreed to an amount that may be requested and Defendant may respond to Plaintiff's request.  *See id.*  If the Court's orders for an amount less than the amount Plaintiff requests, "this shall not be a basis for rendering the entire Settlement null, void or unenforceable."  *Id.*  In Plaintiff's instant motion, she requests an incentive award of $10,000 to be paid from the Common Fund.  *See* Doc. No. 43 at 14, 18, 31; Settlement Agreement at 5–6 (§§ 2.3–2.4).  The requested incentive award amounts to about 6% of the Common Fund.

The equal and pro rata reimbursement to validated class members is fair, reasonable, and adequate in light of the underlying false or misleading advertising allegations and the lack of facts indicating certain Class Members suffered a disproportionate injury compared to others.  Similar to the attorneys' fees request, Plaintiff's incentive award is ultimately contingent upon the corresponding request for the award.  Accordingly, the general equitable treatment of class members favors approval of the Settlement Agreement.

## C. Conclusion

Upon due consideration of the factors set forth above, the Court finds that the Settlement is "fair, reasonable, and adequate" under Rule 23(e)(2) and, therefore, **GRANTS** Plaintiff's motion for final approval of the Class Settlement.

## IV. ATTORNEYS' FEES AND COSTS

## A. Attorneys' Fees

### 1. Legal Standard

1    Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified
2    class action, the court may award reasonable attorney's fees and nontaxable costs that are
3    authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  This action
4    asserts California claims, and thus the Court applies California law to determine both the
5    right to, and method for, calculating fees.  *See Mangold v. California Pub. Utilities*
6    *Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

7    "[F]ee shifting" refers to an award under which a party that did not prevail in the
8    litigation is ordered to pay fees incurred by the prevailing party.  *Lealao v. Beneficial*
9    *California, Inc.*, 97 Cal. Rptr. 2d 797, 803 (Ct. App. 2000).  California Law permits fee
10   shifting in favor of the prevailing party on certain statutory causes of action, and when a
11   plaintiff has acted as a private attorney general by enforcing an important right affecting
12   the public interest—for example, Cal. Civ. Proc. Code § 1021.5.  *Laffitte v. Robert Half*
13   *Internat. Inc.*, 376 P.3d 672, 676 (Cal. 2016).  In cases involving fee-shifting statutes, the
14   primary method for establishing the reasonable attorney fees is the lodestar method.  *See*
15   *Staton*, 327 F.3d at 965 (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149
16   n.4 (9th Cir. 2001)).  The Supreme Court has affirmed the primacy of the lodestar method
17   to compute fees in cases in which a fee-shifting statute applies.  *See Perdue v. Kenny A.*
18   *ex rel. Winn*, 559 U.S. 542, 551 (2010) (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789,
19   801 (2002)) ("[T]he 'lodestar' figure has, as its name suggests, become the guiding light
20   of our fee-shifting jurisprudence.").  California courts routinely exercise their discretion
21   to calculate attorneys' fees by applying the lodestar method where the settlement does not
22   use common-fund principles.  *See Lealao*, 97 Cal. Rptr. 2d at 803 ("In so-called 'fee
23   shifting' cases, in which the responsibility to pay attorney fees is statutorily or otherwise
24   transferred from the prevailing plaintiff or class to the defendant, the primary method for
25   establishing the amount of 'reasonable' attorney fees is the lodestar method.").

26   However, in cases involving "fee spreading," the class counsel's fees come from
27   the common fund.  *See Staton*, 327 F.3d at 967; *Lealao*, 97 Cal. Rptr. 2d at 803.  The
28   court has discretion to apply the loadstar method or percentage-of-the-fund method to

award attorneys' fees. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942 (citing *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010)); *Staton*, 327 F.3d at 967; *Lealao*, 97 Cal. Rptr. 2d at 804.  In selecting the calculation method, the court must exercise its discretion to achieve a reasonable result.  *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942.  "The two approaches to determining a fee contrast in their primary foci: 'The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved.'"  *Laffitte*, 376 P.3d at 677 (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

The lodestar method multiplies the number of hours reasonably expended by a reasonable hourly rate with the court increasing or decreasing that amount by applying a positive or negative multiplier based on, among other factors: (1) the quality of representation, (2) the novelty and complexity of the issues, (3) the results obtained, and (4) the contingent risk presented.  *Consumer Privacy Cases*, 96 Cal. Rptr. 3d 127, 136 (Ct. App. 2009).  The ultimate inquiry is whether the end result is reasonable.  *See Apple Computer, Inc. v. Superior Court*, 24 Cal. Rptr. 3d 818, 826 (Ct. App. 2005).

### 2. Discussion

Class Counsel seek attorneys' fees pursuant to the CLRA in the aggregate amount of $59,060.20, which is 33.75% of the $175,000 Common Fund.  *See* Doc. No. 43 at 23 (citing Cal. Civ. Code § 1780(e)); *see also id.* at 14, 25, 29, 31.  The Court adopts the loadstar method because Plaintiff has opted to request a negative multiplier of the loadstar and "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."  *Chavez v. Netflix, Inc.*, 75 Cal. Rptr. 3d 413, 433 n.11 (Ct. App. 2008) (quoting *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000)).  Additionally, the lodestar method is reasonable in this case because Plaintiff alleges violations of the CLRA, which contains a mandatory fee-shifting provision requiring that attorneys' fees be awarded to a "prevailing plaintiff."  Cal. Civ. Code § 1780(e).  Further,

consideration of the relevant factors outlined below indicates the reasonableness of the fees.

### a. Lodestar Calculation

Although Class Counsel argues it is entitled to a reasonable lodestar of $75,587.50, they request $59,060.20.  *See* Doc. No. 43 at 25.  As the following table indicates, Class Counsel expended 129.6 hours on this action.  Counsel's hourly rates range from $750 to $575 per hour, with an average hourly rate of $662.50.

| Name | Hours | Hourly Rate | Total |
| --- | --- | --- | --- |
| Jack Fitzgerald | 6.1 | $750 | $4,575.00 |
| Trevor Flynn | 123.5 | $575 | $71,012.50 |
| **Total** | **129.6** | **~$662.50** | **$75,587.50** |

The Court first considers whether Class Counsel's hourly rates are reasonable. A reasonable hourly rate is typically based upon the prevailing market rate in the community for "similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  Mr. Fitzgerald and Mr. Flynn have experience in litigating consumer class action cases.  *See* Doc. No. 39-5 at 2–6 (providing the "firm resume" of The Law Office of Jack Fitzgerald, PC).  To show the reasonableness of their fees, Class Counsel point to other previous actions in this district where their fees have been approved.  *See* Doc. No. 43 at 28 (first citing *Hunter v. Nature's Way Prod., LCC*, No. 3:16-cv-532-WQH-AGS, 2020 WL 71160, at *7 (S.D. Cal. Jan. 6, 2020); and then citing Fitzgerald Decl., Doc. No. 43-1 ¶¶ 9–11); *see also* Doc. No. 39-5 at 2–6.  In *Hunter*, the court found Mr. Fitzgerald's hourly rate of $750 and Mr. Flynn's hourly rate of $575 to be reasonable.  *See* 2020 WL 71160, at *7. Several years ago in 2018, this Court found Mr. Fitzgerald's hourly rate of $665 and Mr.

Flynn's hourly rate of $515 to be reasonable. *See Rodriguez*, 2018 WL 1920256, at *7 (finding that their sought hourly rates of $715 and $550, respectively, had not yet been approved). Additionally, Class Counsel request attorneys' fees less than Class Counsel's lodestar. *See* Doc. No. 43 at 28–29; *see also Oxina v. Lands' End, Inc.*, No. 14-cv-2577-MMA (NLS), 2016 WL 7626190, at *5 (S.D. Cal. Dec. 2, 2016) ("Class Counsel's request for fees is reasonable, given that the requested fees are a negative multiplier of Class Counsel's lodestar to date."). Thus, the Court finds Mr. Fitzgerald's hourly rate of $750 and Mr. Flynn's hourly rate of $575 are reasonable.

The Court next considers whether the firms' expenditure of 129.6 hours on this case is reasonable. Although counsel did not provide the Court with detailed time sheets, such detailed time sheets are not necessary. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."). Class Counsel provided a chart showing the total hours on each major task in the action. *See* Doc. No. 43 at 27; Fitzgerald Decl., Doc. No. 43-1 ¶ 6. Prior to calculating these hours, Class Counsel reviewed the hours for errors, removed time performed by other attorneys who spend minimal time on the action, and removed time performed by staff. *See* Fitzgerald Decl., Doc. No. 43-1 ¶ 5 ("[T]he number of hours used to calculate the lodestar is lower than the number of hours my office actually expended in litigating this matter."). Thus, the Court finds that the Mr. Fitzgerald's and Mr. Flynn's expended hours are reasonable.

### b. Reasonableness Factors

As noted above, the Court may consider several factors to increase or decrease the loadstar. *See Consumer Privacy Cases*, 96 Cal. Rptr. 3d at 136. These hours include (1) the quality of representation, (2) the novelty and complexity of the issues, (3) the results obtained, and (4) the contingent risk presented. *See id.*

### i. Quality of Representation

Litigating this action required significant time, investigation, and research by Class Counsel. *See* Fitzgerald Decl., Doc. No. 43-1 ¶ 5. It also involved time consuming motion practice surrounding Defendant's motion to dismiss and settlement negotiations. *See* Doc. Nos. 8, 13, 15, 17. Moreover, the Settlement awards Class claimants more than 144% of the average Flex Belt purchase price and Defendant has removed plausibly misleading statements from its website. *See* Doc. No. 43 at 18–19 (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 16); Flynn Decl., Doc. No. 45 ¶ 3; Settlement Agreement at 5–6 (§§ 2.2–2.3). Thus, this factor favors approval of the requested attorneys' fees.

### ii. Novelty and Complexity of the Issues

Class Counsel spent at least 129.6 hours working on this action, which included opposing a time-consuming motion to dismiss, which raised arguments about jurisdiction, claim sufficiency, preemption, and standing. *See* Doc. No. 8. Counsel also negotiated the Settlement that includes injunctive and monetary relief. *See* Doc. No. 43 at 18–19 (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 16); Settlement Agreement at 5–6 (§§ 2.2–2.3). Thus, this factor favors approval of the requested attorneys' fees.

### iii. Results Obtained

Class Counsel helped secure a highly favorable outcome because the Settlement awards Class claimants more than the price of the Flex Belt and Defendant has removed plausibly misleading statements from its website. *See* Doc. No. 43 at 18–19 (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 16); Settlement Agreement at 5–6 (§§ 2.2–2.3). Thus, this factor favors approval of the requested attorneys' fees.

### iv. Contingent Nature of the Case

Class Counsel litigated this case on a contingency basis. *See* Doc. No. 43 at 30. They argue that there was a risk that the case would not be certified, Plaintiff would not prevail on the merits, or a potential jury award would be limited based on the claims that survived the motion to dismiss. *Id.* Thus, this factor favors approval of the requested attorneys' fees. *See Oxina*, 2016 WL 7626190, at *7.

### c. Conclusion

1  Rather than seek the full amount or a positive multiplier of the loadstar, Class

2  Counsel request a negative multiplier of their loadstar amount.  Mr. Fitzgerald's and Mr.

3  Flynn's hourly rates and hours are reasonable and the reasonableness factors weigh in

4  favor of their requested fees.  Accordingly, the Court finds the requested fees are

5  reasonable and **APPROVES** Class Counsel's request for $59,060.20 in attorneys' fees.

6  **B. Costs**

7  ### 1. Legal Standard

8  Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified

9  class action, the court may award reasonable attorney's fees and nontaxable costs that are

10  authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Counsel are

11  entitled to reimbursement of the out-of-pocket costs they reasonably incurred

12  investigating and prosecuting the case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F.

13  Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375,

14  391–92 (1970)); *see also Staton*, 327 F.3d at 974.

15  ### 2. Discussion

16  Class Counsel requests costs totaling $939.80, which "consist of the case initiation

17  fee of $400, and $539.80 for air travel and accommodation expenses for Class

18  Representative Ms. Loomis relating to the Early Neutral Evaluation."  Doc. No. 43 at 31

19  (citing Fitzgerald Decl., Doc. No. 43-1 ¶ 13).  Accordingly, because Class Counsel's out-

20  of-pocket costs were reasonably incurred in litigating this action and were advanced by

21  Counsel for the benefit of the Class, the Court **APPROVES** reimbursement of litigation

22  costs in the amount of $939.80.  *See Fontes v. Heritage Operating, L.P.*, No. 14-cv-1413-

23  MMA (NLS), 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016).

24  ### V. CLASS REPRESENTATIVE SERVICE AWARD

25  **A. Legal Standard**

26  "Incentive awards are payments to class representatives for their service to the

27  class in bringing the lawsuit."  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163

28  (9th Cir. 2013).  "Such awards are discretionary."  *Rodriguez v. W. Publ'g Corp.*

(*Rodriguez I*), 563 F.3d 948, 958 (9th Cir. 2009). The Ninth Circuit has instructed district courts to "to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *See Radcliffe*, 715 F.3d at 1163. Incentive awards that are disproportionate to the class's recovery risk a conflict of interest between a class representative's interests and the class's interests. *See id.* (quoting *Rodriquez I*, 563 F.3d at 959). This is especially relevant where retainer agreements require class counsel to request an incentive award or where the settlement agreement conditions the award on the class representatives' approval of the settlement. *See id.* at 1163–64. "Where . . . the class representatives face significantly different financial incentives than the rest of the class because of the conditional incentive awards that are built into the structure of the settlement, we cannot say that the representatives are adequate." *Id.* at 1165. Additionally, in evaluating the reasonableness of incentive awards,

> [t]he district court must evaluate their awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."

*Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Further, "class members can certainly be repaid from any cost allotment for their substantiated litigation expenses." *Id.* Taken together, courts examine the following factors when scrutinizing incentive awards on an individual basis in class action settlements: (1) conflicts of interest between the class representative and the class in assessing the terms or disparity of an award, (2) actions taken by the class representative to protect the class's interest, (3) the benefit received by the class based on the class representative's actions, (4) the time and effort expended by the class representative, and (5) the class representative's reasonable fears of workplace retaliation.

**B. Discussion**

Plaintiff requests a service award of $10,000.  *See* Doc. No. 43 at 31.  Plaintiff volunteered to serve as a named plaintiff "almost four years ago" in April 2017.  *Id.* at 32 (citing Loomis Decl., Doc. No. 43-4 ¶ 2).  Plaintiff argues that she invested significant personal time in this action.  *See id.*  For example, she provided the factual details to draft the CLRA demand letter in May 2017; stayed in regular contact with counsel; assisted in drafting, reviewing, and approving the Complaint in 2019; reviewed subsequent court filings; assisted with the motion to dismiss; responded to interrogatories, requests for admission, and Defendant's document requests.  *Id.* 32–33 (citing Loomis Decl., Doc. No. 43-4 ¶ 6.).  Plaintiff also flew from her home in Washington to attend the Early Neutral Evaluation conference in San Diego.  *Id.* at 33 (citing Loomis Decl., Doc. No. 43-4 ¶ 6).  To prepare for the conference, Plaintiff flew to San Diego a day early to "confer and strategize" with counsel, which caused her to miss several days of work and an important family event.  *Id.* (citing Loomis Decl., Doc. No. 43-4 ¶ 6).  Finally, she "reviewed the Settlement Agreement to ensure it was in the best interest of the Class."  *Id.* (citing Loomis Decl., Doc. No. 43-4 ¶ 6).  Plaintiff asserts that the $10,000 award is reasonable and the monetary and injunctive relief promised by the Settlement would not have been secured without her.  *See id.* at 33.

Plaintiff cites district court case law for the proposition that "[m]any courts in the Ninth Circuit hav[ing] . . . held that a $5,000 incentive award is 'presumptively reasonable.'"  Doc. No. 43 at 31 (quoting *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 906 (C.D. Cal. 2016), *aff'd in part, vacated and remanded in part*, 980 F.3d 645 (9th Cir. 2020)).  However, any perceived "presumptive reasonability" of an award amount does not excuse the Court from its duty under Ninth Circuit precedent to carefully scrutinize proposed incentive awards on an individual basis.  *See Radcliffe*, 715 F.3d at 1163; *Staton*, 327 F.3d at 977 (quoting *Cook*, 142 F.3d at 1016).

Plaintiff's incentive award of $10,000 would be paid from the $175,000 Common Fund.  *See* Settlement Agreement at 5–6 (§§ 2.3–2.4).  Based on the submitted claims, the recovery rate would yield about $234.31 per claimant, which is a recovery of more than

144% of the average purchase price of $158.  *See* Flynn Decl., Doc. No. 45 ¶ 3; Doc. No. 43 at 18–19 (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 16); *see also id.* at 12 n.1 (citing Boub Decl., Doc. No. 43-2 ¶¶ 5, 8–9).  The monetary recovery for each Class claimant amounts to about 0.13% of the Common Fund.  As the sole named plaintiff, Plaintiff's role in securing the advertising changes and monetary relief in the Settlement was important.  As she details in her declaration, she provided important context necessary to bring this suit and sustain it through settlement.  *See* Loomis Decl., Doc. No. 43-4 ¶¶ 3–6.

The Court finds that $10,000 pushes the limit of an acceptable incentive award under the facts of this action when comparing Plaintiff's incentive award with the amount recoverable by each Class claimant.  However, Plaintiff helped secure a settlement where Class claimants will receive more than 144% of the average Flex Belt purchase price and Defendant has removed plausibly misleading statements from its website.  *See* Doc. No. 43 at 18–19 (citing Fitzgerald Decl., Doc. No. 39-1 ¶ 16); Settlement Agreement at 5–6 (§§ 2.2–2.3).  Moreover, there have been no objections and only one opt-out.  *See* Doc. No. 43 at 12; *see also* Boub Decl., Doc. No. 43-2 ¶ 6.  These facts also indicate the absence of a conflict of interest between Plaintiff and the Class and demonstrates that Plaintiff protected the Class's interest since her involvement began in spring 2017.

Accordingly, the Court **APPROVES** Plaintiff's request for a $10,000 incentive award.

## VI. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for final approval of the class settlement, attorneys' fees and costs, and a class representative service award. The Court **CERTIFIES** the Settlement Class for the purposes of the Settlement.  The Court **APPROVES** the Settlement as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).  The Court **ORDERS** the parties to undertake the obligations set forth in the Settlement Agreement that arise out of this Order.  The Court **AWARDS** to Class Counsel attorneys' fees in the amount of **$59,060.20** and costs in the amount of **$939.80**.  The Court further **AWARDS** to Plaintiff a service award for work

performed as the class representative in the amount of **$10,000**.  The Court **DIRECTS** the Clerk of Court to enter a separate judgment of dismissal in accordance herewith.  *See* Fed. R. Civ. P. 58(a).  The Court further **DIRECTS** the Clerk of Court to close the case. Without affecting the finality of this Order, the Court maintains jurisdiction over this matter for purpose of enforcing the Judgment.

 **IT IS SO ORDERED**.


Dated: March 8, 2021

HON. MICHAEL M. ANELLO
United States District Judge

19-cv-854-MMA (KSC)